# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

RICHARD ARJUN KAUL, MD;
JANE DOE; JOHN DOE.

v.

FEDERATION STATE MEDICAL BOARDS;
CENTER FOR PERSONALIZED EDUCATION FOR PHYSICIANS;
JAMES HOWARD SOLOMON;
ALLSTATE INSURANCE COMPANY;
CHRISTOPHER J. CHRISTIE; ROBERT FRANCIS HEARY
DANIEL STOLZ; JANE DOE; JOHN DOE.

Case: 1:25-cv-00641
Assigned To : Walton, Reggie B.
Assign. Date : 3/4/2025
Description: Pro Se Gen. Civ. (F-DECK)

CIVIL ACTION: NO.:

COMPLAINT

The length of this Complaint/Exhibits is a reflection of, amongst other things, the seriousness of the charges, the issue of public corruption and the enforcement in physician licensing of the holdings and principles set forth by SCOTUS in SEC v Jarkesy: 22-859 (June 27, 2024).

2

# CONTENTS

## A. PRELIMINARY STATEMENTS

1. PRE AND POST JARKESY AND LOPER REFERENCED CASES OF 'THE KAUL CASES'

2. THE LACK OF ANY DISCOVERY AND OR TRIAL OF ANY OF THE KAUL CASES FROM 2016 TO 2025

3. SUMMMARIZATION OF CASE (K11-25) FOR SUMMARY JUDGMENT

4. RICHARD ARJUN KAUL, MD

5. THE OETKEN CHRONOLOGY

6. REQUEST FOR JUDICIAL IMPARTIALITY, LACK OF BIAS AND IMMEDIATE REPORTING OF ANY IMPROPER EXPARTE COMMUNICATIONS

## B. PRELIMINARY ISSUES AND STATEMENT OF CULPABILITY – PAGE 10

7. PARTIES – PAGE 11

8. PRE JARKESY AND TOPER REFERENCED CASES OF 'THE KAUL CASES' -PAGE 12

9. JURISDICTION + VENUE – PAGE 13

10. EXHIBITS – PAGE 14

11. STATEMENT OF DEFENDANTS CULPABILITY – PAGE 16

12. CONSOLIDATION OF THE KAUL CASES + INTERESTED PARTIES – PAGE 17

13. BASIS FOR ALL DISTRICT STANDING – PAGE 18

# B. FACTS – PAGE 19

14. STATEMENT OF NEW LAW, NEW FACTS AND ADMITTED FACTS AND THEIR NULLIFICATIN OF ALL PRIOR FACTS AND LAW – PAGE 20

a. NULLIFICATION OF ALL PRIOR ADMINISTRATIVE/STATE MEDICAL BOARD/STATE/BANKRUPTCY/DISTRICT/APPELLATE PROCEEDINGS BY JARKESY + TOPER + ADMITTED FACTS – PAGE 20

b. ONGOING CAUSATION OF NEW CLAIMS, INJURIES, VIOLATIONS AND DAMAGES – PAGE 20
c. JUNE 28, 2022-451 LOPER BRIGHT ENTERPRISES ET AL v. RAIMONDO SECRETARY OF COMMERCE ET AL. ARGUED JANUARY 17, 2024-DECIDED JUNE 28, 2024 – PAGE 21

d. JUNE 27, 2024: 22-859 SECURITIES AND EXCHANGE COMMISSION v. JARKESY ET AL. ARGUED NOVEMBER 29, 2023-DECIDED JUNE 27, 2024 (Exhibit 1) – PAGE 21

e. NULLIFICATION OF DEFENDANT-RESPONDENT OETKEN'S K11-7 SEPTEMBER 12, 2022 'INJUNCTION' BY JUNE 27, 2024, SCOTUS OPINION IN JARKESY – PAGE 22

f. THE ILLEGALLY CONDUCTED ADMINISTRATIVE LAW PROCEEDINGS AND BOARD REVOCATION (APRIL 9, 2013, TO MARCH 24, 2014) – PAGE 25

g. INJURIES CAUSED TO PLAINTIFF KAUL CONSEQUENT TO DEFENDANT SOLOMON'S ILLEGAL ORDER OF REVOCATION – PAGE 27

h. JUNE 17, 2024: STATE OF NEW JERSEY v. GEORGE NORCROSS, III, PHILIP NORCROSS, ET AL: INDICTMENT NO. 24-06-00111-S – SUPERIOR COURT OF NEW JERSEY LAW DIVISION – CRIMINAL (Exhibit 3) – PAGE 28

4

i. JUNE 14, 2024:KAUL v CPEP ET AL: 23-CV-00672 – PAGE 29

j. APRIL 9, 2012, TO JULY 2, 2024 – PAGE 30

k. MARCH 25, 2024: KAUL v JAMES PAUL OETKEN: 24-CV-00185 (K11-18) – PAGE 30

## 15. STATEMENT OF FACT ADMITTED PURSUANT TO RULE 8(b)(6) AND RULE 36 – PAGE 32

## 16. STATEMENT OF FACT COMMON TO ALL DEFENDANTS, ALL ISSUES AND THE OVERALL PURPOSE OF K11-20 AND THE KAUL CASES – PAGE 33

a. THE "HOSPITAL-INSURANCE-PHARMACEUTICAL-INDUSTRIAL COMPLEX – FEDERATION CARTEL" ("HIPIC- FC") – PAGE 33

b. DEFENDANTS CONVERSION OF THE AMERICAN CORPORATE/ POLITICAL/MEDICAL/ LEGAL BODIES INTO AN "ASSOCIATION-IN-FACT RACKETEERING ENTERPISE" – PAGE 35
c. FACTS OF CONSPIRACY AS TO DEFENDANTS ALLSTATE/CHRISTIE AND CO-CONSPIRATORS HORIZON BLUE CROSS BLUE SHIELD/GEICO INSURANCE COMPANY (JULY 2012 TO MARCH 2014) – PAGE 37

d. US INSURANCE GIANT, BLUE CROSS BLUE SHIELD, HAS EXPOSED ITS TARGETING OF ETHNIC MINORITY PHYSICIANS FOR MASS INCARCERATION – PAGE 38

e. FACTS RELEVANT TO THE DEFENDANTS "ONGOING PATTERN OF RACKETEERING" – PAGE 39

(i) The UC San Diego Physician Assessment and Clinical Education (PACE) Program – PAGE 39

(ii) The New York State Medical Board – PAGE 39

f. OTHER FACTS – PAGE 40

## 17. STATEMENT OF FACT SPECIFIC TO EACH DEFENDANT – PAGE 41

a. FACTS AS TO DEFENDANTS SOLOMON – PAGE 41
b. FACTS AS TO DEFENDANT CPEP – PAGE 42

c. FACTS AS TO DEFENDANT FEDERATION STATE MEDICAL BOARDS – PAGE 45

(i) DEFENDANT FSMB'S MONOPOLIZATION OF THE MULTI-STATE AMERICAN PHYSICIAN REGULATORY MARKET SUBJECTS THEM TO REGULATORY MARKET RELATED MULTI-DISTRICT LITIGATION – PAGE 46

(ii) DEFENDANT FSMB'S SUPPRESSION OF FREE SPEECH, THE COVID VACCINE FRAUD AND PROFIT PURPOSED HUMAN RIGHTS ABUSES, TOXICITY AND DEATH – PAGE 47

(iii) DEFENDANT FSMB/CO-CONSPIRATOR TMB'S PROFITEERING FROM THE OPIATE EPIDEMIC – PAGE 50

d. FACTS AS TO DEFENDANT CHRISTIE – PAGE 51

e. FACTS AS TO DEFENDANT HEARY – PAGE 52

f. FACTS AS TO DEFENDANT STOLZ – PAGE 52
g. FACTS AS TO K11-18 RESPONDENT-DEFENDANT AND K11-20 THIRD-PARTY WITNESS JAMES PAUL OETKEN – PAGE 52

(i) JUDICIAL CORRUPTION + FRAUD ON THE COURT - 'THE OETKEN ANALYSIS' – DEFENDANTS PERPETRATION IN THE UNITED STATES DISTRICT COURT OF A 'FRAUD ON THE COURT' AND RESULTANT NULLITY OF THE K11-7 SEPTEMBER 12, 2022, PURPORTED 'OPINION/ORDER' OF JAMES PAUL OETKEN AND THE K11-10 MAY 10, 2023, ORDER OF U.S.D.J. ROCHON – PAGE 56

18. STATEMENT OF EVIDENTIAL EXHIBITS CONTAINED WITHIN THE KAUL CASES - PAGE 66

a. FACTS OF RACIAL DISCRIMINATION AS TO DEFENDANT ALLSTATE

C. LEGAL CLAIMS AND RELIEF – PAGE 73

19. COUNT ONE – PAGE 74

Association-In-Fact Enterprise: The District of Columbia-State of Colorado ("SNC-SC
Association-In-Fact Enterprise")
Defendant Persons: CPEP/FSMB
Co-conspirators: Defendant Solomon/Allstate/Christie
RICO Predicate Acts: Wire Fraud/Bribery/Witness Tampering/Evidential Tampering

## 20. COUNT TWO – PAGE 79

Association-In-Fact Enterprise: New Jersey Medical Board-Federation State Medical
Boards- D.C. Medical Board ("NJMB-FSMB-DCMB Association-In-Fact Enterprise")
Defendant Persons: Solomon/Christie/Allstate
Co-conspirators: Geico/TD
RICO Predicate Acts: Mail Fraud/Wire Fraud/Public Corruption/Bribery

## 21. COUNT THREE – PAGE 87

Association-In-Fact Enterprise: Corporations-Governments-FSMB//Co-conspirator TMB
IAMRA-Medical Boards/Councils-NYSE ("CFN Association-In-Fact RICO Enterprise")
Defendant Person: FSMB
Co-conspirator TMB
Co-conspirators: Pfizer/Moderna/Astra Zenica/Johnson + Johnson + Corporate Media
RICO Predicate Acts: Wire Fraud/Murder/Manslaughter/Public
Corruption/Bribery/Money Laundering

## 22. COUNT FOUR – PAGE 96

Association-In-Fact Enterprise: United States District Court-NYSE ("SDNY-NYSE
Association-In-Fact- Enterprise)
Defendant Persons: Allstate
Co-conspirators: Geico/TD/ICE
RICO Predicate Acts: Bribery/Fraud on the Court/Public Corruption/Money Laundering

## 23. COUNT FIVE – PAGE 98

Association-In-Fact Enterprise: New York State Medical Board-Federation State Medical
Boards-The District of Columbia Medical Board ("NYSMB-FSMB-DCMB Association-In-
Fact-Enterprise)
Defendant Persons: FSMB/Allstate
Co-conspirator: Geico
RICO Predicate Acts: Bribery/Fraud on the Court/Public Corruption

## 24. COUNT SIX – PAGE 102

Association-In-Fact Enterprise: State of California-UC San Diego Physician Assessment and Clinical Education (PACE) Program
Defendant Persons: FSMB/Allstate
Co-conspirator: Geico
RICO Predicate Acts: Wire fraud/Conspiracy/Public Corruption

## 25. COUNT SEVEN – PAGE 105

Association-In-Fact Enterprise: The District of Columbia-NYSE-SEC ("DNS Association-In-Fact-Enterprise)
Defendant Persons: Allstate/Christie
Co-conspirators: TD/Geico/ICE
RICO Predicate Acts: Securities fraud/mail fraud/wire fraud/money laundering

## 26. COUNT EIGHT – PAGE 114
Association-In-Fact Enterprise: The District of Columbia-United States Bankruptcy Court-NYSE
Defendant Persons: Allstate/Stolz
Co-conspirators: Geico/TD
RICO Predicate Acts: bankruptcy fraud/mail fraud/wire fraud/public corruption/bank fraud/securities fraud/money laundering

## 27. COUNT NINE – PAGE 119

Association-In-Fact Enterprise: The District of Columbia-United States District Court
Defendant Persons: Christie/Heary
Co-conspirator: AHS
RICO Predicate Acts: mail fraud/wire fraud/bribery/obstruction of justice/public corruption/money laundering

## 28. COUNT TEN – PAGE 125

Association-In-Fact Enterprise: State of New Jersey-United States District Court-United States Bankruptcy Court-NYSE
Defendant Persons: FSMB/Christie/Allstate
Co-conspirators: Geico/NCMB

RICO Predicate Acts: mail fraud/wire fraud/bribery/obstruction of justice/public corruption/money laundering

## 29. COUNT ELEVEN – PAGE 133

Association-In-Fact Enterprise: The District of Columbia-United States Bankruptcy Court-United States District Court
Defendant Persons: Christie/Allstate
Co-conspirators: Geico/Grewal/Murphy
RICO Predicate Acts: kidnapping/mail fraud/wire fraud/bribery/obstruction of justice/public corruption

## 30. COUNT TWELVE – PAGE 144

Association-In-Fact Enterprise: State of New York-State-The District of Columbia-NYSE ("SDN Association-In-Fact Enterprise)
Defendant Persons: Allstate/FSMB
Co-conspirators: Geico/Hengerer/NCMB
RICO Predicate Acts: Bribery/Mail Fraud/Wire Fraud/Obstruction of Justice/Conspiracy

## 31. COUNT THIRTEEN – PAGE 149

Violation of Civil Rights
Symbiosis of State/Private Actors

## 32. COUNT FOURTEEN – PAGE 150

Section 1983 claim

## 33. COUNT FIFTEEN – PAGE 153

UN Human Rights Violation
The United Nations Universal Declaration of Human Rights

## RELIEF – PAGE 157
## CERTIFICATION – PAGE 158

# A. PRELIMINARY STATEMENTS

**1.** Plaintiff Kaul respectfully asserts that the inclusion of these 'PRELIMINARY STATEMENTS' in the Complaint is for the purpose of providing the Court with sufficient context to a case (K11-25), the factual foundation and purpose of which represents over nine (9) years of attempted litigation within the United States District Court, and nine (9) years-worth of fighting **The Kaul Cases** Defendants corruption of the courts and intimidation/harassment/bribing of certain district court judges. This period of corruption became integrated into the '**Revocation-Cover-Up-Conspiracy'** (2005-2025) that commenced consequent to Plaintiff Kaul inventing and successfully performing the first outpatient percutaneous-minimally invasive fusion in 2005, a procedure that revolutionized the field of spine surgery, and became the standard of care almost a decade ago.

**2.** The preliminary statements and this case exemplify the profound, endemic and lethal corruption in the worlds of American medicine/law/business/politics, and how easily money has bought off the ideals, principles and hopes on which modern-day America was founded. America was a reaction to the avariciousness of the tax addicted British, but it's modern-day government has become a worse and more pernicious version of anything approximating the Crown. The Founding Fathers did not fight a bloody war and draft a Constitution, only to have it ripped to shreds by a group of corrupt politicians, lawyers, judges, physicians and businessmen.

**3.** The current administration and DOGE are committed, as has Plaintiff Kaul been for the last thirteen (13) years to exposing and eradicating corruption, and Plaintiff Kaul respectfully asserts that his mission and that of DOGE are perfectly aligned. Therefore, in this regard this case had been brought to the attention of the Department of Justice, DOGE and the President.

# 1. <u>PRE AND POST JARKESY AND LOPER REFERENCED CASES OF 'THE KAUL CASES'</u>

**K1:** KAUL v CHRISTIE: 16-CV-02364-CLOSESD – PRE JARKESY

**K2:** KAUL v CHRISTIE ET AL: 18-CV-08086-CLOSED – PRE JARKESY

**K3:** KAUL v SCHUMER ET AL: 19-CV-13477-CLOSED - PRE JARKESY

**K4:** KAUL v STOLZ: 18-01489-CLOSED – PRE JARKESY

**K5:** KAUL v FEDERATION ET AL: 19-CV-3050-CLOSED – PRE JARKESY

**K11-2:** KAUL v BOSTON PARTNERS ET AL: 21-CV-10326-CLOSED – PRE JARKESY

**K11-3:** KAUL v ALLSTATE ET AL: 21-CV-00736-CLOSED – PRE JARKESY

**K11-7:** KAUL v ICE ET AL: 21-CV-6992-CLOSED – PRE JARKESY

**K11-8:** KAUL v PACE: 23-CV-00955-CLOSED – PRE JARKESY

**K11-10:** KAUL v ICE ET AL: 23-CV-2016-CLOSED – PRE JARKESY

**K11-14:** KAUL v FEDERATION ET AL: 23-CV-22325-CLOSED – PRE JARKESY

**K11-15:** KAUL v CHRISTIE/MURPHY: 23-CV-22582-CLOSED – PRE JARKESY

**K11-17:** KAUL v CPEP: 23-CV-00672-CLOSED – PRE JARKESY

**K11-18:** KAUL v OETKEN: 23-CV-00185-CLOSED – PRE JARKESY

**K11-19:** KAUL v TEXAS MEDICAL BOARD ET AL: 24-CV-00163-CLOSED-PRE JARKESY

**K11-20:** KAUL v FEDERATION: 24-CV-03180-CLOSED – POST JARKESY

**K11-22:** KAUL v BCBSA ET AL: 23-CV-01688-OPEN – PRE JARKESY

**K11-23:** KAUL v OETKEN ET AL: 24-CV-00621-OPEN – POST JARKESY

**K11-24:** KAUL v FEDERATION: 25-CV-25 –CLOSED - POST JARKESY

## 2. THE LACK OF ANY DISCOVERY AND OR TRIAL OF ANY OF THE KAUL CASES FROM 2016 TO 2025

**4.** Consequent to **The Kaul Cases** Defendants massive corruption of certain judges within the United States District Court, there has been no discovery conducted for a period of nine (9) years and with the filing of twenty-six (26) cases. This is despite overwhelming evidence and admissions of facts (**Exhibit 9**) as to the crimes of amongst other things, bribery/wire fraud/kidnapping/false indictment/false arrest/false imprisonment/perjury/evidential tampering/evidential obstruction/attempted killing/obstruction of justice/public corruption/judicial corruption.

**5.** The fact that no discovery has occurred in nine (9) years is a fact that substantiates the guilt of **The Kaul Cases** Defendants as to the levied charges.

| CASE | DATE FILED | DISCOVERY ORDER | DEFENDANT'S COMPLIANCE WITH DISCOVERY | DATE DISMISSED |
|------|-----------|-----------------|---------------------------------------|----------------|
| K1 | 2/22/2016 | NONE | NONE | 11/16/2021-VOLUNTARY DISMISSAL |
| K2 | 04/09/18 | NONE | NONE | 07/07/21-VOLUNTARY DISMISSAL |
| K3 | 04/04/19 | NONE | NONE | 07/07/21 VOLUNTARY DISMISSAL |
| K4 | 09/20/18 | 09/21/18 | NONE | 11/07/18-DISMISSED BY COURT |
| K5 | 10/01/19 | NONE | NONE | 12/01/20-TRANSFERRED FROM D.D.C. TO D.N.J. 07/07/21 VOLUNTARY DISMISSAL |
| K7 | 06/18/20 | NONE | NONE | 11/23/2021 DISMISSED BY COURT |
| K11-1 | 01/11/21 | NONE | NONE | 01/19/22 |

| | | | | |
|---|---|---|---|---|
| | | | | DISMISSED BY COURT |
| K11-2 | 02/24/21 | NONE | NONE | 07/30/21 DISMISSED BY COURT |
| K11-3 | 02/05/21 | NONE | NONE | 04/12/22 DISMISSED BY COURT |
| K11-4 | 03/03/21 | NONE | NONE | 04/23/21 TRANSFERRED FROM DISTRICT CONNECTICUT TO DISTRICT NEW JERSEY 07/13/21 VOLUNTARY DISMISSAL |
| K11-7 | 08/19/21 | NONE | NONE | 09/12/22 DISMISSED BY COURT |
| K11-8 | 05/24/23 | NONE | NONE | 08/11/23 VOLUNTARY DISMISSAL |
| K11-9 | 06/15/21 | NONE | NONE | 06/21/21 TRANSFERRED FROM S.D.N.Y. TO D.N.J. 07/09/21 DISMISSED BY COURT |
| K11-10 | 03/09/23 | NONE | NONE | 05/10/23 DISMISSED BY COURT |
| K11-11 | 01/27/23 | NONE | NONE | 12/14/23 VOLUNTARY DISMISSAL |
| K11-14 | 06/23/23 | 07/06/23 | NONE | 08/23/23 DISMISSED BY COURT |
| K11-15 | 07/28/23 | 02/02/24-SET FOR TRIAL | NONE | 02/16/24 DISMISSED BY COURT |
| K11-16 | 07/27/23 | NONE | NONE | 09/11/23 |

| | | | | VOLUNTARILY DISMISSED |
|---|---|---|---|---|
| K11-17 | 11/20/23 | 03/13/24 | NONE | 06/14/24 DISMISSED BY COURT |
| K11-18 | 03/25/24 | NONE | NONE | 04/08/24 DISMISSED BY COURT |
| K11-19 | 06/05/24 | 06/14/24 | NONE | 08/19/24 DISCOVERY STAYED 02/03/25 DISMISSED BY COURT |
| K11-20 | 08/26/24 | 08/30/24 ORDER FOR CONFERENCE 12/09/24 SCHEDULING ORDER-SET FOR TRIAL | NONE | 01/07/25 DISMISSED BY COURT |
| K11-21 | 08/28/24 | NONE | NONE | 09/19/24 VOLUNTARY DISMISSAL |
| K11-22 | 12/12/23 | NONE | NONE | PENDING |
| K11-23 | 10/09/24 | 11/04/24 | NONE | PENDING |
| K11-24 | 01/14/25 | NONE | NONE | 02/20/25 DISMISSED BY COURT |

# 3. SUMMMARIZATION OF CASE (K11-25) FOR SUMMARY JUDGMENT

**6.** K11-25 is the product of over nine (9) years-worth of litigation (2016-2025) in district courts across the United States, that ostensibly commenced on February 22, 2016. The litigations' origins however began in or around February/March, 2005, when Plaintiff Kaul invented and successfully performed the first percutaneous-minimally invasive spinal lumbar fusion, a procedure that revolutionized the field of spine surgery and became the standard of care over ten (10) years ago. The procedure has generated billions of dollars for spine device companies who used its intellectual property to develop their own devices.

**7.** Plaintiff Kaul's 2005 invention and the professional/commercial success that the invention brought him, caused immense jealousy amongst his competitors in the spine community, and as a consequence they initiated the '<u>Revocation-Cover-Up-Conspiracy'</u> (2005-2025) by which they perpetrated massive **"patterns of racketeering"** through medical boards and administrative/state/bankruptcy/district/appellate courts through the commission of the RICO predicate acts of amongst other things, bribery/perjury/wire fraud/kidnapping/false indictments/false arrests/false imprisonments/attempted killing/bankruptcy fraud/bank fraud/public corruption/judicial corruption/evidential tampering/witness tampering, **and** in which they violated Plaintiff Kaul's human/civil/constitutional rights.

**8.** The commission of this criminal conspiracy did cause and continues to cause injury/deprivation to Plaintiff Kaul's life/liberty/property/reputation, and its continuation is purposed to attempt to cause Plaintiff Kaul's elimination (jail/death), in order to prevent him from exposing the crimes of <u>The Kaul Cases</u> Defendants, in much the same way and for much the same reasons that the Democrats tried to deprive President Trump of his freedom and or life.

## ADMISSION OF ALL RELEVANT/MATERIAL FACT AND SCOTUS AUTHORITITATIVE LAW AS TO RENDER SUMMARY JUDGMENT INEVITABLE

**9.** From the commencement of K1 on February 22, 2016, <u>The Kaul Cases</u> Defendants have, through schemes of politico-judicial corruption, obstructed Plaintiff Kaul's prosecution of <u>The Kaul Cases</u>, as illustrated on page3/4 of the February 22, 2025 letter (<u>Exhibit 1</u>) from Plaintiff Kaul to U.S.D.J. Lee, and an obstruction that resulted in Plaintiff Kaul being deprived of any discovery for over nine (9) years and having to either voluntarily dismiss cases intentionally stalled by the corrupted court or having the cases dismissed by the corrupted court. Plaintiff Kaul was therefore obstructed not only from procuring discovery but from taking any of his cases to trial, while the violations of the discovery orders (<u>Exhibit 8</u>) by <u>The Kaul Cases</u> Defendants went unsanctioned by the courts, thus causing further violations of Plaintiff Kaul's right to life/liberty/property/reputation.

**10.** However, <u>The Kaul Cases</u> Defendants' politico-judicial corruption scheme of obstruction, an element of which was to not deny or admit any of the allegations/facts in any of <u>The Kaul Cases</u>

(2016-2025) did, pursuant to Rule 8(b)(6) cause all of the facts to become admitted for all purposes. None of **The Kaul Cases** Defendants ever denied any of the facts, but realizing the Summary Judgment claim conclusive effect of the entire nine( 9) year corpus of admitted fact, did file so called 'OBJECTIONS' to their Rule8(b)(6) admissions, a tool neither codified nor recognized within the Federal Rules of Civil Procedure nor indeed found within any courts interpretation of any of the Rules.

**11.** A distinct pattern has emerged throughout **The Kaul Cases** as to why and when courts that had admitted cases, entered discovery orders and set cases down for trial, would then suddenly for no logical/reasonable/judicially consistent reason dismiss the case. In dismissing the case the court would cite either venue or the now legally invalidated/nullified K11-7 September 12, 2022 purported 'injunction (**Exhibit 2)** of K11-23 Defendant James Paul Oetken, issues the courts had considered before admitting the cases and most definitely before issuing the discovery orders.

**12.** In recognizing this pattern, Plaintiff Kaul also observed that when he commenced issuing document subpoenas to Third-Party Witnesses, the same sudden dismissals would occur, based on facts known to the court when they admitted the case. The only fact to change from the admission to the dismissal was the corruption of the court by **The Kaul Cases** Defendants, when they realized other witnesses were about to provide incriminating testimony.

**13.** There exists no question in this case that the K11-25 Defendants are guilty of the levied charges, and neither does there now exist any defense/s to the K11-25 claims subsequent to the February 20, 2025 judicial nullification/invalidation (**Exhibit 1**) of the K11-7 September 12, 2022 purported 'injunction. U.S.D.J. Lee, in his February 20, 2025 opinion of dismissal purposefully omitted any reference to the purported 'injunction' and dismissed the case without prejudice, thus judicially nullifying the 'injunction'.

**14.** And to compound the K11-25 Defendants guilt was the June 27, 2024 ruling by SCOTUS in Jarkesy, the holdings/principles of which as applied to the facts of **The Kaul Cases** do find that the 2014 NJ jury-less article III judge-free revocation was/is illegal, as was/is every consequent injury caused to Plaintiff Kaul's life/liberty/property/reputation in the courts of law and the court of public opinion. A cumulative, massive injury that is ongoing in 2025, twenty (20) years after Plaintiff Kaul's 2005 invention, an invention that has helped millions of people with debilitating back pain.

**15.** In addition to **The Kaul Cases** Defendants Rule 8(b)(6) admission of fact, is the fact that throughout the nine (9) year period and in every case, not one of the controlling legal authorities was ever contested/addressed/rejected. Similarly, not one of Plaintiff Kaul's arguments dismantling **The Kaul Cases** Defendants arguments underpinning their motions to dismiss was ever contested/rejected/rebutted by **The Kaul Cases** Defendants in their final replies, nor indeed analyzed by the district judge's opinion of dismissal. Almost as if the law/facts did not matter to what appeared to be a pre-determined outcome of dismissal. A predetermination that in most cases was a consequence of the endemic corruption within the

American politico-judicial bodies that is now being, and will continue to be exposed by the DOGE investigations.

16. In the most ironic manner, <u>The Kaul Cases</u> Defendants nine (9) years-worth of corruption of the political and judicial bodies has substantially harmed more helped them. They expected the corruption would cause Plaintiff Kaul to cease his filing and attempted prosecution of **The Kaul Cases**, and so they failed to deny facts of their guilt, mistakenly believing Plaintiff Kaul would be eliminated, but a failure that actually established their guilt. They attempted to eliminate Plaintiff Kaul by kidnapping/jailing/attempted killing, but their attempts, as was also the case with President Trump, did fail, thus further establishing their guilt. They attempted in their submissions within **The Kaul Cases** to mischaracterize Plaintiff Kaul and his claims as amongst many other things **"a nutcase … unhinged … nut-job … frivolous … vexatious … harassing … fantastical … delusional …"**, but the evidence now emerging through the DOGE investigations of the actually insane schemes into which these same individuals funneled tax payor monies in grand international kickback rackets, makes Plaintiff Kaul's allegations seem decidedly pedestrian, a fact that further establishes their guilt.

17. <u>The Kaul Cases</u> Defendants are caught in a self-ratcheting net, fewer and fewer judges are willing to place their 'head on the block' for these crooks, regardless of how many zeros are attached to the offer, for no amount of money can diminish the torture of public humiliation, impeachment and jail. Very real and actual possibilities in the 'no one is above the law' ethos of the new constitutionally faithful administration.

## FEBRUARY 20, 2025 JUDICIAL NULLIFICATION OF K11-7 SEPTEMBER 12, 2022 PURPORTED 'INJUNCTION' OF K11-23 DEFENDANT JAMES PAUL OETKEN

18. On February 18, 2025 Defendant Allstate Insurance Company filed a motion to dismiss (**Exhibit 3**) that was based principally on the K11-7 September 12, 2022 purported 'injunction' of K11-23 Defendant, James Paul Oetken. On February 20, 2025, U.S.D.J. Thomas Lee entered an order/opinion of dismissal in K11-24, the sole basis of which pertained to venue. The absence from the February 20, 2025 opinion of U.S.D.J. Lee of any reference let alone reliance on the K11-7 September 12, 2022 purported 'injunction' of K11-23 Defendant, James Paul Oetken, particularly in light of Defendant Allstate's submission onto the record of the K11-7 September 12, 2022 purported 'injunction' of K11-23 Defendant, James Paul Oetken **and** Defendant Oetken's admissions of fact in K11-23, **does** unequivocally and permanently establish the nullity/invalidation of the purported 'injunction' for all purposes. K11-23 is pending in the Southern District of Mississippi, the same court in which K11-24 was dismissed on February 20, 2025, and in K11-23 Defendant Oetken's admissions of fact (**Exhibit 4**) have established his guilt of the charges levied in K11-23 (**Exhibit 5**).

## THE GUILT OF THE K11-25 DEFENDANTS AS TO THE LEVIED CLAIMS

19. It has been twenty (20) years since the commencement of the '<u>Revocation-Cover-Up Conspiracy</u>" a conspiracy that stemmed from the professional jealousy of Plaintiff Kaul's

competitors. Many of Plaintiff Kaul's competitors were unable to compete fairly, as the procedure required a level of temporo-spatial coordination in which one's brain was required to rapidly convert two-dimensional data into three-dimensional coordinates, based upon which the surgeon would adjust his hands in multi-planar directions to safely and effectively achieve the surgical goal within a small high vascular/densely neurological area. Plaintiff Kaul, unlike the neurosurgeons, had spent almost twenty (20) years developing these skills in his interventional spine training/practice before he invented and performed the first percutaneous spinal fusion in 2005. Almost all neurosurgeons had never been trained in the acquisition and development of these skills, and so were unable to perform them competently and thus lost market share to Plaintiff Kaul. This loss caused them to resort to the commission of crime and antitrust violations to eliminate Plaintiff Kaul from the market by having his license illegally revoked through the "**Revocation-Cover-Up-Conspiracy**" (2005-2025) and then perpetrating, amongst other things, multiple attempts on his life/liberty to attempt to prevent him from exposing their crimes and resuming his practice of minimally invasive spine surgery.

20. Attached to this four (4) page summarization of a twenty (20) year odyssey, is a Complaint/Exhibits, which substantiate the summarization and moreover the guilt of, amongst others, the K11-25 Defendants. Some of the issues submitted in K11-25 were issues submitted in K5, and were issues that were, over Plaintiff Kaul's objections, transferred to the District of New Jersey on December 1, 2020, where they, as predicted by Plaintiff Kaul, were caused to stall by the district court, the stalling of which caused Plaintiff Kaul to voluntarily dismiss them on July 7, 2021.

21. Plaintiff Kaul respectfully asserts that had the District of Columbia tried the K5 claims in 2020, none of **The Kaul Cases** that Plaintiff Kaul was left with no option but to file in the ensuing period to the present (2019-2025) would have been filed. Had discovery been ordered and had trial been conducted, the issues now before the court would likely have been resolved. The reason in K5 for the lack of discovery, the lack of trial and the lack of resolution was corruption. This court, unfortunately, permitted itself to become corrupted by the K5 Defendants and transferred the case to the interminably corrupt District of New Jersey, where it was, as with every other case filed by Plaintiff Kaul in that district left to 'die on the vine'.

22. However, and as they say, it is never too late, and with a new administration and new anti-corruption ethos in America, the timing of the filing of K11-25 in this court in the District of Columbia could not be more perfectly suited to correct the errors/acts of corruption and to hold accountable **The Kaul Cases** Defendants for their decades-long **"pattern of racketeering"** within the American healthcare/legal/political/business sectors and specifically within that area in which they all intersect and interact.

Plaintiff Kaul respectfully request this Court set down a discovery/trial schedule and cause a timely adjudication of Plaintiff Kaul's to be filed motions for Summary Judgment.

# 4. **RICHARD ARJUN KAUL, MD**

**23**. The substance of an initiating Complaint in a lawsuit usually commences with the 'PRELIMINARY STATEMENT', a summary of the case that identifies the elements, the relations between these elements and how these factors will prove the claims and case. The focus of most cases is the evidence/facts/law and litigation is essentially a battle between these elements of legal argument.

**24**. When one side descends into ad homin-esque attacks and incorporates into their defenses material irrelevant to the elements of any legal defense, it is a sure sign they know that on the evidence/facts/law they have lost the case. And that is indeed the case with **The Kaul Cases** Defendants, whose defenses have dwindled over the last nine (9) years to the judicially invalidated and illegal K11-7 September 12, 2022 purported 'injunction' of K11-23 Defendant Oetken, and the as equally corrupt December 13, 2013 'opinion' of **The Kaul Cases** and K11-25 Defendant and ex-NJ administrative law judge, James Howard Solomon. **The Kaul Cases** Defendant Solomon has admitted to the fact that he in conspiracy/collusion with **The Kaul Cases** Defendants did cause **two hundred and seventy-eight (278)** falsifications of evidence in his December 13, 2013 'opinion' in the NJ administrative revocation proceeding, in which he recommended the knowingly illegal revocation of Plaintiff Kaul's NJ license and a $300,000 'fine', an amount that was increased on February 12, 2014 by **The Kaul Cases** Defendant, New Jersey Board of Medical Examiners. K11-23 Defendant Oetken has similarly admitted to having perpetrated a bribery related quid pro quo scheme with the K11-7 Defendants, in which he received bribes in exchange for dismissing with prejudice K11-7/entering a nationwide 'injunction' on September 12, 2022. The purpose of the 'injunction' was to prevent Plaintiff Kaul from exposing the crimes of **The Kaul Cases** Defendants.

**25**. It has been definitively established over the last nine (9) years that the 2013 revocation and 2022 injunction, as with every improper case dismissal were the products of a bribery related **"pattern of racketeering"** that is open-ended and continuing, and being perpetrated by **The Kaul Cases** Defendants through administrative/state/district courts and certain unregulated agencies of state/federal governments. It is a massive scheme indeed, as DOGE is rapidly exposing.

**27**. In K11-24, Defendant Allstate, as it has done in every prior case, based its defense on the opinions/injunction of **The Kaul Cases** Defendants Oetken/Solomon, individuals who have admitted to the commission of crime in the perpetration of the '**Revocation-Cover-Up-Conspiracy**' (2005-2025) and the production of knowingly fraudulent 'opinions' that they knew/know were the product of bribery related quid pro quo schemes. Schemes in which they corruptly sold the power of state for personal enrichment and the expense/exploitation of the life of Plaintiff Kaul. There is a very unique sort of evil involved in the planned and slowly executed execution of another human's life/liberty/property simply for the sake of self-enrichment, and particularly when perpetrated through purported instruments of justice and missions of benevolence. An evil, the remediation of which requires a reflection of a cold

dispassionate and relentless force, the steely particularity of which ultimately decimates that evil. That is DOGE and the alignment of DOGE's mission with that of **The Kaul Cases** and President Trump's own personal experience of the corruption within the political-judicial bodies render K11-25 a case like none before it.

**28.** The following section is included in the Complaint in a pre-emptive manner as to **The Kaul Cases** Defendants tired tactic of attempting to slander Plaintiff Kaul's internationally recognized expertise in the filed of minimally invasive spine surgery. The reason Plaintiff Kaul became so successful so rapidly was because of his invention and his clinical/business skills and acumen, and not because he was any of the slanderous things, he was described to be by the corrupted NJ administrative law judge and **The Kaul Cases** Defendant, James Howard Solomon. In private medical practice, as opposed to academic practice, a physicians success is a direct reflection of his abilities/skills, whereas in academic practice, complications are swept under the medical corporate 'rug'.

## CLINICAL OUTCOMES AND COMPETENCE

**29.** As ubiquitous as the orders and opinions of other courts, Defendant Allstate and **The Kaul Cases** Defendants will always commence their motions with the " ... **11 patient** ..." excerpt from the knowingly fraudulent December 13, 2013 opinion of K11-24 Defendant James Howard Solomon in the jury-less article III judge-free $475,000 'fine' imposing 2014 NJ revocation, the fraudulence and illegality to which Defendant Solomon has admitted (D.E. 1-4 Page 80 to 108 of 157).

**30.** Defendant Allstate's reliance on the testimony of a co-defendant/perpetrator who is not only entrapped with **The Kaul Cases** Defendants in the '**Revocation-Cover-Up-Conspiracy**' (2005-2025), but who has admitted to violations/offenses/crimes as to the proceedings surrounding the illegal 2014 NJ revocation and the actual jury-less article III judge-free $475,000 'fine' imposing 2014 NJ revocation, **does** constitute further evidence of the frivolousness of Defendant Allstate's defenses, nine (9) years into the litigation of **The Kaul Cases**. A frivolousness and indeed manipulative and evasive abuse of the justice system purposed to prevent a full exposure of its decades-long crime sprees, involving as yet unknown persons, but the type of which are now being exposed by the DOGE investigations.

**31.** And it is this desperation to distract from the high crimes and criminal conspiracies in which it has been involved for decades, that causes it to populate its submissions with distracting falsities. The " ...**11 patient** ..." excerpt, as is the case with the remainder of the one hundred and five (105) page opinion of Defendant Solomon, an opinion in which there are **two hundred and seventy-eight (278)** admitted separate instances of evidential falsification (D.E. 6-2 Page 53 of 93) is a false recitation of the facts of the April 9 to June 28, 2013 administrative revocation proceeding. In fact, only five (5) patients testified, none of whom, as the clinical records proved, did suffer any injuries from the care provided by Plaintiff Kaul. However, these five (5) patients were suborned into committing perjury by **The Kaul Cases** Defendant, and then NJ deputy attorney general, Doreen Hafner, who promised these patients that their false testimony would

provide Defendant Solomon a further basis on which to recommend revocation, and that the highly publicized revocation would ensure they received millions of dollars in malpractice judgments. **The Kaul Cases** Defendant, Doreen Hafner, as did Defendant Heary/others did connect many of Plaintiff Kaul's patients with malpractice lawyers, who provided kickbacks to Defendant Christie from part of the insurance settlements. These facts are admitted by Defendant Christie within his admissions of fact.

32. The truth however, of Plaintiff Kaul's practice and one of the reasons for the success that caused the professional jealousy that initiated the **'Revocation-Cover-Up-Conspiracy'** (2005-2025) was that because of his invention and his superior clinical outcomes (90-95% good to very good – average 65-70%) and very low complication rate (0,1% - average is 5-15%) he was targeted by those who could not compete fairly in the minimally invasive spine market, in which Defendant Allstate also competed for the limited patient premium pool, from which Plaintiff Kaul was due his professional fees. Defendant Allstate, as with all profiteering insurance companies involved in the healthcare sector deem the elimination of patient care and physicians as critical to increasing their executive/corporate/shareholder profits at the expense and through the exploitation of the public and medical profession. And so, Defendant Allstate did/does initiate and cause the use of taxpayer monies to fund the fabrication of cases and the subornation of perjury by physician/patient witnesses to eliminate through license revocation physicians to whom it owes money, and who by not paying those monies will divert more money in their pockets and those of their non-physician non-care providing insurance executives. This is the patient care denying embezzlement-like scenario that drove the United Healthcare related events of December 4, 2024 in mid-town Manhattan.

33. Contained within (**Exhibit 6**) are clinical notes of some of the five (5) patients who testified at the April 9 to June 28 NJ administrative revocation proceeding, notes that evidence their immense improvement. Also, within (**Exhibit 6**) are letters from patients/physicians that evidence the superior clinical skills of Plaintiff Kaul, skills that brought him success, a success however that ignited a thirteen (13) year (2012-2025) legal battle. Four (4) are included, but there exist hundreds. The perniciousness of **The Kaul Cases** Defendants crimes lies of course in the ongoing/"new" injuries to Plaintiff Kaul's life/liberty/property/reputation, but more so in the harm caused to tens of thousands of patients whose pain and lives could have benefitted from Plaintiff Kaul's internationally recognized expertise in minimally invasive spine surgery, a recognition in large part consequent to his invention of the revolutionary percutaneous-minimally invasive spinal fusion procedure. The corruption in America being exposed by the DOGE investigations was the corruption that caused not a laudation of Plaintiff Kaul's invention/work, but a vilification. So many more care improving surgical advances could have been achieved by Plaintiff Kaul, but for the greed/malevolence/corruption of **The Kaul Cases** Defendants. So much was so needlessly lost and so little was gained.

34. Finally, Plaintiff Kaul believes it relevant to note that even if there were eleven (11) patients who had poor outcomes, which they did not, that would still be well below the national standard, as in the period from 2003 to 2012, Plaintiff Kaul performed procedures on approximately six thousand (6,000) patients, and 11 is 0.18333 % of 6,000. The national average

complication rate is 5-15%. But in truth, the revocation was about every fact admitted by every Defendant within the '**Revocation-Cover-Up-Conspiracy**" and had nothing to do with competence/qualifications/credentials/hospital privileges or any of the excuses and lies set forth in the December 13, 2013 knowingly fraudulent opinion of Defendant James Howard Solomon. The entire proceeding was a massive fraud, that involved the commission of massive crime and massive violations of Plaintiff Kaul's human/civil/constitutional rights, the massive liability to **The Kaul Cases** Defendants of which accounts for their kidnapping and attempted killing of Plaintiff Kaul. Facts, that none of **The Kaul Cases** Defendants have denied nor ever could.

# 5. THE OETKEN CHRONOLOGY

**35**. K11-23 Defendant and U.S.D.J. James Paul Oetken did enter the 'Revocation-Cover-Up-Conspiracy' in or around August 2021 though the perpetration of a quid pro quo scheme, in which he received bribes from the K11-7 Defendants in return for dismissing K11-7 with prejudice and issuing a knowingly illegal nationwide 'injunction' that prevented Plaintiff Kaul from seeking recompense in any court in the United States for the injuries caused to his life/liberty/property/reputation by **The Kaul Cases** Defendants, without first seeking and being granted his permission. K11-23 Defendant Oetken appointed himself the 'King of the Federal Judiciary'.

**36.** On September 14, 2022, Plaintiff Kaul in-person delivered a letter (**Exhibit 7**) to the Clerk of the Court seeking K11-23 Defendant Oetken's financial holdings, exparte communications and other information as to his corrupt and impeachable activities on the federal bench. He was informed that if the information were not timely provided, the non-production would constitute guilt of the levied charges. No information was provided in 2022 and none has been provided in 2025, despite a court order from the Southern District of Mississippi.

**37.** On October 10, 2022, Plaintiff Kaul filed a motion for K11-23 Defendant's disqualification from any further involvement in any matter to do with Plaintiff Kaul, charging him with facts of having converted the federal bench into a **"racketeering enterprise"** through which he committed the RICO predicate acts of amongst other things, wire fraud/bribery/evidential tampering/public corruption. None of the facts were denied, and the motion was left unadjudicated until August 2023, when he was compelled to address it by U.S.D.J. Beth Bloom (Southern District of Florida), when as she was coming under pressure to dismiss K11-14 based on K11-23 Oetken's purported 'injunction', she, realizing the illegality of the 'injunction' and not wanting to expose herself to impeachment/indictment, stated that she would not dismiss K11-14 unless the K11-7 motion to dismiss was adjudicated. And so, in August 2023 K11-23 Defendant Oetken denied the motion without denying any of the facts pertaining to his criminal conduct on the bench.

**38.** In the period from September 12, 2022 to October 9, 2024, Plaintiff Kaul filed several cases related to the revocation that involved some of the K11-7 Defendants (K11-14/K11-17/K11-20/K11-24), and in all cases except K11-24, **The Kaul Cases** Defendants entered into a conspiracy with K11-23 Defendant Oetken to have him issue an order threatening Plaintiff Kaul that if he did not dismiss the case by a certain date he would be held in contempt. In response to K11-23 Defendant Oetken's threat regarding the K11-17 case, Plaintiff Kaul filed suit (K11-18), but the case was dismissed by the district judge in K11-17 (E.D.N.C.), and then K11-17 was dismissed on May 6, 2024 based on the purported 'injunction'. Plaintiff Kaul then filed K11-20 on August 26, 2024 in the Southern District of Texas, into which he incorporated the holdings and principles set forth by the Supreme Court of the United States in Jarkesy on June 27, 2024. Once again, **The Kaul Cases** Defendants entered into a conspiracy with K11-23 Defendant

Oetken to have him issue an order threatening to hold Plaintiff Kaul in contempt if he did not dismiss K11-20 by October 16, 2024. On October 9, 2024, Plaintiff Kaul sued K11-23 Defendant Oetken in the Southern District of Mississippi (**Exhibit 5**) and on January 5, 2025 K11-23 Defendant Oetken admitted to the charges/facts levied against him (**Exhibit 4**). K11-23 Defendant Oetken's 'injunction' was further and permanently invalidated/nullified on February 20, 2025 by the venue-based dismissal order of K11-24, in which U.S.D.J. Thomas Lee purposefully and consciously omitted from his opinion, unlike every prior opinion issued since September 12, 2022, any reference to the purported 'injunction', causing with the facilitation of K11-23 Oetken's own admissions its permanent nullification. A permanence that will persist even after K11-23 is closed, as facts admitted pursuant to Rule 8(b)(6) are admitted for all purposes and for all time.

**39.** Thus, the K11-25 Defendants, having admitted to the entire factual corpus of **The Kaul Cases,** a corpus that underpins K11-25, and being deprived of any defense are guilty of the levied charges, a guilt that substantiates Summary Judgment.

**40**. Plaintiff Kaul has requested K11-23 Defendant Oetken be investigated by the Department of Justice, and if the evidence so proves, that he be impeached, removed from the bench and criminally charged. Americans are sick and tired of the rampant corruption in this country's governmental agencies/institutions/persons. It is time for a reckoning and truth.

## 6. <u>REQUEST FOR JUDICIAL IMPARTIALITY, LACK OF BIAS AND IMMEDIATE REPORTING OF ANY IMPROPER EXPARTE COMMUNICATIONS</u>

**41**. Plaintiff Kaul respectfully submits, based on his nine (9) years of litigating in the United States District Court, that the Judicial Code of Conduct be upheld throughout the entirety of the litigation, and that if any of **The Kaul Cases** Defendants/agents or any persons attempt in any manner whatsoever to influence or corrupt the proceedings, that these crimes and the perpetrators be reported to the Department of Justice.

**42**. In nine (9) years since the filing of K1, Plaintiff Kaul has quite unfortunately become a little bit too well qualified in the detection of improper influence/corruption, and he reserves the right to raise these concerns during the litigation, should it be so required. He will however do so with integrity and only when it appears that there is no relation between the law/facts and the court's position. A situation he experienced most palpably on September 12, 2022 in K11-7 in the opinion and purported 'injunction' of K11-23 Defendant Oetken.

# B. PRELIMINARY ISSUES AND STATEMENT OF CULPABILITY

# 7. PARTIES

**Plaintiff**

RICHARD ARJUN KAUL, MD – 440c SOMERSET DRIVE, PEARL RIVER, NY 10965: 914 250 8413: DRRICHARDKAUL@GMAIL.COM **("KAUL")**

**Defendants**

FEDERATION STATE MEDICAL BOARDS - 400 Fuller Wiser Rd, Suite 300, Euless, TX 76039 **("FSMB")**

CENTER FOR PERSONALIZED EDUCATION FOR PHYSICIANS – 222 NORTH PERSON STREET RALEIGH, NC 27601-1067 **("CPEP")**

ALLSTATE INSURANCE COMPANY – 2775 SANDERS ROAD, NORTH PLAZA, NORTHBROOK, IL 60062-6127 **("ALLSTATE").**

CHRISTOPHER J. CHRISTIE – 46 Corey Lane, Mendham, NJ 07960 **("CHRISTIE").**

DANIEL STOLZ – 60 Christy Drive, Warren, NJ 07059-6833 **("STOLZ").**

ROBERT HEARY – 1 Bay Avenue, Suite 5, Montclair, NJ 07042 **("HEARY").**

JAMES HOWARD SOLOMON – 44 DOVER STREET, ASHEVILLE, NC 28804-2557 – SUBDIVISION NAME: COUNTRY CLUB VILLAS OF ASHEVILLE.
828 505 0885 – jamessolomon@gmail.com **("SOLOMON")** - The corrupted New Jersey lawyer/administrative law judge who presided over the administrative law proceedings (April 9 to June 28, 2013) and whose December 13, 2013, signed opinion/order 'rubber-stamped' **The Kaul Cases** conspiracy (commenced in 2005) that caused the illegal license revocation and all the consequent injuries to Plaintiff Kaul's life/liberty/property.

## 8. <u>PRE AND POST JARKESY AND TOPER REFERENCED CASES OF 'THE KAUL CASES'</u>

**K1:** KAUL v CHRISTIE: 16-CV-02364-CLOSESD – PRE JARKESY

**K2:** KAUL v CHRISTIE ET AL: 18-CV-08086-CLOSED – PRE JARKESY

**K3:** KAUL v SCHUMER ET AL: 19-CV-13477-CLOSED - PRE JARKESY

**K4:** KAUL v STOLZ: 18-01489-CLOSED – PRE JARKESY

**K5:** KAUL v FEDERATION ET AL: 19-CV-3050-CLOSED – PRE JARKESY

**K11-2:** KAUL v BOSTON PARTNERS ET AL: 21-CV-10326-CLOSED – PRE JARKESY

**K11-3:** KAUL v ALLSTATE ET AL: 21-CV-00736-CLOSED – PRE JARKESY

**K11-7:** KAUL v ICE ET AL: 21-CV-6992-CLOSED – PRE JARKESY

**K11-8**: KAUL v PACE: 23-CV-00955-CLOSED – PRE JARKESY

**K11-10**: KAUL v ICE ET AL: 23-CV-2016-CLOSED – PRE JARKESY

**K11-14**: KAUL v FEDERATION ET AL: 23-CV-22325-CLOSED – PRE JARKESY

**K11-15**: KAUL v CHRISTIE/MURPHY: 23-CV-22582-CLOSED – PRE JARKESY

**K11-17**: KAUL v CPEP: 23-CV-00672-CLOSED – PRE JARKESY

**K11-18**: KAUL v OETKEN: 23-CV-00185-CLOSED – PRE JARKESY

**K11-19**: KAUL v TEXAS MEDICAL BOARD ET AL: 24-CV-00163-STAYED

**K11-20**: KAUL v FEDERATION: 24-CV-03180-CLOSED – POST JARKESY

**K11-22**: KAUL v BCBSA ET AL: 23-CV-01688-OPEN – PRE JARKESY

**K11-23**: KAUL v OETKEN ET AL: 24-CV-00621-OPEN – POST JARKESY

**K11-24**: KAUL v FEDERATION: CASE NO. PENDING – POST JARKESY

# 9. JURISDICTION + VENUE

**43.** General:

28 U.S.C. § 1331 – Plaintiff's allegations arise pursuant to Section 1983 claims of violations of Plaintiff Kaul's Constitutional rights and U.S.C. § 1964(a)(b)(c)(d) and 1962.
U.S.C. § 1337 – Plaintiff's allegations allege violations of an Act of Congress regulating commerce and monopolies.
28 U.S.C. § 1332(d)(2)(A) – Plaintiff is a citizen of a different state to certain Defendants and the aggregate amount in controversy exceeds seventy-five thousand dollars ($75,000).

**44.** Personal:

The Court has personal jurisdiction over all Defendants, as each Defendant has transacted business, maintained substantial contacts, and/or committed acts in furtherance of the illegal scheme and conspiracy throughout the United States, including the District of Columbia. The scheme and conspiracy have been directed at and have had the intended effect of causing injury to persons residing in, located in, or doing business throughout the United States including the District of Columbia. This Court also has personal jurisdiction over all Defendants pursuant to Fed. R. Civ. P. 4(k)(1)(A) because they would be subject to a court of general jurisdiction in the District of Columbia.

**45.** Venue:

28 U.S.C. § 1391(b)(1) – A civil action may be brought in (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred (denial of application for medical license in 2020/2024) or a substantial part of property that is the subject of the action is situated.

Plaintiff Kaul's denial in 2020/2024 of his applications for licensure in the District of Columbia was based on the illegal 2012/2014 suspension/revocation of his New Jersey license, and constitute ongoing and **"new racketeering injuries"** within the jurisdiction of the District of Columbia, that confers on Plaintiff Kaul the right to sue in the United States District Court for the District of Columbia.

## 10. <u>STATEMENT OF DEFENDANTS CULPABILITY</u>

**46**. The Defendants are guilty of the within levied charges, pursuant to: **(i)** their admission of all fact (**Exhibit 3**) including the facts asserted in K11-23 and; **(ii)** to the application of the below cited new intervening law to the admitted facts. This application unequivocally establishes the illegality of the 2014 NJ license revocation, a revocation that was the defining/determinative element of all **The Kaul Cases** Defendants defenses (2016-2025) and all the judicial opinions that dismissed **The Kaul Cases.** Notably, the January 8, 2025 failure of the K11-20 Court to identify the nullifying effect of <u>Jarkesy</u> on the illegal K11-7 September 12, 2022 'injunction' (**Exhibit 1**) did not only invalidate the entire opinion, but completely ignored the determinative relevance of the <u>Jarkesy</u> to the  K11-20. Has <u>Jarkesy</u> been applied at all to the case it would have precluded a dismissal. It was not applied not once by the Defendants nor the Court (**Exhibit 2**)

**47**. <u>The Kaul Cases</u> Defendants and certain judges did, for eight (8) years, mischaracterize and slander Plaintiff Kaul's claim that the revocation was a consequence of a constitutionally unauthorized and illegal NJ administrative law proceeding, that was perpetrated with knowing illegality in furtherance of a monopolistic conspiracy between Plaintiff Kaul's market competitors in the minimally invasive spine surgery sector, corrupt politicians and state actors involved in physician licensing.

**48**. The June 27 and 28, 2024 SCOTUS rulings in <u>Jarkesy</u> and <u>Loper</u> (see below) as applied to the facts of **The Kaul Cases** do irrefutably establish Defendants culpability. This culpability supersedes and indeed nullifies the illegal September 12, 2022 purported 'injunction' issued by K11-23 Defendant Oetken in K11-7, particularly in light of <u>Jarkesy</u>, a case, the determinative nullifying effect on the K11-7 purported 'injunction', of which was never contested/refuted/rebutted/addressed by the K11-20 Defendants nor the district court in its January 7, 2024 opinion. The court's opinion treated <u>Jarkesy</u> as if it never existed, a de novo evaluating violation of the law of the U.S.C.SA. for the Fifth Circuit and the Supreme Court of the United States.

31

## 11. THE INITIATING "RACKETEERING INJURY" OF THE ILLEGAL 2012-2014 NEW JERSEY LICENSE REVOCATION

**49**. In or around late 2005, certain members of **The Kaul Cases** Defendants commenced conspiring to cause the knowingly illegal revocation of Plaintiff Kaul's NJ license, in order to eliminate him from the burgeoning minimally invasive spine surgery market, a market in which his practice was rapidly expanding consequent to his 2005 invention of the percutaneous spinal fusion. This procedure revolutionized the field of spine surgery, and was perceived by **The Kaul Cases** Defendants as a threat to their commercial and professional practices.

**50**. The 2014 revocation proceeding was illegal ab initio, was conducted illegally, pursuant to Jarkesy and the Constitution and remains illegal. Consequent to the revocation, there did occur and continues to occur immense injury to Plaintiff Kaul's life/liberty/property/reputation and to his human/civil/constitutional rights. These violations and injuries are ongoing and with the passing of each day, there are **"new"** injuries/violations/losses, none of which have been remediated-rectified-recompensed. Plaintiff Kaul's license was illegally suspended on April 2, 2012, and as of July 9, 2024, he has sustained four thousand four hundred and eighty-one (4.481) days of injury to his life/liberty/property/reputation.

**51**. One of the issues that appears in all of the cases, other than **The Kaul Cases** Defendants **"pattern of racketeering"**, is the illegal 2014 NJ revocation. It appears in K11-19, K11-20, K11-22 and K11-23 all of which are based on the central issue decided in Jarkesy on June 27, 2024, by SCOTUS, that being the illegality/unconstitutionality of the jury-less deprivation of a person's life/liberty/property by administrative agencies/persons within administrative tribunals/offices.

**52**. But for the illegal 2014 revocation, Plaintiff Kaul would not have been caused injury (2012-2024) to his life/liberty/property/reputation and violations of his human/civil/constitutional rights.

**53**. A list exists within the record of **The Kaul Cases** of the interested parties, persons and entities inextricably involved in the perpetration of the injuries and violations and or the witnessing and or facilitation of the violations, injuries and conspiracy perpetrated against Plaintiff Kaul.

**54**. Plaintiff Kaul respectfully asserts that the Rule 8(b)(6) admissions of fact within K11-24 by all K11-24 Defendants, in that none of the K11-20 allegations/facts were denied by any of the K11-20 Defendants, does further substantiate the entry of Summary Judgment in K11-24. The January 7, 2024 dismissal with prejudice of the legal claims in K11-20 does not negate Defendants Rule 8(b)(6) admissions of fact pursuant to their failure to deny the allegations/facts.

## 12. BASIS FOR ALL DISTRICT STANDING

**55.** Plaintiff Kaul has standing to bring suit against any/all of **The Kaul Cases** Defendants in any district court within the United States District Court, because **The Kaul Cases** Defendants caused him an illegal injury in April 2012 in all states/districts by using the US wires to disseminate, through the entities of the National Practitioners Data Bank and Defendant FSMB, Co-conspirator NCMB and all state medical boards, information regarding the knowingly fraudulent suspension/revocation proceedings of Plaintiff Kaul's New Jersey license.  The illegality of the 2014 NJ revocation was established on June 27,2024 by SCOTUS in Jarkesy. The NPDB became a co-conspirator in the perpetration of the racketeering schemes detailed within **The Kaul Cases.**

**56.** This information, procured through fraud and fraudulent in nature/form, was entered onto the official record and had the immediate injurious effect of preventing Plaintiff Kaul from obtaining a license in any/all states/districts.

**57.** Since April 2012, Plaintiff Kaul has continued to be caused injury in all states/districts because **The Kaul Cases** Defendants with Defendant FSMB being the 'central cog' of the conspiracy, have perpetuated the injurious effect by obstructing Plaintiff Kaul's right/ability to procure a license and or have his NJ license reinstated.

**58.** Similarly, Plaintiff Kaul's economic standing/reputation/livelihood/liberty/life/social standing/professional standing/physical standing have been injured and have continued to be unlawfully exacerbated, consequent to **The Kaul Cases** Defendants willful/knowing and illegal obstruction of Plaintiff Kaul's litigation and license procurement efforts in the American courts and state medical boards.

**59.** On November 5, 2020 and then again on April 25, 2024 (**Exhibit 7**) Plaintiff Kaul affirmatively established the licensing injury in every state, and in 2024, the fact that Plaintiff Kaul is not in possession of a license in any state/district, including New Jersey or the District of Columbia despite a persistent/material/concerted effort since 2012 (Plaintiff Kaul's attempts at a 'peaceful' negotiation were ignored/rejected), and despite the fact that new law and new facts (see below) irrefutably establish that the 2012/2014 NJ suspension/revocation were/are illegal, DOES unequivocally establish standing in all districts.

**60.** Almost all of **The Kaul Cases** Defendants/their lawyers have 'minimal contacts' with every state/district within the United States, and either benefit or have benefited from a 'stream of commerce' within that state/district, including the District of Columbia, and the one or two that do not, have used and continue to use the US wires/mail to cause injury to Plaintiff Kaul and to conduct personal/business affairs within all states/districts of the United States.

# C. FACTS

## 13. STATEMENT OF NEW LAW, NEW FACTS AND ADMITTED FACTS AND THEIR NULLIFICATIN OF ALL PRIOR FACTS AND LAW.

**61**. K11-20 is brought based upon new law and new facts that have emerged since the unauthorized June 14, 2024, dismissal of K11-17 of Chief Judge Richard E. Myers III, a jurist who was knowingly conflicted consequent to an appeal Plaintiff Kaul filed against him in K11-18 in the U.S.C.A. for the 4th Circuit on May 6, 2024 (Case No. 24-1417). Plaintiff Kaul noticed the E.D.N.C. and the U.S.C.A. for the 4th Circuit as to the invalidity of the June 14, 2024, order.

**62**. An element of the factual foundation of K11-20 consists of material facts admitted in prior cases of **The Kaul Cases**, facts that became admitted upon **The Kaul Cases** Defendants failure to deny the facts within thirty (30) days pursuant to Rule 36. Another element of the factual foundation of K11-20 pertains to Rule 8(b)(6) and the admission of all fact within all of **The Kaul Cases**, consequent to the fact that none of **The Kaul Cases** Defendants denied any of the facts asserted in any of the Complaints (2016-2024), thus causing the facts to become admitted pursuant to Rule 8(b)(6) for all purposes. Rule 8(b)(6), unlike Rule 36, deems facts admitted for all purposes and not just the case from which the admission arises, and one of those purposes includes Summary Judgment.

### a. NULLIFICATION OF ALL PRIOR ADMINISTRATIVE/STATE MEDICAL BOARD/STATE/BANKRUPTCY/DISTRICT/APPELLATE PROCEEDINGS BY JARKESY + TOPER + ADMITTED FACTS

**63**. Jarkesy and Toper nullify of all legal opinions/orders/proceedings in all administrative/state/bankruptcy/family/district/appellate/state medical board in all states in the United States that occurred after April 2, 2012, and had any relation/association/causation/connection or another link to the illegal 2012/2014 suspension and revocation.

**64**. The within stated corpus of new law/fact further **negates/nullifies** all prior opinion within the New Jersey administrative law proceedings (2010 to 2014) that caused the knowingly illegal suspension/revocation of Plaintiff Kaul's NJ license (2012/2014).

**65**. It also **negates/nullifies** all prior opinion within the United States District Court (2016-2024) including the September 12, 2022, opinion-injunction of **The Kaul Cases** Defendant, James Paul Oetken, and all opinions/orders that were either based on or incorporated findings/opinion/orders regarding the illegal 2012 suspension and or 2014 revocation. The 2014 revocation was the 'poisoned seed of greed-envy that spawned the poisoned tree' from which **The Kaul Cases** Defendants did eat/live for twelve (12) years.

**b. ONGOING  CAUSATION OF NEW CLAIMS, INJURIES, VIOLATIONS AND DAMAGES.**

66. The filing of new claims based on new facts/law and ongoing/**"new"** offenses and injuries is pursuant to Jarkesy/Loper/ Lawlor v. National Screen Service Corp., 349 U.S. 322 (1955)/Sedima, S/P.R.L. v. Imrex Co., Inc., 473 U.S. 479 (1985)/Agency Holding v. Malley-Duff, 483 U.S. 143 (1987)/Continuing Violations Doctrine/Bodner v. Banque Paribas 114 F.Supp.2d 117 (2000).

## RELEVANT CHRONOLOGY:

**c. JUNE 28, 2024: 22-451 LOPER BRIGHT ENTERPRISES ET AL v. RAIMONDO SECRETARY OF COMMERCE ET AL. ARGUED JANUARY 17, 2024-DECIDED JUNE 28, 2024:**

21. The overruling of the Chevron doctrine of deference in Loper is of immense relevance to the power of a district court to reverse an administrative-agency action, particularly in light of the ruling in Jarkesy, as to the unconstitutionality of administratively based license revocations/civil penalties. Throughout **The Kaul Cases**, an element of the relief sought by Plaintiff Kaul has been to have the district court order **The Kaul Cases** Defendant, New Jersey Board of Medical Examiners to reinstate his NJ license, a license the illegal revocation of which was a consequence of admitted facts of, amongst other things, bribery/perjury/public corruption/fraud/evidential tampering/witness tampering/judicial corruption. The Loper holding empowers this district court to grant Plaintiff Kaul this relief.

**d. JUNE 27, 2024: 22-859 SECURITIES AND EXCHANGE COMMISSION v. JARKESY ET AL. ARGUED NOVEMBER 29, 2023-DECIDED JUNE 27, 2024**

67. SCOTUS concurred with the U.S.C.A. for the Fifth Circuit in finding that the revocation of Respondent Jarkesy's trading licenses and imposition of civil monetary penalties by an in-house administrative 'judge' and agency, absent an Article III independent judge/jury, did violate the Constitution and Respondent's Constitutional Rights. SCOTUS affirmed the judgment of the U.S.C.A. for the Fifth Circuit and remanded the case to the U.S.D.C. for the Southern District of Texas for proceedings consistent with the opinion.[1]

68. In the K11-17 Complaint, Plaintiff Kaul set forth a fact pattern that mirrors and indeed exceeds that within the Jarkesy case, in that Plaintiff Kaul was subjected in a period from at

---

[1] In K11-17 on April 30, 2024, Plaintiff Kaul judicially noticed the E.D.N.C. of the May 18, 2022, opinion of the U.S.C.A. for the 5th Circuit, of the pending SCOTUS decision and of its likely invalidation of the illegal 2014 NJ license revocation (**K11-17: D.E. 103**). However, in his June 14, 2024, dismissal with prejudice of K11-17, Chief Judge Myers failed to analyze the effect of the 5th Circuit ruling and the potential effect of the SCOTUS ruling. Chief Judge Myers ought to have simply waited for the June 27, 2024, SCOTUS decision, which, as Plaintiff Kaul stated, affirmed the decision of the 5th Circuit. Instead, Chief Judge Myers bewilderingly dismissed the case with prejudice, knowing that the new law would and does substantiate the filing of new claims.

least 2012 to 2024 of admitted ongoing and **"new"** violations of his human/civil/constitutional rights and injuries to his life/liberty/property/reputation, on a felonious scale.

**69.** The facts admitted within K11-17 caused the district court to enter an ORDER FOR DISCOVERY PLAN on March 13, 2024 and these admitted facts in conjunction with the K11-20 **"new"** facts, as interpreted pursuant to <u>Jarkesy</u>, do substantiate in K11-20 the issuance of a Rule 26 Order, as was issued properly by Chief Judge Myers on March 13, 2024, in K11-17. The legal correctness of the issuance of the March 13, 2024, order is consistent with the SCOTUS ruling in <u>Jarkesy</u>, in that the district court's dismissal of the case constituted an error that resulted in the case being remanded.

**70.** From 2012, Plaintiff Kaul has been asserting that the NJ administrative persons/agencies perpetrated suspension-revocation of his license stemmed from an unconstitutional/illegal configuration of the mechanism of physician regulation, was illegally conducted and was/is illegal. And now in 2024 in <u>Jarkesy</u> SCOTUS has validated Plaintiff Kaul's assertions, all of which however were dismissed and denounced as **"implausible-conspiratorial-harassing-frivolous-unreasonably burdensome-vexatious-oppressive-impermissibly order violating-procedurally premature-legally unsubstantiated-unentitled-irrelevant-legally foundationless-unauthorized-bizarre-invalid-far-fetched-flawed-non-viable-unjustified-discovery scope violating-blatantly order violating-intentionally order violating-improper-unnecessarily delaying-needlessly cost incurring-unreasonably excessive-voluminous-repetitive-complicated-ambiguous-unclear-abusive-unreasonable-incoherent-speculative-sweepingly broad-imaginary-redundant-repetitive-repugnant-unsupported-illusory-scandalous-'boot-strapping'-'bad-faith'-acriminous-non-productive"** by **The Kaul Cases** Defendants and less than ten (10) of the six hundred and seventy-seven (677) district judges in the United States District Court. This group is now associated with the wrong minority view, and will forever be, unless the due process-impartial tribunal rights/clauses within the Constitution are repealed.

**71.** The <u>following section</u>, although not comprising new facts and being an excerpt from K11-17, is inserted here due to its probity to the relevance/application of <u>Jarkesy</u> to the events surrounding the 2014 illegal license revocation and to the outcome of K11-20, which Plaintiff Kaul respectfully asserts will be guided by the SCOTUS ruling in <u>Jarkesy</u>.

**e. NULLIFICATION OF DEFENDANT-RESPONDENT OETKEN'S K11-7 SEPTEMBER 12, 2022 'INJUNCTION' BY JUNE 27, 2024, SCOTUS OPINION IN JARKESY**

**72.** The illegality of the April 9, 2012/March 24, 2014, suspension/revocation of Plaintiff Kaul's NJ license was finally and indisputably established on June 27, 2024, by the SCOTUS ruling in <u>Jarkesy</u>, and is analogized by Plaintiff Kaul in K11-19 with the November 29, 2023, <u>Jarkesy</u> ruling of the U.S.C.A. for the Fifth Circuit (<u>K11-19: D.E. 1</u>). K11-18 Defendant-Respondent Oetken's K11-7 September 12, 2022 'order-injunction' was based, as were all of **The Kaul Cases** Defendants defenses/judicial opinions (2016-2024) on the illegal April 9, 2012/March 24, 2014, suspension/revocation. For example, Defendant-Respondent Oetken states in his knowingly fraudulent K11-7 September 12, 2022, opinion/order of dismissal and purported injunction:

**"This case is another chapter in a long saga of repetitive, frivolous lawsuits pro se Plaintiff Richard Arjun Kaul has brought against numerous defendants regarding revocation of his license to practice medicine."** Kaul v. Fed'n of State Med. Boards, 21-CV-57, 2021 WL 6550884, at *1 (N.D. Tex. Sept. 17, 2021), report and recommendation adopted, 21-CV-57, 2022 WL 171294 (N.D. Tex. Jan. 19, 2022) ... **From the date of this Opinion and Order, Plaintiff Kaul is barred from filing in any United States district court any action, motion, petition, complaint, or request for relief against any of the Defendants named in this litigation that relates to or arises from (i) the denial of his medical license;** (ii) subsequent litigation proceedings initiated by the Defendants here before the date of this Order; (iii) subsequent litigation proceedings initiated by Plaintiff Kaul before the date of this Order; without first obtaining leave from this Court. Any motion for leave must include the caption "Request for Permission to File under Filing Injunction" and must be submitted to the Pro Se Intake Unit of this Court along with Plaintiff Kaul's proposed filings."

**73.** The tyrannical illegality and life-ending potential of Defendant-Respondent-Oetken's purported 'injunction' is exposed for just that in the light of SCOTUS in Jarkesy. He attempted to foreclose Plaintiff Kaul from ever holding accountable those who knowingly committed the crime of illegally revoking his license and maliciously causing twelve (12) years-plus of injury to his life/liberty/property/reputation and twelve (12) years-plus of violations of his human/civil/constitutional rights. The extremis of such malfeasance is explained by nothing except that of a judicially perverted state-of-mind and bribery/public corruption, the latter felonies to which he has twice already admitted.

**74.** The judicial profession is sworn to the Constitution with no allegiance to individual judges, and Plaintiff Kaul asserts with the greatest respect for Chief Judge Myers that he had an absolute obligation to his oath and the Constitution to have examined the serious allegations/facts in K11-18, facts that are now nonetheless admitted. Had Chief Judge Myers applied the same public corruption standard that he applied as a US Attorney, K11-17/K11-18 would have been advanced into discovery, but he did not, and in failing to do so, did effectively state that he holds the public to a higher standard than judges, governors and other public servants, particularly the corrupt ones.

**75.** Regardless, prior to June 27, 2024, Plaintiff Kaul had established that Defendant-Respondent Oetken's September 12, 2022 'order-injunction' was a 'Fraud on the Court', the evidence/facts of which Plaintiff Kaul submitted with the K11-17 Complaint filed on November 20, 2023, in the E.D.N.C. (K11-17: D.E. 1-7 + 1-14). This corpus of evidence/fact were part of Chief Judge Myers' consideration in the issuance of the March 13, 2024, ORDER FOR DISCOVERY PLAN. The correctness of Chief Judge Myers March 13, 2024, action has been vindicated by the June 27, 2024, SCOTUS ruling in Jarkesy. The April 9, 2012/March 24, 2014, suspension/revocation were/are illegal as were and are all consequent injuries to Plaintiff Kaul's life/liberty/property and violations of his human/civil/constitutional rights (2012-2024).

**76.** It was **The Kaul Cases** Defendants corruption/harassment/intimidation (2016-2024) of certain district court judges within the United States District Court that caused the rendering of

false opinion based principally on the illegal April 9, 2012/March 24, 2014, suspension/revocation. In fact, U.S.D.J. Kevin McNulty, the brother-in-law of **The Kaul Cases** Defendant, Senator Charles Schumer, a politician engaged for decades in quid pro quo schemes with the banking-insurance industry, did in his June 30, 2017, order dismissing K1 (K1: D.E. 200) state the following in regard to the 2012/2014 suspension/revocation:

**"But the state afforded Dr. Kaul the full panoply of due process rights during the disciplinary proceedings … The disciplinary proceedings possessed virtually all the usual and expected safeguards, and therefore the probative value of allegations that additional safeguards could have been provided is very low. E.g., Matthews v. Eldridge, 424 U.S. 319, 334-35 (1976)"**

77. The knowing falsity of U.S.D.J. Kevin McNulty's June 30, 2017, opinion is highlighted by Jarkesy, as U.S.D.J. McNulty could not have but known that the administrative board proceedings provided none of the due process protections mandated by the Constitution, and as detailed in Jarkesy. McNulty, in seeking to validate Defendant Solomon's knowingly fraudulent December 13, 2013 'opinion', did quote substantial sections of it within his equally fraudulent June 30, 2017, opinion, and used one fraud to buttress another fraud. This theme of perpetuating a knowing fraud from one legal proceeding to another was further exemplified by Defendant-Respondent Oetken in his September 12, 2022 'opinion-order-injunction':

**"Plaintiff Kaul has never received any relief in these cases. District courts in the District of New Jersey have dismissed some. See, e.g., Kaul v. Christie, 16-CV-2364, 2019 WL 920815 (D.N.J. Feb. 22, 2019) (McNulty, J.) (granting motion to dismiss); Kaul v. Christie, 372 F. Supp. 3d 206 (D.N.J. Feb. 25, 2019) (McNulty, J.) (granting motion to dismiss); Kaul v. Christie, No. 16-CV-2364, 2019 WL 13176430, at *4 (D.N.J. July 29, 2019) (Martinotti, J.) (denying motion for reconsideration); Patel v. Crist, No. 19-CV-9232, 2020 WL 64618, at *1 (D.N.J. Jan. 7, 2020) (Vazquez, J.) (granting motion to dismiss); Patel v. Crist, No. 19-CV-8946, 2020 WL 64571, at *1 (D.N.J. Jan. 7, 2020) (Vazquez, J.) (granting motion to dismiss); Patel v. Crist, No. 19-CV-9232, 2020 WL 6156772, at *1 (D.N.J. Oct. 20, 2020) (granting motion to dismiss); Patel v. Crist, No. 19-CV-8946, 2020 WL 6156751, at *1 (D.N.J. Oct. 20, 2020) (granting motion to dismiss); Kaul v. Murphy, No. 21-CV-13063, 2021 WL 3663873, at *1 (D.N.J. July 9, 2021) (dismissing complaint sua sponte). Kaul has voluntarily dismissed others. See, e.g., Kaul v. Christie, No. 19-1651, 2019 WL 4733531, at *1 (3d Cir. June 20, 2019) (dismissing appeal without prejudice pursuant to Fed. R. App. P. 42(b)); Kaul v. Stein, No. 20-3522, 2021 WL 6197149, at *1 (3d Cir. Nov. 12, 2021) (dismissing appeal pursuant to Fed. R. App. P. 42(b)); (Dkt. No. 101 at 3-4.) But Kaul continues to file lawsuits in various jurisdictions."**

78. In K1 (February 22, 2016, to November 16, 2021) U.S.D.J. McNulty knew that the revocation proceeding was conducted illegally, and the revocation was/is illegal, and knew that his revocation related orders of dismissal/denial of discovery were similarly illegal.

79. In K11-17 (August 19, 2021, to September 12, 2022), Defendant-Respondent Oetken knew that the revocation proceeding was conducted illegally, that the revocation was/is illegal and that U.S.D.J. McNulty's revocation related opinions/orders were similarly illegal, but

nonetheless based his September 12, 2022, purported 'order-injunction' on these frauds/illegalities, thus rendering them illegal.

**80.** In K11-17, U.S.D.J. Myers did initially disregard Defendant-Respondent Oetken's September 12, 2022, purported 'order-injunction' by issuing an ORDER FOR DISCOVERY PLAN on March 13, 2024, but did then utilize them as the foundation for his June 14, 2024, dismissal with prejudice of K11-17.

**81.** The June 27, 2024, SCOTUS ruling in Jarkesy has invalidated all of these opinions/others, and has effectively 'turned the clock-back' to 11 am EST on April 9, 2012.

**82.** Every magistrate./district judge involved in dismissing/obstructing **The Kaul Cases** knew that they were involved in the perpetration of a **"pattern of racketeering"** within the United States District Court, and the perpetuation of a 'Fraud on the Court'.

**83.** Defendant-Respondent Oetken's fraud was perpetuated by Chief Judge Myers in his June 14, 2024, opinion-order, an order, the totality of which is undermined by Jarkesy, which finds illegal the 2014 revocation and, in the March 13, 2024, ORDER FOR DISCOVERY PLAN and in the fact that Chief Judge Myers was conflicted and did not have the authority to act within K11-17.

**84.** It is noteworthy that **The Kaul Cases** Defendant Charles Schumer (K3), the brother-in-law of U.S.D.J. Kevin McNulty, sponsored both McNulty and Oetken for seats on the federal bench. Schumer illegally obstructed Plaintiff Kaul's prosecution of **The Kaul Cases**, a prosecution that involves members of the banking-insurance industry, his biggest political 'donors'.

## f. THE ILLEGALLY CONDUCTED ADMINISTRATIVE LAW PROCEEDINGS AND BOARD REVOCATION (APRIL 9, 2013, TO MARCH 24, 2014)

**85.** In mid to late 2012, having agreed upon the terms of the various quid pro quos, Defendant Solomon entered into the conspiracy, that unbeknownst to him at the time would expand over the next twelve (12) years to include, but to name a few, the New York Stock Exchange, every state medical board, a bank, disqualified corrupt judges, share price-dropping insurance companies and the felonies of kidnapping/illegal imprisonment/attempted drugging-killing.

**86.** Defendant Solomon, a corrupt person, acted as the judge/jury within the April 9 to June 28, 2013, license revocation proceeding within the New Jersey Office of Administrative Law.

**87.** The proceeding was a charade and a massive illegal fraud, the sole purpose of which was to have Plaintiff Kaul's license illegally revoked, in order to eliminate Plaintiff Kaul from the minimally invasive spine surgery market,  an elimination from which his competitors illegally profited at his expense.

**88.** Defendants Christie/Solomon became enriched through bribes from their perpetration of Plaintiff Kaul's elimination.

**89.** Plaintiff Kaul's insurance competitors, including Defendant Allstate, schemed with the revocation to not pay Plaintiff Kaul monies they owed him, while Plaintiff Kaul's physician competitors would seize a larger part of the minimally invasive spine surgery market.

**90.** All of Plaintiff Kaul's competitors were motivated and invested in the knowingly illegal revocation of Plaintiff Kaul's lIcense.

**91.** Defendant Solomon knew that his participation in the quid pro quo schemes was illegal, but perpetrated the scheme nonetheless with a sense of impunity derived from his belief that Plaintiff Kaul would never expose his crimes and those of **The Kaul Cases** Defendants.

**92.** The hearing commenced on April 9, 2013, and concluded on June 28, 2013, and as part of the charade it involved witnesses, lawyers, and large volumes of testimony.

**93.** Plaintiff Kaul presented fifteen (15) witnesses, that included highly respected lawyers/surgical center consultants/an ex-executive of the New Jersey Medical Board/expert physician witnesses/patients whose testimony undermined that presented by the state.

**94.** On December 13, 2013, Defendant Solomon found all fifteen (15) witnesses to be not credible.

**95.** Plaintiff Kaul's lawyer's cross examination of the state's 'star' witness on May 6, 2013, caused him to admit that there were no standards for the performance of minimally invasive spine surgery, thus disproving the state's case and exposing its fraudulence.

**96.** The no standards admission undermined the state's entire case, as it's argument was that because Plaintiff Kaul was not a neurosurgeon, he had violated the state 'expert' (Dr. Gregory Przybylski) neurosurgeon's false standard.

**97.** **The Kaul Cases** Defendants and the state brought the case despite knowing that Plaintiff Kaul had invented the percutaneous spinal fusion procedure in 2005 and had successfully performed eight hundred (800) of them from 2003 to 2012 in state licensed surgical centers in which he had been credentialed.

**98.** The state had knowledge of these facts, but did in 2012, in the 'reign' of Defendant Christie, suddenly and very publicly declare that Plaintiff Kaul was **"an imminent threat to the public"**, and therefore his license had to be revoked to save the public.

**99.** In April 2018, the state's 'expert' neurosurgeon, Dr. Gregory Przybylski was publicly disciplined by the American Association of Neurological Surgeons for having committed perjury while testifying as an 'expert' in a case against another neurosurgeon.

**100.** Plaintiff Kaul brought this fact to the attention of the New Jersey Medical Board and the District of New Jersey. It was ignored.

**101.** In the period from September 2013 to December 2013, Plaintiff Kaul was informed that because he had proved the falsity of the state's case, Defendant Solomon would, as ordered by Defendant Christie, falsify his report.

**102.** Plaintiff Kaul sent several letters to Defendants Christie/Solomon requesting that the matter be investigated. His pleas were ignored.

**103.** However, despite Plaintiff Kaul's disproval of the state's case, Defendant Solomon did, on December 13, 2013, issue a one hundred and five (105) page report that bore little or no resemblance to submitted evidence, a report in which he found all fifteen (15) witnesses presented by Plaintiff Kaul to be not credible and all witnesses presented by Defendant Christie to be credible.

**104.** Defendant Solomon recommended revocation and a three hundred thousand ($300,000) dollar fine and used the US wires to transmit his knowingly fraudulent report to **The Kaul Cases** Defendant, New Jersey Board of Medical Examiners.

**105.** On February 12, 2014, a time by which Plaintiff Kaul knew of the corruption that preceded and pervaded the illegal revocation proceedings, **The Kaul Cases** Defendant, New Jersey Board of Medical Examiners, conducted a hearing on Defendant Solomon's knowingly fraudulent report, a hearing the legitimacy of which Plaintiff Kaul challenged/refused to attend, stating: "**I consider all actions taken against my license since June 2012 to be illegal and will pursue all options to remedy the damage caused to my reputation and estate.**"

**106.** On March 24, 2014, **The Kaul Cases** Defendant, NJBME, adopted Defendant Solomon's knowingly fraudulent report and revoked Plaintiff Kaul's license and illegally levied a 'fine' of $450,000, in the knowledge that their actions and those of persons/agencies of the State of New Jersey involved in the revocation were illegal.

**g. INJURIES CAUSED TO PLAINTIFF KAUL CONSEQUENT TO DEFENDANT SOLOMON'S ILLEGAL ORDER OF REVOCATION**

**107.** Defendant Solomon's knowingly criminal actions and involvement in **The Kaul Cases** Defendants scheme to have illegally revoked Plaintiff Kaul's license constitute a willful perpetration of a knowingly illegal **"pattern of racketeering"** that commenced in or around 2005/6.

**108.** Defendant Solomon, a lawyer, knew of this **"pattern of racketeering"**.

**109.** Defendant Solomon also knew the criminal consequences of participating/furthering/profiting from such a scheme, and knew that the illegal revocation of Plaintiff Kaul's New Jersey license would cause Plaintiff Kaul to indefinitely sustain **"new racketeering injuries"** consequent to the fact that all his applications for state licenses would be denied/restricted based on the illegal New Jersey revocation.

42

110. Defendant Solomon also <u>knew</u> that Plaintiff Kaul would be foreclosed from obtaining a license in any state due to the illegal profiteering purposed anti-competitive interstate licensing system (the **"Federation Cartel"**) operated by/through Defendant FSMB.

111. Defendant Solomon <u>knew</u> that the illegal revocation would cause to Plaintiff Kaul an illegal deprivation of his economic standing/reputation/livelihood/liberty/life/professional standing/social standing/psychological standing/physical standing/financial standing.

112. Defendant Solomon <u>knew</u> that his actions were criminal, but his motive/method of greed and abuse of state power blinded him to the possibility that Plaintiff Kaul would expose his felonious conduct.

113. Plaintiff Kaul's injuries and their willful/knowing/ongoing commission extend over a period that commenced on at least February 3, 2010, and include injuries to the human/civil/constitutional/property/economic/reputation/livelihood/liberty/life/professional standing/social standing/psychological standing/physical standing RIGHTS of Plaintiff Kaul.

114. Defendant Solomon is liable for his criminal offenses (2013-2014) and their **ONGOING** consequences (2012-2023) to Plaintiff Kaul's life/liberty/property.

115. The exact date of Defendant Solomon's entering the conspiracy of <u>The Kaul Cases</u> Defendants' will be obtained through discovery, but regardless he is liable for the violations committed within/by the conspiracy's perpetrators prior to his enjoinder date. See <u>United States v. Coonan, 938 F. 2d 1553 (2nd Circuit 1991)</u>.

**h. <u>JUNE 17, 2024: STATE OF NEW JERSEY v. GEORGE NORCROSS, III, PHILIP NORCROSS, ET AL: INDICTMENT NO. 24-06-00111-S – SUPERIOR COURT OF NEW JERSEY LAW DIVISION – CRIMINAL:</u>**

116. Defendant Christie is a co-conspirator in the racketeering schemes detailed in the criminal indictment. Defendant Norcross, a democrat, funded the political campaigns of Defendant Christie, a republican, in return for receiving a $260 million tax break from the New Jersey Economic Development Authority (NJEDA.

117. These property development related schemes involved, amongst other things extortion/public corruption/threats of violence to person and property/bribery/wire fraud/kickbacks/money laundering and illegal deprivations of people's livelihoods and property, in the pursuit of political and economic gain in New Jersey during the gubernatorial tenure of Defendant Christie (2009-2017).

118. These crimes constitute further evidence of Defendant Christie's long-standing, but ultimately unsustainable **"pattern of racketeering"** and public corruption. An unsustainability dead-weighted in the imminent and changing political landscape in the United States.

**i. JUNE 14, 2024: KAUL v CPEP ET AL: 23-CV-00672:**

**119**. Chief Judge, Richard E. Myers III, did, on June 14, 2024, absent authority, inexplicably dismiss K11-17 with prejudice, after having entered an ORDER FOR DISCOVERY PLAN on March 13, 2024.

**120**. Chief Judge Myers acted with the knowledge that he and Plaintiff Kaul became adversaries on May 6, 2024, upon Plaintiff Kaul filing a Notice of Appeal in K11-18, a case Chief Judge Myers dismissed with prejudice on April 8, 2024.

**121**. This adversarial relationship was furthered on May 29, 2024, when Plaintiff Kaul filed an INFORMAL OPENING BRIEF in K11-18, an event that preceded Chief Judge Myer's unauthorized June 14, 2024, dismissal of K11-17.

**122**. Chief Judge Meyers knew that consequent to this adversarial relationship he was conflicted and did not have the authority to dismiss K11-17, as just two (2) months earlier in K11-18 and in his order dismissing K11-18, he stated:

**"As the Supreme Court has explained, mandamus relief "has the unfortunate consequence of making a district court judge a litigant".** (K11-18: D.E. 7).

**123**. In his June 14, 2024, opinion, Judge Myers failed to reconcile his conflict of interest with his dismissal of K11-17, or indeed provide any explanation of how the law provides him any authority to adjudicate a matter involving a **"litigant"** with whom he is in conflict in the U.S.C.A. for the 4th Circuit.

**124**. Judge Myers' knowing conflicted-ness precluded him from having any further involvement in K11-17, be it ministerial/adjudicative, and similarly precludes him from any further involvement in any case involving Plaintiff Kaul in any district court in the United States.

**125**. Plaintiff Kaul's fraud related June 15, 2024, NOTICE OF INVALIDITY remains unchallenged by Judge Myers and or any of the Defendants, and under the doctrine of 'Fraud on the Court' substantiates the filing of the same claims in the same/different court.

**127**. However, K11-20, as this Complaint evidences, is based on not only new law and new facts, but on the admitted factual foundation of K11-17.

**j. APRIL 9, 2012, TO JULY 2, 2024:**

**129. The Kaul Cases** Defendants illegal ongoing/"**new**" violations and injuries to Plaintiff Kaul's human/civil/constitutional rights and his life/liberty/property/reputation constitute **four thousand four hundred and sixty-six (4,466) days** of knowing/willful and malicious injury, for

which the law (Lawlor v. National Screen Service Corp., 349 U.S. 322 (1955)/Sedima, S/P.R.L. v. Imrex Co., Inc., 473 U.S. 479 (1985)/Agency Holding v. Malley-Duff, 483 U.S. 143 (1987)/Continuing Violations Doctrine/Bodner v. Banque Paribas 114 F.Supp.2d 117 (2000) substantiates a new claim for each unremediated-unrecitfied-unrecompensed ongoing/**"new"** injury.

**130.** K11-17 was filed on November 20, 2023, and dismissed on June 14, 2024, without any remediation-rectification-compensation of the ongoing/**"new"** injuries to Plaintiff Kaul's life/liberty/property.

**131.** K11-20 is filed on July 7, 2024, an increase in **"new"** injury to Plaintiff Kaul's life/liberty/property of two hundred and thirty (230) days, thus further substantiating the new claims of K11-20.

**132.** For Defendants to cause a cessation of their ongoing liability, requires Plaintiff Kaul be compensated for his past/ongoing injuries and for Defendants to cause no further or future injuries.

**133.** Similarly, a dismissal with prejudice of prior claims does not, pursuant to Lawlor v. National Screen Service Corp., 349 U.S. 322 (1955)/Sedima, S/P.R.L. v. Imrex Co., Inc., 473 U.S. 479 (1985)/Agency Holding v. Malley-Duff, 483 U.S. 143 (1987)/Continuing Violations Doctrine/Bodner v. Banque Paribas 114 F.Supp.2d 117 (2000). preclude Plaintiff Kaul from bringing new claims based on unremediated-unrectified-uncompensated past/ongoing/**"new"** facts of violation and injury.

**k. MARCH 25, 2024: KAUL v JAMES PAUL OETKEN: 24-CV-00185 (K11-18):**

**134.** On March 13, 2024, Chief Judge Myers caused the issuance of an ORDER FOR DISCOVERY PLAN in K11-17.

**135.** On March 15, 2024, the K11-17 Defendants conspired with K11-18 Defendant-Respondent Oetken to issue an 'order' in K11-7 based on his illegal September 12, 2022, anti-filing 'injunction' against Plaintiff Kaul. In the March 15, 2024, order, K11-18 Defendant-Respondent Oetken threatened to hold Plaintiff Kaul in contempt unless he dismissed K11-17 by March 29, 2024.

**136.** On March 18, 2024, the K11-17 Defendants filed the March 15, 2024 'order' onto the docket in the E.D.N.C. (K11-17: D.E. 72).

**137.** On March 25, 2024, Plaintiff Kaul filed suit against Defendant Oetken in the E.D.N.C., the case was assigned to U.S.D.J. Flanagan, but then reassigned to Chief Judge Myers by himself, and then dismissed with prejudice on April 8, 2024.

**138.** On May 6, 2024, Plaintiff Kaul filed a Notice of Appeal in the U.S.C.A. for the 4th Circuit and

**139.** On <u>May 29, 2024</u>, Plaintiff Kaul filed an INFORMAL OPENING BRIEF.

**140**. Defendant-Respondent Oetken's failure to deny the facts of the Complaint did cause their admission, and Defendant-Respondent Oetken has failed to contest the appeal, as has Chief Judge Myers.

**141.** The circumstances/facts of K11-17 and K11-20 are such that the factual foundation of K11-20 consists of fact admitted In K11-17 consequent to Defendants' failure to deny the facts, and of new law and new fact consequent to intervening/relevant SCOTUS rulings and unremediated-unrectified-uncompensated ongoing/**"new"** facts of violation and injury to Plaintiff Kaul's life/liberty/property.

# 14. STATEMENT OF FACT ADMITTED PURSUANT TO RULE 8(b)(6) AND RULE 36

**142.** The broad factual underpinning of the case consists of the above stated **new** fact and **fact** admitted within the May 15, 2024, PETITIONER ... NOTICE OF FACTS ADMITTED IN PROCEEDINGS WITH A DIRECT CONNECTION TO THE ISSUES ON APPEAL (CASE NO. 24-1417 IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT). This corpus of fact extends from 2008 to 2024 and pursuant to RICO's doctrine of vicarious liability confers culpability of the entire corpus of fact on all **The Kaul Cases** Defendants. In this period (2008 to 2024) not one fact within **The Kaul Cases** has been denied, and thus pursuant to Rule 8(b)(6), all facts have been admitted, including those in K11-17. The admittance of these now undisputed/material facts substantiates the entry of Summary Judgment against all Defendants.

## 15. STATEMENT OF FACT COMMON TO ALL DEFENDANTS, ALL ISSUES AND THE  OVERALL PURPOSE OF K11-20 AND THE KAUL CASES

**143**. The facts stated in this section provide context as to the Defendants motives, methods and factual commission in the perpetration of their schemes, **"patterns of racketeering"** and violations of rights/law.

### a. THE "HOSPITAL-INSURANCE-PHARMACEUTICAL-INDUSTRIAL COMPLEX – FEDERATION CARTEL" ("HIPIC- FC")

**144.** Within approximately the last thirty-three (33) years, there has emerged in the regulatory side of American medicine a collection of for-profit businesses/corporations that commenced initially as a 'cottage industry' in the process of physician credentialing and certification, and at the operative center of which exists Defendant FSMB **("FEDERATION CARTEL") ("FC")**.

**145.** This industry proved highly profitable as its lucrative nature was a product of the high stakes associated with a physician's career path, an incomparable one that involves the sacrifice to medicine of the entirety of one's young adulthood.

**146.** K11-20 places before this Court a body of ever-expanding evidence of the Defendants **"ongoing pattern of racketeering"** within the for-profit system of corporate-government alliances involved in the multi-billion-dollar enterprise of so-called physician regulation/discipline, a system of oppression/human rights violation at the head of which sits Defendant FSMB, the 'hub' of the 'hub-and-spoke' conspiracy of the **"Federation-Cartel" ("FC")**.

**147**. **The Kaul Cases** Defendants, in a period from 2016 to 2024, have, through schemes of judicial/political corruption, prevented this body of claim conclusive evidence from being submitted to a jury in America.

**148.** The evidence/admitted facts substantiate a concerted and knowing **"pattern"** of human/constitutional rights violations, whose origins extend back to March 2005, when Plaintiff Kaul invented and successfully performed the first outpatient minimally invasive spinal fusion:

https://www.youtube.com/watch?v=JX4bnRPPucI&t=26s
https://www.youtube.com/watch?v=50R5N9bJMAg&t=11s
https://www.youtube.com/watch?v=guwx5kuBiEg
https://www.youtube.com/watch?v=q_HBzqfggrg

**149.** Recognizing the immense value to a physician of his/her license and the immense deprivation associated with the loss of a license, Defendant FSMB commenced a politico-legal scheme to position itself as the 'gate-keeper' of state medical boards, in order to seize

complete control of the entire national mechanism of physician regulation, knowing that such control would generate huge profits for its executives/board members.

150. By the mid to late 1990s, Defendant FSMB had, through an aggressive political and public relations campaign that involved the funneling of large bribes to political lobbyists/politicians/media, deceived the public into believing that there existed many 'bad' doctors in America who deserved to be 'punished' by having their licenses suspended and or revoked.

151. In furtherance of this highly profitable scheme, Defendant FSMB manufactured a list that encouraged/encourages state medical boards to compete to have the highest rate of so-called disciplinary actions.

152. Defendant FSMB recognized the immense profits generated from a so called 'disciplined' physician and did in the late 1990s/early 2000s enter into a series of quid pro quo schemes with for-profit healthcare insurance corporations in which these corporations schemed to have eliminated physicians to whom they owed money, by bribing Defendant FSMB to use its power to have state medical boards suspend/revoke the targeted physicians' licenses.

153. Defendant FSMB viewed a 'disciplined' physician as a greater profit unit generator than a non-disciplined physician, as the former, in order to regain his/her livelihood, was forced to fund very expensive courses/programs/assessments/monitoring all established under the aegis of Defendant FSMB, with a percentage of these programs' profits being 'kick-backed' to Defendant FSMB.

154. Two of Defendant FSMB's programs are K11-8 Defendant PACE Program and K11-20 Defendant CPEP, both of whom defrauded Plaintiff Kaul, while cognizant of their conflicted state in that they knew Plaintiff Kaul was suing Defendant FSMB in K11-7 and K11-10 while they were respectively 'assessing' him for the issuance of his Pennsylvania license.

155. From the early 2000s this system of profiteering has expanded without governmental oversight or a public watchdog, and today aggressively promotes, to the detriment of the American public's welfare, the agendas of for-profit healthcare corporations, as it did with Purdue's oxycontin and the so called 'vaccine' from Pfizer/Astra Zeneca/Moderna/Johnson + Johnson.

156. The union/association-in-fact between these for-profit healthcare corporations and the "FC" is the "Hospital-Insurance-Pharmaceutical Industrial Complex – Federation Cartel ("HIPIC-FC") an entity previously identified/defined/described within The Kaul Cases.

157. However, on June 27/28, 2024, the SCOTUS rulings in Jarkesy and Loper, (Chevron deference defense dismantling) did force the "Federation Cartel" back into the control and oversight of the Constitution, and the public.

**158.** This scheme of profiteering being perpetrated by **The Kaul Cases** Defendants has caused and continues to cause immense injury to Plaintiff Kaul's life/liberty/property.

**159.** K11-20 seeks to hold accountable all persons who caused or conspired to cause injury to Plaintiff Kaul and or violated Plaintiff Kaul's human/civil/constitutional rights, in order to deter the continued perpetration of such state-corporate orchestrated malfeasance against the public and medical profession. That accountability is provided indisputable legal authority by the application of Jarkesy and Loper, the United States Constitution and RICO to the admitted facts, as detailed within this Complaint and Exhibits.

**b. DEFENDANTS CONVERSION OF THE AMERICAN CORPORATE/ POLITICAL/MEDICAL/ LEGAL BODIES INTO AN "ASSOCIATION-IN-FACT RACKETEERING ENTERPISE"**

**160**. Since approximately 1986, the ever-increasing economic confluence between the worlds of medicine, business, law, and politics has resulted in a healthcare system driven solely by profit/political ambition and one that acts increasingly to the lethal detriment of the American public.

**161.** The **"HIPIC - FC"** is controlled by for-profit corporations in a totalitarian manner that eliminates physicians it deems a threat to its corporate agenda.

**162.** The **"HIPIC-FC"** conducts physician elimination through the weaponizing of the medical regulatory/legal systems, whereby physicians who think/speak/act against the **"HIPIC-FC"** or encourage others to do so are eliminated by license suspension/revocation and or indictment/incarceration, the consequences of which are, amongst other things, reputational destruction/social isolation/loss of livelihood.

**163.** The most recent catastrophe of the **"HIPIC-FC"** is that related to the mass forced/coerced inoculations of the American public with an mRNA toxin, that the public was deceived into believing was a 'vaccine' against COVID-19. This gene manipulating toxin has resulted and will continue to result in, amongst other things, premature death, increased rates of cancer, cardiac disease, and early-onset dementia/neuro-cognitive deterioration.

**164.** K11-17 exposes the inner machinations of the **"HIPIC-FC"** and seeks to: **(i)** effectuate regulatory and political reform; **(ii)** cause the perpetrators of such tyranny to be monetarily penalized; **(iii)** re-distribute their wealth amongst the victims of their tyrannical corporate greed.

**165.** Commencing in 2005/6 and continuing in the present (2023) Plaintiff Kaul, consequent to having invented and successfully performed the first percutaneous spinal fusion, a procedure that revolutionized the field of spine surgery in a manner that immensely benefitted and continues to benefit the public, came under attack from **The Kaul Cases** Defendants, including the K11-20 Defendants.

50

166. The **"ongoing pattern of racketeering"** continues to cause **"new racketeering injuries"** to Plaintiff Kaul's life/liberty/property, and it is and has been the willful/knowing/purposeful intention of the K11-20 Defendants to cause a perpetuation of these offenses/injuries.

167. The purpose of the perpetuation is to attempt to prevent the further emergence of highly incriminating evidence of crimes orchestrated/committed by for-profit corporations in conspiracy/collusion with certain governmental persons/agencies against not just Plaintiff Kaul, but against the public and medical profession.

168. George Norcross owns a hospital system and insurance company in New Jersey, and was part of Defendant Christie's conspiracy to have Plaintiff Kaul's competing outpatient surgical center businesses eliminated.

169. K11-20 exposes the grand corruption of American political power by multi-national publicly traded for-profit corporations and their lethal profit purposed exploitation of the American public.

170. K11-20 details the nexus between this 'unholy' corporate-government alliance and certain persons within the medical/legal/judicial professions, a nexus through which are conducted massive schemes of racketeering that have caused, and continue to cause the wrongful deaths/incarceration of millions of innocent Americans.

171. The within pled **"pattern of racketeering"** commenced in or around 2008 with Defendant Christie's declaration of his gubernatorial/presidential ambitions; ambitions the pursuit of which required vast sums of money.

172. The <u>Kaul Cases</u> Defendants were motivated to conspire with Defendant Christie as they believed it would advance their political/economic agendas, through the exploitation and then elimination of Plaintiff Kaul/other physicians from whom they extracted free medical services (insurance carriers) and competed with in the healthcare market (physicians/hospitals).

173. From 2007/2008 to the present (2023), Plaintiff Kaul has been illegally injured and continues to be illegally injured in his economic standing/reputation/livelihood/liberty/life/professional standing/social standing/psychological standing/physical standing/financial standing by the perpetration of an **"ongoing pattern of racketeering"** by <u>The Kaul Cases</u> Defendants, purposed to attempt to conceal their prior crimes.

174. The crimes and their continued willful/knowing/malicious commission through the courts, the **"Federation Cartel"**, and the **"ongoing"** and **"new racketeering injuries"** (up to and including those in 2024) were facilitated/permitted by Defendant Solomon's knowingly illegal 2013/2014 aiding/abetting of <u>The Kaul Cases</u> Defendants acts of wire fraud/public corruption/subornation of perjury/kickbacks/evidential tampering/witness tampering.

**175.** The illegality of Defendant Solomon's crimes are established by the application of <u>Jarkesy</u> and <u>Loper</u>, the United States Constitution and RICO to the admitted facts.

**176.** Defendant Solomon's knowing commission of crime constituted and constitutes a critical role in the injuries caused to Plaintiff Kaul (2005-2024), injuries for which Defendant Solomon is liable both directly and vicariously pursuant to RICO's doctrine of vicarious liability.

**177.** <u>The Kaul Cases</u> Defendants **"pattern of racketeering"** has brought together the worlds of medicine, law, business, and politics, and has been conducted through judicial/administrative/financial/governmental agencies, and is, at its core, and as often described by U.S.D.J. Mark Wolf, a scheme of **"grand corruption"**, the type for which Judge Wolf has proposed an international anti-corruption court.

**c. <u>FACTS OF CONSPIRACY AS TO DEFENDANTS ALLSTATE/CHRISTIE AND CO-CONSPIRATORS HORIZON BLUE CROSS BLUE SHIELD/GEICO INSURANCE COMPANY (JULY 2012 TO MARCH 2014)</u>**

**178.** In late 2012, Defendant Solomon came out of retirement specifically to adjudicate Plaintiff Kaul's licensing case in the New Jersey Office of Administrative Law (<u>OAL DOCKET NO. BDS 08959-2012N</u>).

**179.** Defendant Solomon received bribes from Defendants Allstate/Horizon Blue Cross Blue Shield/Geico as part of a quid pro quo to ensure he ordered the <u>revocation</u> of Plaintiff Kaul's license, in order that Defendants Allstate/Horizon Blue Cross Blue Shield/Geico could use/did use as an excuse to not only not pay Plaintiff Kaul monies owed to him for rendered clinical services, but to sue him to attempt to seize all his assets to increase executive/corporate/shareholder profit and to attempt to eliminate the risk of Plaintiff Kaul suing Defendants.

**180.** The New Jersey Office of Administrative Law is part of the executive branch of New Jersey Government, and Defendant Solomon was appointed to adjudicate Plaintiff Kaul's case by Defendant Christie.

**181.** Defendant Christie received bribes from Plaintiff Kaul's competitors (insurance companies/hospitals/neurosurgeons) in the minimally invasive spine surgery market as part of a quid pro quo scheme purposed to have the medical board suspend and then 'rubber-stamp' the revocation recommended by Defendant Solomon on December 13, 2013, after the sham administrative proceedings (April 9 to June 28, 2013).

**182.** Commencing in approximately 2008, Defendant Christie began requiring vast sums of money to fund his various political campaigns to procure the offices of governor and president.

**183.** Defendant Solomon was controlled within the executive branch by its CEO, Defendant Christie.

**184.** Defendant Christie, in his quest for the 2016 Presidency, did order Defendant Solomon to ensure the revocation of Plaintiff Kaul's license by causing, if necessary, the final December 13, 2013, report to be falsified and to lie about the evidence/truth of the hearing if it vindicated Plaintiff Kaul.

**185.** In a time period between late 2012 and early 2013, Defendants Solomon and Christie did communicate directly and through intermediaries that Defendant Solomon would receive a percentage of the bribes before the issuance of his December 13, 2013, report of revocation and the balance after the report had been issued/widely publicized and Plaintiff Kaul's license revoked.

**186.** Defendants Solomon, Christie and their intermediaries agreed that as soon as the medical board had revoked Plaintiff Kaul's license (March 24, 2014), Plaintiff Solomon would be relocated out of the State of New Jersey to thwart any potential litigation by Plaintiff Kaul.

**187.** Defendant Solomon, not a wealthy man, was relocated to an extremely wealthy area of North Carolina which is where he has resided since late 2014.

**188.** This particular scheme of illegal insurance profiteering, a scheme spearheaded by the Blue Cross Blue Shield Association/Corporations, and part of the so called 'Healthcare Fraud Partnership', is now well recognized within the American healthcare sector and more indicted/license threatened physicians are taking their cases to trial and winning. See Drs. Aly Rifai and Lesly Pompy:

https://www.lehighvalleylive.com/news/2024/05/jury-clears-easton-psychiatrist-of-1m-heath-care-fraud-allegation.html

https://www.monroenews.com/story/news/crime/2023/01/10/dr-lesly-pompy-acquitted-all-charges-federal-drug-case/69790454007/

### d. US INSURANCE GIANT, BLUE CROSS BLUE SHIELD, HAS EXPOSED ITS TARGETING OF ETHNIC MINORITY PHYSICIANS FOR MASS INCARCERATION

https://www.drrichardkaul.com/so/20OWhtSL1?languageTag=en

**189.** In fact, the Flexner Report provides historical evidence that corroborates the facts within the above linked press release. The Report, published in 1910 at the behest of the Carnegie and Rockefeller Corporations, set forth a plan to design and control every element of medical education/licensing in order to subjugate the medical profession to corporate interests.

**190.** Within this scheme there was engineered a structural racism that continues today, and within which for-profit healthcare corporations, such as Defendants FSMB/Allstate/Co-Conspirator Geico conspire with governmental agencies/courts to illegally profit through exploitative schemes of false indictment/prosecution/incarceration and asset seizure of ethnic

minority physicians: **"Many aspects of the present-day American medical profession stem from the Flexner Report and its aftermath. The Flexner report has been criticized for introducing policies that encouraged <u>systemic racism</u>."**

**191.** This fact, as with many others, was submitted in K11-10, was unrefuted/uncontested/unrebutted by the Defendants and or Court and is thus admitted as a fact in support of the K11-20 claims.

e. <u>FACTS RELEVANT TO THE DEFENDANTS "ONGOING PATTERN OF RACKETEERING"</u>

(i) <u>The UC San Diego Physician Assessment and Clinical Education (PACE) Program</u>

**192.** In approximately September 2017, Plaintiff Kaul submitted a licensure application to the Pennsylvania Medical Board, and on February 7, 2020, an administrative court conducted a hearing.

**193.** Plaintiff Kaul's application was granted on May 27, 2020, on the condition he complete a so-called physician 'assessment course'. In April 2022, Plaintiff Kaul applied to K11-8 Defendant UC San Diego Physician Assessment and Clinical Education PACE Program (**"PACE"**), and from May to July 6, 2022, he underwent the first part of the course, which consisted of two (2) recorded interviews, that were conducted virtually.

**194.** On July 21/22 Plaintiff Kaul underwent the second part of the assessment, which was conducted on-site in San Diego, was video recorded and for which Plaintiff Kaul generated contemporaneous notes.

**195.** On October 17, 2022, K11-8 Defendant PACE issued a report replete with knowing falsehoods, as evidenced by Kaul's audio recordings/contemporaneous notes. Plaintiff Kaul repeatedly requested he be provided a copy of his case file/video record, but none was provided, and so Plaintiff Kaul filed suit against Defendant PACE on May 24, 2023, in the United States District Court for the Southern District of California (<u>23-CV-0955</u>) (K11-8), in which Plaintiff Kaul details the conflictual commercial nexus between Defendant PACE and Defendant FSMB.

(ii) <u>The New York State Medical Board</u>

**196.** Plaintiff Kaul's February 2021 application to the New York State Medical Board caused this board, in collusion/conspiracy with <u>The Kaul Cases</u> Defendants (NYS Medical Board is a commercial partner of Defendant FSMB) to perpetrate a fraud that his application was denied based on a supposed board subcommittee's purported opinion of a **"question of moral suitability"**. This was and is a lie. There is no record of any subcommittee ever being convened.

**197.** Plaintiff Kaul filed a petition in the New York State Supreme Court seeking a copy of this supposed opinion. The petition was denied on January 3, 2022, and Kaul moved in the First Department of the Appellate Court.

**198.** Notwithstanding the pendency of the matter in the Supreme Court, the New York State Medical Board scheduled a virtual hearing on October 3, 2022, a hearing attended by approximately twelve (12) persons, including a hearing officer and counsel for the board. The matter was abruptly truncated when Plaintiff Kaul alerted the panel that the issue of the board's fraud was pending in the appellate court.

## f. OTHER FACTS

**199.** Other relevant facts are incorporated into the legal claims. However, the most salient and irrefutable facts of **The Kaul Cases** Defendants' guilt are found within their ill-conceived May 27, 2021, kidnapping of Plaintiff Kaul, their June 14/15 illegal arrest-imprisonment-attempted drugging-killing and their seven-plus-years (2016-2022) commission of securities fraud.

**200.** These facts, in conjunction with the perjury/obstruction of justice/mail fraud/wire fraud/kickbacks/honest services fraud/extortion/bank fraud/bankruptcy fraud/racketeering/conspiracy/public corruption/judicial corruption/false imprisonment/false arrest committed by **The Kaul Cases** Defendants from 2008/2009 to 2024, are admitted.

**201.** The facts in **The Kaul Cases** are irrefutable proof of the K11-20 Defendants grand corruption of American judicial/political/medical bodies, and the illegal, rights violating effect that corruption has had for the last twelve (12) years (2012-2024) and continues to have on Plaintiff's human/civil/constitutional rights.

# 16. STATEMENT OF FACT SPECIFIC TO EACH DEFENDANT

## a. FACTS AS TO DEFENDANTS SOLOMON

**202.** The admitted facts substantiating Defendant Solomon's violations of Plaintiff Kaul's human/civil/constitutional rights and causing injury to his life/liberty/property are pled above, within the below claims and are referenced within the PETITIONER REQUEST PURSUANT TO FEDERAL RULE OF EVIDENCE 201 ... TO THE ISSUES ON APPEAL.

**203.** In 2013, Defendant Solomon, a lawyer and administrative law judge had the duty, right, responsibility and opportunity to halt **The Kaul Cases** Defendants crimes, but he did not because he had been bribed, and is as directly responsible, if not more than **The Kaul Cases** Defendants, for the crimes/violations/injuries committed and **continuing** to be committed against Plaintiff Kaul in 2024, eleven (11) years later.

**204.** Defendant Solomon knows the sum and substance of **The Kaul Cases** but has failed, as the law requires and per recent DOJ **"outsourcing"** policy regarding white-collar crime (See Cognizant Bribery Case: 2:19-cr-00120-MEF-1) to report his crimes or those of his co-conspirators to state or federal authorities.

**205.** The RICO predicate acts committed by Defendant Solomon, in collusion and conspiracy with **The Kaul Cases** Defendants, including the K11-20 Defendants have caused and continue to cause (2007/8-2024) a perpetration of a **"pattern of racketeering".**

**206.** This **"pattern of racketeering"** has been and continues to be perpetrated through certain courts within the United States District Court, certain persons within the United States Government and within the totality of the **"Federation Cartel" ("FC")**, an illegally configured syndicate that monopolizes the entire process of physician regulation and the multi-billion-dollar business of so called 'physician discipline'.

**207.** The commencement of the **"pattern of racketeering"** as pled in **The Kaul Cases**, coincided with the 2008/9 gubernatorial/presidential political ambitions of Defendant Christie, a co-conspirator in the June 13, 2024, criminal indictment against George Norcross III.

**208.** The principal motivation for **The Kaul Cases** Defendants participation in the conspiracy was the advancement of their political/economic agendas, through the exploitation and at the expense of Plaintiff Kaul/other physicians, mostly of Black/Indian/Hispanic ethnicity.

**209.** The principal motivation for continuing the conspiracy into 2024, is an increasingly desperate attempt to prevent Plaintiff Kaul from further exposing their crimes of **The Kaul Cases** Defendants, and now the SCOTUS rulings in Jarkesy and Loper and the admitted facts.

**210.** The crimes, their continued willful/knowing/malicious commission and the **"ongoing"** and **"new racketeering injuries"** (up to and including those in 2024) were precipitated/aided and abetted/perpetuated by Defendant Solomon's commission of, amongst other things, wire fraud/public corruption/subornation of perjury/kickbacks/evidential tampering/witness tampering, crimes for which

**211.** Defendants Solomon/Christie are liable for these crimes, both directly and vicariously pursuant to RICO's doctrine of vicarious liability.

**212.** The admitted facts substantiate Defendant Solomon's criminal state-of-mind, his criminal course of conduct, his criminal effort to conceal his misconduct/whereabouts and the **ongoing** consequences of his criminal conduct to Plaintiff Kaul's economic standing/reputation/livelihood/professional standing/social standing/psychological standing/physical standing/liberty/life.

**213.** Some of the admitted facts caused U.S.D.J. Noel Hillman on December 16, 2020, in K5 to issue a Rule 16 ORDER FOR SCHEDULING CONFERENCE (K5: D.E. 155) and U.S.D.J. Beth Bloom on July 6, 2023, to issue an ORDER REQUIRING SCHEDULING REPORT AND CERTIFICATES OF INTERESTED PARTIES. In both instances **The Kaul Cases** Defendants, including Defendant Solomon, corrupted the judicial process to prevent the cases moving into discovery.

**214.** On February 22, 2016, in K1 Plaintiff Kaul sued Defendant Solomon.

**215.** Defendant Solomon's failure to refute/contest/address the facts, did cause their admission.

**216.** Similarly, Defendant Solomon's liability as to the admitted facts inures from that pursuant to RICO's doctrine of vicarious liability, and specifically to the fact that **none** of **The Kaul Cases** Defendants ever refuted/contested/addressed/denied **any** of the evidence/facts within the entire body of **The Kaul Cases** (February 22, 2016, to July 7, 2024), thus causing all of them, including those below, to become admitted for themselves and vicariously for Defendant Solomon.

## b. FACTS AS TO DEFENDANT CPEP

**217.** The admitted facts substantiating Defendant CPEP's violations of Plaintiff Kaul's human/civil/constitutional rights and causing injury to his life/liberty/property are pled within the below claims and are referenced within the PETITIONER REQUEST PURSUANT TO FEDERAL RULE OF EVIDENCE 201 … TO THE ISSUES ON APPEAL.

**218.** Defendant CPEP did not deny one fact asserted against it within K11-17, facts pertaining to the felonies of amongst other things, perjury/bankruptcy fraud/bank fraud/wire fraud/embezzlement/public corruption/judicial corruption.

**219.** On September 17, 2017, Plaintiff Kaul commenced the application process for a license in the State of Pennsylvania.

**220.** On February 7, 2020,  a hearing was conducted as to Plaintiff Kaul's application.

**221.** On May 27, 2020, the hearing officer granted Plaintiff Kaul's application on condition he undergo an 'assessment course'. This order was ratified by the Pennsylvania Medical Board on February 8, 2021.

**222.** K11-8 Defendant PACE and Defendant CPEP were two of the recommended 'assessment course'  businesses.

**223.** In July 2022, Plaintiff Kaul paid for and underwent the PACE course, but at that time had no knowledge of K11-8 Defendant PACE's commercial relationship with Defendant FSMB.

**224.** Due to COVID restrictions, the part of the course that involved case discussions with a physician was conducted virtually.

**225.** Defendant PACE recorded the case discussions as did Plaintiff Kaul.

**226.** On October 17, 2022, K11-8 Defendant PACE issued a fraudulent report that falsified the case discussions.

**227.** Plaintiff Kaul sent a letter to K11-8 Defendant PACE that contained a link to the audio file of Plaintiff Kaul's recording of the case discussions and an analysis of the fraud perpetrated by 158. K11-8 Defendant PACE in their October report. There then ensued an email/letter exchange between Plaintiff Kaul and K11-8 Defendant PACE.

**228.** On <u>May 24, 2023</u>, Plaintiff Kaul filed suit against K11-8 Defendants PACE/Leung (<u>KAUL v UC SAN DIEGO PACE PROGRAM: 23-CV-00955</u>). K11-8 Defendant PACE and Defendant CPEP are both subjugate members of Defendant FSMB, and know of each other's activities.

**229.** However, on <u>January 17, 2023</u>, Plaintiff Kaul retained Defendant CPEP to conduct an assessment and submitted a deposit of nine thousand dollars ($9,000), with the balance of five thousand dollars ($5,000) submitted on February 6, 2023. The business is highly lucrative.

**230.** In a period from January 17, 2023, to February 22, 2023, Plaintiff Kaul underwent an intensive self-imposed study program, in which he devoted fourteen (14) hours every day to reading medical textbooks/articles, viewing hundreds of online medical educational videos, and having other physicians examine his case management knowledge and skills. In a period from January 17, 2023, to May 2, 2023, Plaintiff Kaul devoted time and effort to completing extensive questionnaires pertaining to his application and proposed practice.

**231.** In a period from February 22 to April 2023 Plaintiff Kaul underwent numerous verbal and written cognitive/psychological/physical/knowledge assessments, the latter of which were conducted virtually on February 22/23, 2023, with each one lasting approximately six (6) hours.

**232.** The February 22/23, 2023, knowledge and case management evaluations were conducted by Drs. Ajay Antony/Robert Brown/Michael Harned, all of whom, unbeknownst at that time to Plaintiff Kaul were/are senior board members of **The Kaul Cases** Defendant American Society of Interventional Pain Physicians (ASIPP),

**233.** Drs Antony/Brown/Harned all knew, as did Defendant CPEP, that they were conflicted, a conflicted state they willfully concealed from Plaintiff Kaul while conducting the case management evaluations/assessments, a concealment consistent with and in furtherance of **The Kaul Cases** Defendants scheme to attempt to prevent Plaintiff Kaul from having issued his Pennsylvania license. **The Kaul Cases** Defendants recognized/recognize that the economic enhancement caused to Plaintiff Kaul by the Pennsylvania license issuance would facilitate Plaintiff Kaul's prosecution of his claims against them.

**234.** At the conclusion of the February 22/23, 2023, assessments, Defendant CPEP informed Plaintiff Kaul that the report would be issued before the end of May 2023.

**235.** Plaintiff Kaul received no report by the end of May 2023 and was provided no explanation by Defendant CPEP as to the non-issuance.

**236.** Plaintiff Kaul, concerned consequent to his experience with K11-8 Defendant PACE, researched the three (3) physicians with whom he conducted case discussions and his research revealed that all three (3) physicians were senior board members of **The Kaul Cases** Defendant American Society of Interventional Pain Physicians (ASIPP).

**237.** Between May 16 and 23, 2023, Plaintiff Kaul informed Defendant CPEP via email of these conflicts and enquired: **"Did any of these three physicians (Antony/Harned/Brown) disclose their conflicts of interest to CPEP?**

**238.** Defendant CPEP's non-response constituted a tacit admission that they did know of their conflicts but did not expect Plaintiff Kaul would expose this fact.

**239.** On June 6, 2023, Plaintiff Kaul sent a letter to Defendant CPEP's in-house counsel, Alexis Angell, in which Plaintiff Kaul provided Defendant CPEP an opportunity to rectify their wrongdoing: **"I believe there are two (2) options: 1. The physician assessments are re-conducted by physicians with no professional, commercial connections/relations/associations, and as stated in my May 30, 2023 email to Ms. Besmanoff, these individuals will likely be found in academic/research settings. 2. CPEP issue a report containing the contents of all the tests and the reports of Antony/Harned/Brown with a statement/paragraph as to the conflicted nature of the reports and how/why the situation was permitted to come into existence, and cause further costly delay."**

59

**192.** On June 9, 2023, Defendant CPEP's CEO, Elizabeth Korinek emailed a letter to Plaintiff Kaul rejecting both options: **"CPEP is unable to agree to either option … CPEP will not re-conduct the Assessment nor issue an Assessment Report with the existing consultants and data"** and suddenly deciding that Plaintiff Kaul was not a **"suitable candidate"**.

**240.** On June 21, 2023, Plaintiff Kaul sent a letter to Defendant CPEP's CEO, Elizabeth Korinek, in response to her June 9, 2023, letter in which Plaintiff Kaul raises, amongst other things, Defendant CPEP's fraudulent, knowingly conflicted, and anti-competitive conduct: **"Conflict of Interest re: ASIPP: … Conflict of Interest re: Federation State Medical Boards … Your failure, in your June 9, 2023, letter to address/deny/contest/rebut these facts, constitute their tacit admission for the purpose of pending/future litigation … Mail Fraud … obstruct the delivery of documents from me.**

**241.** The arbitrary rejection of Plaintiff Kaul's logical suggestions and Defendant CPEP's sudden not **"suitable candidate"** agreement cancellation constitute further evidence in support of the of the K11-17 claims, the conspiracy element being pre-eminent.

**242.** On July 9, 2023, Plaintiff Kaul, in recognition of the overwhelming evidence of **The Kaul Cases** Defendants' conspiracy to prevent Plaintiff Kaul from satisfying the terms of the February 8, 2021, opinion/order of the Pennsylvania Medical Board regarding a physician assessment, sent a letter to the Pennsylvania Medical Board informing them of the obstruction and a request, in light of these facts, to modify the conditions of licensure.

**243.** As of the filing date of K11-20, Plaintiff Kaul has received no communication from counsel for the Pennsylvania Medical Board, despite several emails enquiring as to whether the board had granted the amendment. The Pennsylvania Medical Board is a subjugate member of Defendant Federation and conducts business with Defendant CPEP and **The Kaul Cases** Defendant PACE (K11-8).

## c. <u>FACTS AS TO DEFENDANT FEDERATION STATE MEDICAL BOARDS</u>

**244.** The admitted facts substantiating Defendant FSMB's violations of Plaintiff Kaul's human/civil/constitutional rights and causing injury to his life/liberty/property are pled within the below claims and are referenced within the PETITIONER REQUEST PURSUANT TO FEDERAL RULE OF EVIDENCE 201 … TO THE ISSUES ON APPEAL. Defendant FSMB has not denied one fact asserted against him within **The Kaul Cases,** in a period from October 2019 to June 2024, including those asserted in K11-17. Facts pertaining to the felonies of amongst other things, perjury/bankruptcy fraud/bank fraud/wire fraud/embezzlement/public corruption/judicial corruption.

(i) <u>DEFENDANT FSMB'S MONOPOLIZATION OF THE MULTI-STATE AMERICAN PHYSICIAN REGULATORY MARKET SUBJECTS THEM TO REGULATORY MARKET RELATED MULTI-DISTRICT LITIGATION</u>

**245.** The dismantling effect of SCOTUS in <u>Jarkesy</u> and <u>Loper</u> on the monopolistic violations of Defendant FSMB and the **"Federation Cartel"** with its subjugate state medical board members cannot be overstated.

**246.** For decades, the **"Federation Cartel"** operated a knowingly illegal/unconstitutional enterprise of illegal profiteering within American medicine, at the heart of which existed the knowingly illegal use of administrative state 'courts'/tribunals-lawyer-'judges' to cause the illegal revocation of physicians licenses. The scheme was perpetrated in furtherance of the corporate profit agenda of the **"FC"** and its corporate co-conspirators, the **"Hospital-Insurance-Pharmaceutical Industrial Complex – Federation Cartel" ("HIPIC – FC").** That weapon has been 'jammed'.

**247.** Defendant FSMB's illegal procurement of monopoly power of the entire mechanism and all elements of the process of physician education, training, board certification, licensing, credentialling, certification and so called 'disciplining' does deprive state actors of state sovereignty/immunity defenses in litigation related to licensing disputes, but in light of <u>Jarkesy</u>, this deprivation 'pails in light' to the fact that the administrative perpetration of revocations was illegal ab initio.

**248.** Defendant FSMB's monopolization of this system was totalitarian in nature and effect, was designed to subjugate/enslave the medical profession to obey the edicts/orders/agendas of for-profit healthcare corporations and to increase corporate profits through a ruthless slave-like exploitation of the public and medical profession.

**249.** A critical element of this system, one required for absolute control, was the element that prevents a physician whose license is suspended/revoked in any state, from obtaining a license anywhere in the world, unless and until he forfeits all his property to the system (insurance corporations/medical boards/lawyers), admits to his guilt, even though innocent and submits himself to punitive/harsh/unconstitutional/illegal terms as condition of his re-commencement of clinical practice and regaining a livelihood.

**250.** The denial of Plaintiff Kaul's petition for a D.C. license constitutes both an example of this element and a **"new racketeering injury"**, for which the law provides Plaintiff Kaul the right/standing to file suit in the District of Columbia.

**251.** In fact, the denial by every state of Plaintiff Kaul's applications does substantiate a <u>Jarkesy</u> related claim against **The Kaul Cases** Defendants and every state medical board in the district courts within every state.

## (ii) DEFENDANT FSMB'S SUPPRESSION OF FREE SPEECH, THE COVID VACCINE FRAUD AND PROFIT PURPOSED HUMAN RIGHTS ABUSES, TOXICITY AND DEATH

**252.** One of the principal themes of **The Kaul Cases**, has been that pertaining to the corrupt engineering of quid pro quo schemes by for-profit healthcare corporations with the

regulatory/political apparatus of American healthcare in which at its most fundamental, human life is sacrificed for corporate profit.

**253.** Defendant FSMB is a critical cog in this 'Soylent-Green' like machine, the ruthlessness of which was exposed during the so called COVID-19 pandemic.

**254.** Commencing in early 2020, just after the announcement of the purported pandemic, Plaintiff Kaul began writing WIX articles and filing legal documents that highlighted the multiple profit purposed COVID related frauds that mandated knowingly toxic and ineffective mRNA 'vaccines', the wearing of masks and ubiquitous, but non-specific PCR testing.

**255.** This information reached a massive global audience, as did that published by other dissenting voices that exposed these crimes against humanity, and threatened corporate profits.

**256.** Consequently, these corporations conspired with Defendant FSMB to have suspended/revoked the licenses of physicians who either used the internet to communicate the grave risks of the vaccine or advised their patients against being inoculated, and or, as in Plaintiff Kaul's case, attempt to obstruct applications for/issuance of licenses, as in the D.C..

**257.** Defendant FSMB/Co-Conspirator NCMB's 'muzzling' of the truth and dissemination of knowing falsehoods is ongoing, represents an **"open-ended pattern of racketeering"**, is a serious threat to the public's health/welfare and pertains not just to the COVID vaccine, but to a myriad of drugs/medical devices, whose manufacturers participate in quid pro quo schemes with Defendant FSMB.

**258.** On or about June 10, 2024, WIX deactivated Plaintiff Kaul's article publishing account on false pretenses, and refused to provide Plaintiff Kaul the names of those who had pressured them to deactivate the account. WIX recently became a publicly traded corporation, a corporation whose investors include corporations invested in **The Kaul Cases** Defendants Allstate/TD/Geico.

**259.** The WIX articles are:

a. May 11, 2020 – WIX Article: COVID 19 CRIMES AGAINST HUMANITY: **"The thrust of the case is that Defendant Allstate has, since at least 1999, engaged in massive schemes of bribery that have corrupted state medical boards. The Complaint alleges that this corruption is directly responsible, as of May 11, 2020, for over eighty thousand (80,000) deaths and one point three million (1,300,000) cases caused by COVID-19 infections."**. These facts are relevant to the racketeering, section 1983, and human rights charges

b. November 4, 2020 – WIX Article: COVID-19 DEATHS + MEDICAL BOARD RACKETEERING + THE SUPREME COURT OF THE UNITED STATES: **"Kaul respectfully asserts that a grant of the writ will mitigate future threats of COVID-19 like microbial pandemics ... "Kaul respectfully asserts**

that the grant of a writ will mitigate any further decrease in market capitalization of Defendants Allstate ..." . These facts are relevant to the Defendants ongoing racketeering injuries, in that unless the commencement of change is effectuated, the same corporate related death and destruction will continue within the west.

c. December 15, 2020 – WIX Article: COVID-19 MUTATION DEFEATS A VACCINE: **"The vaccine has caused the mutation and will provide no protection to the mutant virus now coursing through the planet's circulatory system. Of course, those corporations/executives raking In billions of dollars from having corrupt governments/politicians mandating vaccination programs, have insulated themselves and their families from harm. Two of these corporations are Berkshire Hathaway/Geico and Allstate Insurance Company."** . The uncontested/admitted facts within the release, in conjunction with the admitted facts further substantiate Summary Judgment.

**260.** The following documents, all part of and extracted from K11-10, contain facts highly probative to Defendant FSMB/Co-conspirator NCMB's perpetration of schemes, willfully violative of the Nuremberg Code, of forced/coerced programs of mass public inoculation with a knowingly lethal mRNA toxin. The K11-10 district judge's May 10, 2023, dismissal was an attempt to suppress a public examination of these facts and deprive the public of their right to know information critical to their health, welfare, and life, sacrificing the lives of people and their children at the 'gallows-guillotine' of corporate profit.

a. March 9, 2023 – K11-10: D.E. 1 Page 9 to 10 of 169: **"The COVID vaccine, as Kaul predicted, has now been found to be highly toxic/ineffective: https://www.drrichardkaul.com/so/24NPf5O65 This fact was known by the government/corporate entities that forced it on the world's population: https://theswisstimes.ch/swiss-banker-files-criminal-charges-over-false-covid-vaccine-statements/ In K11-7, the Defendants attempted to frame the Plaintiffs' assertion of these facts as evidence of the implausibility of their complaint, with terms such as "vast conspiracy" and "nutcase". These facts are now proven, and this country, like Switzerland, should have the courage to bring criminal charges against those who perpetrated these crimes against humanity."**

b. May 2, 2023 – K11-10: D.E. 19 Page 74 to 81 of 116: **"According to the CDC, more than 10,000 reports of myocarditis were reported to the VAERS after COVID-19 vaccination (Pfizer-BioNTech and Moderna) in the US ... Adverse effects such as myocarditis, glomerular diseases and cutaneous eruptions are seen with the MRNA vaccines."**

c. May 2, 2023 – K11-10: D.E. 19 Page 101 to 104 of 116: **"The mafia tactics of the Federation of State Medical Boards, filtered down to individual health professionals, has been highly effective in suffocating dissent, stigmatizing critical thinking and helping to establish a Stasi-style culture."**

d. <u>May 2, 2023 – K11-10: D.E. 19 Page 68 to 72 of 116</u>: **"The federation expects its members will conduct more investigations that would lead to disciplinary actions. But in some cases, the responses from some medical boards and state officials have been stymied by political backlash. States like Tennessee and North Dakota, for example, have restricted state medical boards' powers. And now legislators in 10 other states — including Florida and South Carolina — have introduced similar measures."**

e. <u>May 2, 2023 – K11-10: D.E. 19 Page 83 to 88 of 116</u>: **"Physicians who generate and spread COVID-19 vaccine misinformation or disinformation are risking disciplinary action by state medical boards, including the suspension or revocation of their medical license … Spreading inaccurate COVID-19 vaccine information … threatens to further erode public trust in the medical profession and puts all patients at risk."**

Defendant FSMB/Co-conspirator TMB and its COVID manufacturing corporate masters and their investors are today responsible for the deaths and injuries of millions of global citizens who were forced/coerced into inoculation. This constitutes further evidence as to the urgent need for a **"Reformation Of American Medical Boards"**, the foundation of which <u>Jarkesy</u> and <u>Loper</u> provide.

f. <u>May 2, 2023 – K11-10: D.E. 19 Page 91 of 116</u>: **"The COVID-19 pandemic may someday be the subject of countless volumes of literature describing it as a sinister man-made global plague. In today's America, it has introduced a dark age of medical science. Nowhere has this fact been demonstrated more clearly than by the actions of state medical licensing boards, most of whom take their cues from the <u>Federation of State Medical Boards</u> (FSMB). Their drive to control medical practice has been gaining momentum for decades, but their current stance and methodology is an all-out assault on the once noble and legitimate medical profession. Having received the infamous honor of being the first medical doctor in the U.S. to have my medical license first suspended, then fully revoked, because of COVID malevolence, I've learned many lessons about exactly how state medical boards have honed the process of destroying good physicians. Now, to be sure, there are no perfect physicians, just as there are no perfect people. But a serious problem must exist when the Oregon Medical Board (OMB) is able to take down a physician who has done no harm and who actually had no patient complaints concerning the board's allegations against him. In this story of my experience, I am just an example. It exposes the <u>corruption and dirty secrets of an agency that is out of control</u>, without accountability, and devoid of any regard for the best science and sound medical practice. State medical licensing boards have evolved into monsters that devour any medical practitioners in their path who do not comply with the government narrative. When government goes rogue, the medical system becomes an unholy alliance that ultimately wreaks havoc on patients. When the physician-patient kinship is compromised, the healing arts suffer greatly. Any collaboration between government and medicine spells disaster."**

g. <u>May 2, 2023 – K11-10: D.E. 19 Page 47 to 64 of 116</u>: **"The Committee's Long-Standing Interest in the Opioid Epidemic … the Department of Health and Human Services (HHS) and**

others, it stressed the critical need to remain diligent, especially during the COVID-19 pandemic ... we sent letters to 10 tax-exempt organizations and requested information about their financial relationships with opioid manufacturers

Purdue funneled bribes to Defendant FSMB/Co-conspirator in exchange for the issuance of an order in or around 2000, that resulted in the disciplining of physicians who under-prescribed opiates in the treatment of chronic pain patients.

h. May 2, 2023 – K11-10: D.E. 19 Page 96 of 116: **"Recently, there have been increasing calls in the medical community, including from the Federation of State Medical Boards (FSMB) and professional certification boards such as the American Boards of Family Medicine (ABFM), Internal Medicine (ABIM), and Pediatrics (ABP) to revoke the licenses and board certifications of physicians who promulgate medical misinformation."**

Defendant FSMB/Co-conspirator NCMB knew the so called 'vaccine' was toxic and ineffective, and knew that its use of the US wires to transmit such knowingly fraudulent information constituted wire fraud, but more importantly, that the forced inoculation of the public would cause death and life-threatening long-term morbidity. Genocidal crimes against humanity rendered through the quid pro quo 'hijacking' of the apparatus of world governments.

i. May 30, 2023 – Article **"COVID outbreak at CDC gathering infects 181 disease detectives"**: **"Nearly all of the survey takers, 1,435 (99.4%), reported having received at least one COVID-19 vaccine."**

**261.** On June 17, 2024, a lawsuit was filed against Pfizer by the State of Kansas, a case that will expose more **new evidence** to further substantiate the K11-20 facts of Defendant FSMB's knowing commission of crimes against humanity. The outcome of K11-20 has immense consequences for the public, not only in exposing the truth and in ensuring such crimes are never again committed, but in bringing about a long-overdue and much needed **"Reformation Of American Medical Boards".**

## (iii) DEFENDANT FSMB/CO-CONSPIRATOR TMB'S PROFITEERING FROM THE OPIATE EPIDEMIC

**262.** In approximately 2000, numerous opiate manufacturers, including Purdue, commenced bribing Defendant FSMB/Co-conspirator NCMB and its directors, in a series of quid pro quo schemes, in which monies were exchanged in return for forcing/coercing physicians to dispense opiates under threat of license suspension/revocation.

**263.** Indeed, many physicians who chose to treat pain without opiates had their licenses suspended/revoked, their livelihoods destroyed and many of these physicians/family members committed suicide.

**264.** In 2012, the United States Senate opened an investigation into these illegal schemes, and on May 8, 2012, requested from Defendant FSMB/Co-conspirator NCMB, a list of all exchanged

monies/information pertaining to facts of the genesis and perpetuation of the opiate epidemic and related deaths: **"It is clear that the United States is suffering from an epidemic of accidental deaths and addiction resulting from the increased sale and use of powerful narcotic painkillers such as Oxycontin (oxycodone), Vicodin (hydrocodone), and Opana (oxymorphone) … Deaths from these drugs rose more rapidly "from about 4,000 to 14,800" between 1999 and 2008, than any other class of drugs and now kill more people than heroin and cocaine combined … Recent investigative reporting from the Milwaukee Journal Sentinel/MedPage Today and ProPublica revealed extensive ties between companies that manufacture and market opioids and … the Federation of State Medical Boards …"**

**265.** On <u>December 16, 2020</u>, the results of the investigation and the Senate's demand for greater transparency in commercial relationships between for-profit healthcare corporations and Defendant FSMB/Co-conspirator TMB /other tax-exempt groups, were published: **"Senate Finance Committee Ranking Member Ron Wyden, D-Ore., and Chairman Chuck Grassley, R-Iowa, today issued a report to committee colleagues illuminating the extensive connections between opioid manufacturers and opioid-related products, and tax-exempt entities that have helped drive up sales while downplaying the risks of opioid addiction."**

**266.** Almost as soon as the Senate admonished Defendant FSMB/Co-conspirator NCMB, it commenced its public campaign of promoting the so called 'vaccine' and began suspending/revoking the licenses of those physicians who highlighted its toxicity and ineffectiveness. George Orwell's '1984' dystopian **"think-speak"** at work.

## d. <u>FACTS AS TO DEFENDANT CHRISTIE</u>

**267.** The admitted facts substantiating Defendant Christie's violations of Plaintiff Kaul's human/civil/constitutional rights and causing injury to his life/liberty/property are pled within the below claims and are referenced within the PETITIONER REQUEST PURSUANT TO FEDERAL RULE OF EVIDENCE 201 … TO THE ISSUES ON APPEAL.

**268.** Defendant Christie has not denied any fact asserted against him within <u>**The Kaul Cases,**</u> in a period from February 2016 to June 2024, including those asserted in K11-17, facts pertaining to the felonies of amongst other things, perjury/bankruptcy fraud/bank fraud/wire fraud/embezzlement/public corruption/judicial corruption.

**269.** The facts to which Defendant Christie has admitted in K11-17 are contained within the FIRST SET OF REQUESTS FOR ADMISSIONS AS TO DEFENDANT CHRISTOPHER J. CHRISTIE.

**270.** Contained within the K11-20 body of fact is fact already proven in K11-15, a case that details Defendant Christie's attempts to cause either an actual or effective cessation of Plaintiff Kaul's physical existence.

## e. <u>FACTS AS TO DEFENDANT HEARY</u>

**271**. The admitted facts substantiating Defendant Heary's violations of Plaintiff Kaul's human/civil/constitutional rights and causing injury to his life/liberty/property are pled within the below claims and are referenced within the PETITIONER REQUEST PURSUANT TO FEDERAL RULE OF EVIDENCE 201 … TO THE ISSUES ON APPEAL.

**272**. Defendant Heary has not denied one fact asserted against him within **The Kaul Cases**, in a period from February 2016 to June 2024, including those asserted in K11-17. Facts pertaining to the felonies of amongst other things, perjury/bankruptcy fraud/bank fraud/wire fraud/embezzlement/public corruption/judicial corruption.

## f. **FACTS AS TO DEFENDANT STOLZ**

**273**. The admitted facts substantiating Defendant Stolz's violations of Plaintiff Kaul's human/civil/constitutional rights and causing injury to his life/liberty/property are pled within the below claims and are referenced within the PETITIONER REQUEST PURSUANT TO FEDERAL RULE OF EVIDENCE 201 … TO THE ISSUES ON APPEAL.

**274**. Defendant Stolz has not denied one fact asserted against him within **The Kaul Cases**, in a period from April 2018 to June 2024, including those asserted in K11-17, facts pertaining to the felonies of amongst other things, perjury/bankruptcy fraud/bank fraud/wire fraud/embezzlement/public corruption/judicial corruption.

## g. **FACTS AS TO K11-8 RESPONDENT-DEFENDANT AND K11-20 THIRD-PARTY WITNESS JAMES PAUL OETKEN**

**275.** The factual foundation of K11-18 Respondent-Defendant James Paul Oetken's involvement/interference in Plaintiff Kaul's fundamental litigation rights in **The Kaul Cases** is detailed in the K11-18 Complaint and in Plaintiff-Petitioner Kaul's K11-18 INFORMAL OPENING BRIEF in the U.S.C.A. for the 4th Circuit (Case No. 24-1417).

**276.** Central to Oetken's knowingly fraudulent K11-7 September 12, 2022 'opinion-order-injunction' in K11-7 and his March 15, 2024 'order' threatening to hold Plaintiff Kaul in contempt if he did not dismiss K11-17 by March 29, 2024, was his bribery induced participation in the ongoing conspiracy of **The Kaul Cases** Defendants, an inducement that commenced sometime after August 19, 2021, the K11-7 filing date.

**277.** **The Kaul Cases** Defendants corruption of certain judges was critical to their scheme to prevent Plaintiff Kaul from further exposing their decades of crime. Oetken's entanglement in **The Kaul Cases** Defendants conspiracy and the November 20, 2023, negation by Chief Judge Myers of Oetken's September 12, 2022, purported injunction, caused Oetken, under threat from the K11-7 Defendants of exposing his bribery/public corruption felonies, to issue his March 15, 2024, order of contempt against Plaintiff Kaul.

**278**. Oetken's failure to deny the facts in K11-18, did, pursuant to F.R.C.P 8(b)(6) cause them to become admitted.

**279**. Within K11-18, and on March 25, 2024, Plaintiff Kaul states at para. 13:

**"Defendant Oetken's … failure of the K11-17 Defendants to cause the submission of affidavits from the New York State Ethics Committee, the Judicial Disciplinary Council, and or any other judge within the SDNY, as to Defendant Oetken's refuting that Defendant Oetken engaged in criminal schemes with the K11-17 Defendants."**

**280.** On June 12, 2024, Plaintiff Kaul responded to a letter from the NYS Ethics Committee, in which Plaintiff Kaul stated, amongst other things, that his WIX application had been deactivated after he distributed a June 9, 2024, release regarding K11-18 and President Trump's comments as to judicial corruption in the New York courts.

**281.** The timing of the letter from the NYS Ethics Committee is noteworthy in that the complaint was filed on November 30, 2022, and the committee's fraudulent 'whitewash' response was issued on June 12, 2024, after the filing of K11-18, a copy of which was served upon the Chief Judge of the SDNY and the Judicial Disciplinary Council of the 2nd Circuit. Plaintiff's Kaul seeks production of the entire committee's file as to Oetken.

**282.** Respondent-Defendant Oetken became conflicted in November 2022 when Plaintiff Kaul filed complaints against him with the NYS Ethics Committee and the Judicial Disciplinary Council. Oetken's purported 'injunction' was rendered null/void and a 'Fraud on the Court' when he failed to respond to Plaintiff Kaul's September 14, 2022, request that by October 6, 20222 he disclose his financial holdings and all exparte communications. As of the July 11, 2024, filing of the K11-20 Compliant, the information has still not been disclosed.

**283.** Respondent-Defendant Oetken's purported 'injunction' became a 'Fraud on the Court on October 6, 2022. From October 6, 2022, to March 25, 2024, the filing date of K11-18, the purported 'injunction' has remained a 'Fraud on the Court', and on April 8, 2024, K11-18 was dismissed with prejudice without Defendant-Respondent Oetken denying the facts, the non-denial of which caused their admittance. For example:

**"Through their nexus with K3 Defendant Charles Schumer and K11-3 Defendant Kevin McNulty, counsel for the K11-7 Defendants knew that Defendant Oetken was a well-known "racketeer" within the SDNY, with a reputation for 'selling' his opinion to the 'highest bidder'."**

**284.** Chief Judge Myers, in the knowledge that Respondent-Defendant Oetken was conflicted and that his September 12, 2022, purported 'injunction' was an admitted 'Fraud on the Court', did enter on March 13, 2024, an ORDER FOR DISCOVERY PLAN, an order illegitimately ignored by the K11-17 Defendants.

**285.** However, on June 14, 2024, Chief Judge Myers, in the knowledge that he himself was conflicted consequent to Plaintiff Kaul's appeal of his April 8, 2024, dismissal of K11-18 with prejudice, did dismiss K11-17 with prejudice based on the knowingly conflicted and fraudulent 'injunction' of K11-18 Respondent-Defendant Oetken.

**286.** The dismissal of K11-1/ is an admitted 'Fraud on the Court' invalid for all purposes and for which the law permits the refiling of claims:

**"The truth is more important than the trouble it takes to get it"** See <u>Publicker v. Shallcross 106 F.2d 949 (3rd Circuit 1939)</u>.

**287.** However, for some inexplicable reason, Chief Judge Meyers went from seeking the truth on March 13, 2024, to not on June 14, 2024, when he issued an opinion within which he states, amongst other things: **"no court has invalidated the filing injunction. Thus, the filing injunction remains in full effect."**

**288.** The nullity/falsity of this statement is evidenced by numerous facts:

**289.** The purported injunction was rendered a 'Fraud on the Court' on October 6, 2022, consequent to Respondent-Defendant Oetken's failure to submit his financial holdings/exparte communications as required by law;

**290.** it has continued to constitute a 'Fraud on the Court' consequent to Respondent-Defendant Oetken's continued failure to submit his financial holdings/exparte communications;

**291.** Chief Judge Myers, in full knowledge of the purported injunction, did enter an ORDER FOR DISCOVERY PLAN on March 13, 2024;

**292.** Respondent-Defendant Oetken's failure to deny the facts of, amongst other things, bribery/public corruption asserted in K11-8 did cause their admission;

**293.** The doctrine of 'Fraud on the Court' as applied to Respondent-Defendant Oetken's admission of the K11-18 facts places the burden of proof on Respondent-Defendant Oetken to prove his innocence, a proof for which no judicial intervention is required and a proof he continues to fail to submit;

**294.** The SCOTUS rulings in <u>Jarkesy</u> and <u>Toper</u> invalidate every administrative proceeding/defense/court ruling associated the illegal 2014 revocation, and that includes Respondent-Defendant Oetken's September 12, 2022, purported 'injunction' and Chief Judge Myers June 14, 2024, order in K11-17.

**295.** Consequent to these facts, the purported 'injunction' continues to constitute an illegal violation of Plaintiff Kaul's human/civil/constitutional rights, that Chief Judge Meyers, in his

state of knowing conflicted-ness, had no authority on which to submit an opinion onto the federal docket.

**296.** Chief Judge Myers ought to have recused himself from K11-17 and had the matter adjudicated by another judge, but did not, an act consistent with the twelve (12) years-worth of violations of Plaintiff Kaul's human/civil/constitutional rights.

**297.** The 'clock has been turned back' to 11 am EST on April 9, 2012, and every injury/violation caused to Plaintiff Kaul consequent to the illegal suspension/revocation, including those committed by certain judges within the United States District Court, will be remediated.

**298. AND** every argument/defenses/opinion/order/'injunction' is invalidated, for the simple fact that the 2014 revocation was procured illegally, remained knowingly illegal for ten (10) years and is illegal in 2024, an inescapable illegality for which the Court, post Jarkesy/Loper, must order, amongst other things, the immediate reinstatement of Plaintiff Kaul's illegally revoked NJ license.

**299.** Every consequence/injury/violation and every element of Plaintiff Kaul's 'universe of existence' that was affected/is affected/will be affected by the illegal revocation and its consequences to Plaintiff Kaul's life/liberty/property/reputation (2012-2024) does substantiate compensation and will substantiate further charges against The Kaul Cases Defendants.

**300.** The below stated facts of Respondent-Defendant Oetken's judicial misconduct in the period preceding the filing of K11-17 were pled in the K11-17 Complaint, and were facts on which Chief Judge Myers transferred the case to his remit, and facts on which he entered an ORDER FOR DISCOVERY PLAN on March 13, 2024.

**301.** Chief Judge Myers, being aware of these facts, did then inexplicably permit the Defendants and Respondent-Defendant Oetken to continue their misconduct/violations in the E.D.N.C. by ignoring his March 13, 2024, ORDER and threatening Plaintiff Kaul on March 15, 2024, with contempt of court if he did not dismiss K11-17.

**302.** Chief Judge Myers, in not providing Plaintiff Kaul a protective order against Respondent-Defendant Oetken's threat, did violate the authority of the E.D.N.C., and did, in furtherance of this error, then ascribe validity to Respondent-Defendant Oetken's fraudulent 'injunction' in his June 14, 2024, order of dismissal, when he had done the exact opposite on November 20, 2023 (K11-17 filing) and March 13, 2024.

**250.** Chief Judge Myers provided no factual/legal basis nor rationale for his starkly contradictory positions (March 13, 2024, vs. June 14, 2024).

**(i) JUDICIAL CORRUPTION + FRAUD ON THE COURT - 'THE OETKEN ANALYSIS' – DEFENDANTS PERPETRATION IN THE UNITED STATES DISTRICT COURT OF A 'FRAUD ON THE COURT' AND RESULTANT NULLITY OF THE K11-7 SEPTEMBER 12, 2022, PURPORTED 'OPINION/ORDER' OF JAMES PAUL OETKEN AND THE K11-10 MAY 10, 2023, ORDER OF U.S.D.J. ROCHON**

**255.** The fraudulence/illegality of U.S.D.J. James Paul Oetken's K11-7 September 12, 2022, order/opinion became established on September 14, 2022, <u>AND</u> has since been further confirmed by **'THE OETKEN ANALYSIS'** which proves the <u>ADMITTANCE</u> of every argument submitted in K11-7 by Plaintiffs Kaul/Basch from August 19, 2021, to September 12, 2022, <u>AND</u> by Oetken's continued failure (September 12, 2022, to November 5, 2023) to deny the fact that he was bribed/corrupted by the K11-7 Defendants**.**

**303.** <u>IN FACT,</u> and in a further tacit admission that he [Oetken] received bribes from the K11-7 Defendants/engaged in exparte communications, Oetken <u>DID </u>on August 14, 2023, ten (10) months after Plaintiffs Kaul/Basch filed a motion (October 6, 2022) to disqualify him and two (2) months after Plaintiffs filed K11-14 (June 22, 2023) in the U.S.D.C. – Southern District Florida, Defendant-Respondent Oetken  <u>INADVERTENTLY CAUSED</u> a further tacit admission of the fact that he was bribed/engaged in exparte communications in the manufacturing of his September 12, 2022, purported 'injunction', by filing a response to the motion to disqualify (K11-7: D.E. 172), without denying any of the facts, thus causing them to become admitted.

**304**. Respondent-Defendant Oetken's admissions of bribery/exparte communications occurred on October 6, 2022/August 14, 2023/April 8, 2024, and the invalidation of all his opinions-orders-injunctions did occur on June 27/28, 2024, with <u>Jarkesy</u> and <u>Loper</u>. This also further invalidates Chief Judge Myer's April 8, 2024, statement in his dismissal of K11-18:

" **… no court has invalidated the filing injunction. Thus, the filing injunction remains in full effect."** (K11-17: D.E. 113 Page 4 of 6).

**305.** Oetken's motivation for filing a document (**<u>K11-7: D.E. 172</u>** ) on August 14, 2023, in K11-7 (a case he ordered closed in October 2022) was an attempt, albeit unsuccessful, to belatedly un-deny facts that had already been admitted in October 2022, and to attempt to disguise his motivation by framing it as a 'denial' of Plaintiffs Kaul/Basch October 6, 2022, motion for disqualification.

**306.** Oetken's motivation for seeking to un-deny these admitted facts was an attempt to buttress/reassure the August 23, 2023 'injunction' based dismissal of K11-14 by the district judge in the U.S.D.C for the Southern District of Florida, a judge whose opinion evidences her immense hesitation in referencing Oetken's corrupted 'injunction' in the opinion.

**307.** However, and as even further evidence of his guilt, and in 'digging himself even deeper into his crime' is his explicit non-denial of the already admitted disqualification facts.

**308.** For example, in his K11-7 August 23, 2023, submission, he does not certify that he did not receive bribes nor engage in exparte communications nor render a knowingly fraudulent/corrupted 'injunction', but instead alludes to Plaintiff Kaul's Rule 36 procurement of fact as being an **"impermissible"** and **"speculative"** process.

**309.** Oetken's August 23, 2023, submission/defense effectively says: **"yes I committed the crimes, but you [Kaul/Basch] do not have the evidence to prove it".**

**310.** Oetken's September 12, 2022, purported 'injunction' is not only now invalid, but is a 'Fraud on the Court', a fact exposed and re-exposed on October 6, 2022 (K11-7)/August 23, 2023 (K11-14)/April 8, 2024 (K11-18)/June 14, 2024 (K11-17)/June 27, 2024-Jarkesy/June 28, 2024-Loper.

**312.** Respondent-Defendant Oetken has still not denied the facts of his felonies (August 19, 2021, to July 7, 2024), a non-denial not dissimilar to that of Martin Thomas Manton.

**313.** The below section (<u>para. 271 to para. 312</u>) up until  STATEMENT OF EVIDENTIAL EXHIBITS appears in K11-14 and K11-17, and evidences the perpetuation of Defendant-Respondent-Oetken's September 12, 2022, fraudulent September 12, 2022, purported injunction by the K11-10 judge through the S.D.N.Y. AND although K11-20 is replete with admitted/undisputed fact sufficient for Summary Judgment, Plaintiff Kaul's purpose in retaining this section within K11-20 is to illustrate in the context of SCOTUS in <u>Jarkesy</u> (June 27, 2024) and <u>Toper</u> (June 28, 2024) the extent to which **The Kaul Cases** Defendants, Respondent-Defendant Oetken and certain other district judges acted illegally in attempting to conceal **The Kaul Cases** Defendants criminal conspiracy (2005 to 2024), and crimes, in using the United States District Court as a conduit and 'cover' for their "pattern of racketeering".

**314.** <u>A fundamental error of every district court that has dismissed one of **The Kaul Cases** is that every court incorporated into its decision, the illegal/fraudulent opinions/orders of all prior district courts/NJ administrative law court/NJ state medical board (2012 to 2024), thus rendering its opinion/order as equally illegal/fraudulent.</u>

**315.** It is scenarios such as this that strongly counsel for the prompt investigation/recognition/remediation of suspected and proven acts of 'Fraud on the Court' and or other violations/crime, in order that innocent and unsuspecting judges/courts are not dragged into **The Kaul Cases** Defendants' criminal conspiracy.

**316.** Defendants admittance of fact and defenseless-ness is absolute, in that at the heart of all judicial opinions/orders within **The Kaul Cases** is the illegal 2014 revocation.

**317.** Moreover the ongoing**/"new"** injuries to Plaintiff Kaul's life/liberty/property/reputation and ongoing**/"new"** violations of his human/civil/constitutional rights (2012-2024) will continue to substantiate new claims until the injuries/violations/offenses are remediated/recompensed/causes to cease.

**318.** On May 10, 2023, in K11-10, a purported order/opinion was entered by the district judge, Jennifer L. Rochon. The document perpetuates the admitted K11-7 'Fraud on the Court', in that its purpose, nature, substance and character are identical to the fraudulent K11-7 September 12, 2022, order/opinion of district judge, James Paul Oetken.

**319.** On <u>May 2, 2023</u>, in K11-10, a case in which Oetken was deprived of adjudicative power, consequent to pending complaints before state/federal disciplinary committees/councils, counsel for Defendant ICE filed a letter with the Court in which he copied Oetken, thus converting him from a jurist to a witness/defendant, a fact stated in Plaintiffs K11-10 <u>May 12, 2023</u>, response to the K11-10 district judge's <u>May 10, 2023</u>, purported order/opinion.

**320.** On <u>May 9, 2023</u>, in K11-10 and in response to Defendant ICE's <u>May 2, 2023,</u> letter, Plaintiffs submitted opposition papers, in which they identified, amongst other things, Defendant ICE's **"conspicuous failure to have the New York State ATTORNEY GRIEVANCE COMMITTEE issue an opinion of no cause regarding the K11-7 district judge, does further consolidate the corpus of fact substantiating 'Fraud on the Court' as a basis for K11-10."**

**321.** The K11-10 district judge's knowingly improper May 10, 2023, incorporation, and use of the US wires/United States District Court, to propagate Oetken's fraudulent September 12, 2022, K11-7 order/opinion, did cause to be rendered fraudulent and thus null/void the K11-10 district judge's May 10, 2023, purported order/opinion (K11-10: D.E. 27).

**322.** However, in addition to the procedural 'Fraud on the Court' based nullity, the purported K11-10 order/opinion of May 10, 2023, is without legal effect consequent to multiple misrepresentations/mischaracterizations of fact, <u>as identified in the below analysis of the May 10, 2023, K11-10 opinion/order</u>:

<u>BACKGROUND (K11-10)</u>:

**323.** <u>Filing History</u>: The Court states: **"In March 2014, the New Jersey State Board of Medical Examiners … any request will be denied for failure to comply with this Opinion and Order, and Plaintiff Kaul may be subject to sanctions, including monetary penalties or contempt." Id. at \*9."**

**324.** The opinion was drafted by the Defendants lawyers, and contains verbiage that is almost an exact copy of that submitted in prior judicial opinions, the purpose of which is an attempt to undermine Plaintiff Kaul's credibility, character, and competence, by misrepresenting the facts pertaining to the politico-legal events preceding/surrounding the illegal February 12, 2014, revocation/revocation proceedings (April 9 to June 28, 2013).

**325.** The revocation/revocation proceedings were and are illegal, a fact known to the K11-10 district judge, a fact admitted to by **The Kaul Cases** Defendants, and a fact substantiated by the undisputed and claim conclusive evidence within **The Kaul Cases**.

**326.** From the commencement of **The Kaul Cases** on February 22, 2016 (K1), the Defendants defense strategy has involved bribing politicians/judges (<u>See April 27, 2022, Wall Street Journal article – 'Dozens of Federal Judges Had Financial Conflicts: What You Need to Know'</u>) to prevent any of the cases advancing into discovery and to have cases dismissed for legally invalid reasons, and to then use these fraudulently procured dismissals to argue, and have judges

argue the mantra that because **"Plaintiff Kaul has never received any relief in these cases."** that therefore the case before them, regardless of new evidence/facts/injuries should be dismissed.

**327.** At no point have **The Kaul Cases** Defendants contested/refuted/rebutted/addressed any of the evidence/facts, facts they have admitted sufficient for Summary Judgment, and facts that support claims that they continue to falsely describe as **"frivolous".**

**328.** In furtherance of the K11-10 Defendants/District Judge's scheme to undermine Plaintiff Kaul/Basch's credibility, is the district court judge's blatant misrepresentation of the FACT that the insurance industry was indeed born out of the trans-Atlantic slaving industry, did profit from the Nazi engineered Holocaust and continues to profit from the mass mandated dissemination of so called COVID vaccines.

**329.** Defendants have not denied these facts, nor indeed could they as they are part of historic and legal records, as a simple Google search does prove.

**330.** Plaintiffs submitted these facts in **The Kaul Cases** and specifically in K11-2 as evidence of a four hundred year-plus **"pattern of racketeering"** and a general profit-purposed criminal state-of-mind consistent with the wrongdoing committed against the Plaintiffs, as identified in **The Kaul Cases**, and <u>NOT</u>, as the district judge disingenuously claims, a direct conspiracy against Plaintiffs Kaul/Basch; although the insurance industry does indeed view/treat ethnic minority physicians as modern-day slaves.

**331.** The K11-10 district judge states: **"<u>Plaintiff Kaul has never received any relief in these cases</u> as the District of New Jersey dismissed <u>many</u> of Kaul's claims and Kaul voluntarily dismissed others. Id. at \*2."**

**332.** <u>All</u> cases were in fact voluntarily dismissed, and the district judge's statement is false and purposed to mislead the record and any future readers of the record into believing the Defendants false narrative that **The Kaul Cases** claims are without merit. The claims, as evidenced by the admitted fact, do indeed have merit, a fact known to the district judge.

**333.** Similarly, the K11-10 district judge, in keeping with and furthering the K11-7 district judge's September 12, 2022 'Fraud on the Court' mischaracterizes a kidnapping of Plaintiff Kaul on May 27, 2021 as a **"purported kidnapping"**, and re-enters onto the record a quote from the knowingly fraudulent September 12, 2022 document: **"The Court warned that "[i]f Plaintiff Kaul violates this Opinion and Order and files any materials without first obtaining leave to file, any request will be denied for failure to comply with this Opinion and Order, and Plaintiff Kaul may be subject to sanctions, including monetary penalties or contempt." Id. at \*9.**

**334.** K11-10 was filed on March 9, 2023, and the Court after having reviewed the Complaint, issued summonses for all Defendants, four (4) of whom were served. The K11-10 district judge only dismissed the case after direct interference from Oetken, the jurist who was converted

into a witness/defendant consequent to being copied on Defendant ICE's May 2, 2023, letter (K11-10: D.E. 17).

335. <u>Factual Background</u>: The Court states: **"Plaintiffs have now filed, without leave, another complaint alleging that Defendants supported … Plaintiffs allege that PACE submitted a false report to the Pennsylvania Medical Board stating that Kaul "would be a danger to the public" and "likely never meet the standards to ever return to the practice of medicine." Id. ¶ 64"** –

336. The strategy of the Defendants/District Judge involves citing statements from Plaintiffs' pleadings that are either unrefuted/uncontested/unrebutted/undenied, mischaracterized/misrepresented and or contextually excerpted, in an attempt to mischaracterize Plaintiffs' claims as implausible and or evidentially unsupported.

337. The Defendants/District Judge's mischaracterization is an attempt to mitigate Oetken's K11-7 'Fraud on the Court' and justify the K11-10 district judge's knowingly improper attempt to further perpetrate this fraud within the United States District Court. The Court states: **"Plaintiffs claim that the Defendant insurance companies are committing racketeering through a "Slaving-Nazi-COVID-Insurance Axis" to "force[] mass global vaccination programs." Compl. ¶¶ 17-18."**

338. This is a gross mischaracterization of the pled fact that the <u>insurance industry</u> (the principal perpetrator in **The Kaul Cases**) began with the trans-Atlantic slaving industry, profited from the Nazi Holocaust, and continues to profit from mandated COVID vaccine programs. These constitute forms of legalized human trafficking/exploitation, a theme within **The Kaul Cases** of legally facilitated exploitation of principally ethnic minority physicians (Hispanic/Asian/African American), through the coopting of the government/courts and the enactment/perversion of law to provide 'legal' cover for such crimes against humanity.

339. These historical facts substantiate a four-hundred-year-plus **"pattern of racketeering"**, facts regarding the continuance of which are pled in **The Kaul Cases**. The Court states: **"Plaintiffs admit to filing several similar lawsuits between 2015 and 2022. Id. ¶ 4 … These claims are summarized in Judge Oetken's opinion, and the Court assumes familiarity with those allegations. Kaul 2021 at *2-3."**

340. The K11-10 district court judge has misrepresented the pleading, in that in paragraph 4. the Plaintiffs did N<u>OT</u> admit to filing several similar lawsuits between 2015 to 2022, as is evident from a plain reading of para. 4. The Court states: **"Portions of the Complaint are seemingly a "copy and paste" from the amended complaint filed in Kaul 2021. Compare id. ¶¶ 16-21, 27, 29-35, 71-222 with Kaul v. Intercontinental Exch., No. 21-cv-6992 (JPO), ECF No. 14 ("Kaul 2021 Compl.") ¶¶ 6-10, 12-152."**
341. This is a contextually excerpted and grossly misleading statement of the legal warranty of K11-10 pursuant to the doctrine of 'Fraud on the Court' which permits a case to be refiled in

the same or a different court, as substantiated in K11-10 with reference to controlling SCOTUS law (<u>K11-10: D.E. 1 Page 82 of 169</u>).

**342.** This accounts for the fact that the majority of K11-10 is indeed identical to K11-7. A lack of identity between K11-10 and K11-7 would be inconsistent with the foundational doctrine of 'Fraud on the Court', but even absent this basis, K11-10 was brought jointly on new evidence/facts/injuries.

**343.** On May 10, 2023, in K11-10 the Court/Defendants state: **"Notwithstanding, Plaintiffs claim this lawsuit is an "independent action" alleging new facts and "new racketeering injuries." Compl. ¶ 7. The first "new" allegation is that Judge Oetken fraudulently dismissed Plaintiffs' previous case, Kaul 2021; and Judge Oetken "tacitly admitted to having received bribes and conspiring with the Defendants and or their agents." Compl. ¶¶ 5, 12. Plaintiffs allege that various Defendants bribed Judge Oetken to dismiss Kaul 2021 and enter the injunction that prevents Plaintiff from prosecuting the "Kaul Cases." Id. ¶¶ 22-24 … Second, Plaintiffs allege that the New York State Medical Board colluded with "[t]he Kaul Cases Defendants" to deny Kaul's medical license application … Third, Plaintiffs claim that three defendant insurers – FSMB, Allstate, and GEICO – used the State of California - UC San Diego Physician Assistant and Clinical Education ("PACE") Program to further their racketeering scheme."**

**344.** Neither the Court nor the Defendants have refuted/rebutted/contested/addressed these facts, but in simply re-stating them on the federal record, they have inadvertently admitted the facts. Attached to K11-10 was a copy of a lawsuit Plaintiff Kaul had drafted against Defendant PACE (K11-10: D.E. 1 Page 151 of 169), another so called 'physician assessment' program whose commercial survival is dependent on Defendant FSMB. K11-8 Defendant PACE rendered a report in October 2022, the fraudulence of which was proved by Plaintiff Kaul's recording of the May/June 2022 virtual interviews.

<u>Procedural Background (K11-10)</u>:

**345.** The Court states: **"Plaintiffs filed the Complaint on March 9, 2023. See id. Defendant Allstate requested dismissal of this action on April 19, 2023, on the grounds that the Complaint violates an anti-filing injunction. ECF No. 3. Plaintiffs filed a motion for summary judgment on April 21, 2023, … Plaintiffs responded to Defendant Intercontinental Exchange's letter on May 9, 2023. ECF No. 24."**

**346**. This is a purposefully incomplete recitation, in that the Court fails to specifically identify Defendant Heary's <u>April 24, 2023,</u> ADMISSION OF MATERIAL AND UNDISPUTED FACT OF DEFENDANT ROBERT HEARY (K11-10: D.E. 9). These admissions, pursuant to RICO's vicarious liability doctrine, did on <u>May 24, 2023,</u> become admitted with regards to all other K11-10 Defendants, sufficient to substantiate Summary Judgment.

**DISCUSSION (K11-10):**

**Anti-Filing Injunction Against Kaul:**

**347.** The Court states: **"This lawsuit runs afoul of Judge Oetken's order barring Kaul from filing any lawsuits related to the facts of his earlier cases ... The Court finds that Kaul is barred from bringing the Complaint in this lawsuit as it clearly falls with Judge Oetken's anti-filing injunction."**

**348.** The K11-10 district judge's analysis incorporates and perpetuates Oetken's K11-7 September 12, 2022, knowing 'Fraud on the Court' and is knowingly/willfully false in that the K11-10 district judge knew and knows that the doctrine of 'Fraud on the Court' as applied to Oetken's September 12, 2022 admitted fraud and further (K11-18-March 25, 2024) proven fraud, rendered/renders null and void Oetken's September 12, 2022 K11-7 opinion and all purported orders within the opinion, including that of the purported 'anti-filing injunction'.

**349.** The K11-10 district judge, by willfully incorporating into a judicial opinion/order, the contents of the knowingly fraudulent K11-7 document, the K11-10 district judge has, for political/professional reasons, assumed Oetken's liability of fraud, an act that was a consequence of her/his calculation that the liability of fraud assumption was outweighed by the risk that without such an order, the Plaintiffs would not be coerced/intimidated into not continuing to litigate **The Kaul Cases** to the emergence of 'the truth.

**350.** The K11-10 district judge evinces her fraudulent state-of-mind in devoting twenty (20) lines to a purported analysis of why Oetken's fraudulent September 12, 2022, opinion/order applies to K11-10, while willfully omitting the fact that K11-10 pleads new and **"ongoing racketeering"** offenses/injuries, for which the law regarding new evidence/facts authorizes new claims as does the doctrine of 'Fraud on the Court'. The K11-10 opinion/order are legally unsubstantiated.

**351.** The K11-10 district judge's failure to contest/rebut/refute/analyze the applicability of 'Fraud on the Court'/"**ongoing racketeering**" constitutes a tacit admission of these doctrines, which further substantiates the filing of K11-17.

**352.** These admissions further invalidate the purported 'anti-filing injunction' and further validate the filing of K11-17, while the K11-10 judge's tangential referencing of the doctrines, although intended to convey the impression of analysis, does nothing but evidence a fraudulent state-of-mind and its attempted perpetuation, as does the footnote on page 6: " ... **procedurally proper way to challenge the decision in Kaul 2021 [K11-7]"**, which is a blatant attempt to mischaracterize Oetken's September 12, 2022 K11-7 opinion/order as a legitimate honest act, which it is not, and which has been admitted/proven as such..

**Collateral Estoppel (K11-10):**

353. The Court states: **"The doctrine of claim preclusion, also called collateral estoppel, also bars most of Plaintiffs' claims ... bars all of the claims in this action except the three new RICO claims, which were not already adjudicated, but which are barred by the injunction."**

354. The doctrine is inapplicable/invalid for the same reasons that invalidate the purported 'anti-filing injunction', those being the **"ongoing racketeering"** offenses/injuries and 'Fraud on the Court'; reasons not contested/rebutted/refuted/analyzed by the K11-10 district judge, and for the simple fact that the K11-7 issues were never litigated nor legitimately decided, and the facts were admitted.

355. The K11-10 judge's reliance on <u>Somerset v Partners, LLC, No. 20-cv001241</u> is misplaced, in that in the <u>Somerset</u> cases there was no 'Fraud on the Court', and there was one discrete alleged offense/injury that was highly circumscribed in time and there was neither any **"ongoing pattern of racketeering"** nor **"new racketeering injuries"** as was the case in K11-7/K11-10 and is the case in K11-17.

356. The K11-10 district judge chose to raise a preclusion defense, knowing that within **<u>The Kaul Cases</u>**, including K11-7, the Defendants use of these defenses had uniformly failed, in that neither the Defendants nor the courts disproved Plaintiff Kaul's negation of the defenses. The K11-10 district judge knew this to be the law of **<u>The Kaul Cases</u>**, including K11-10, but in attempting to violate the law, did further perpetuate the 'Fraud on the Court'.

<u>Rule 8(a)(2) (K11-10):</u>

357. The Court states: **"The Complaint should also be dismissed pursuant to Rule 8(a)(2). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." ... Therefore, the Court also dismisses this complaint pursuant to Rule 8(a)(2)."**

358. The K11-10 district judge's strategy of 'throwing everything at the wall, to see what sticks' is most distinctly evidenced in raising a Rule 8 defense, a defense that failed in K11-7 in that neither the Defendants nor the court disproved Plaintiff Kaul's negation of the defense.

359. In fact, the mere raising of this defense by the K11-10 district judge constitutes evidence of the knowing invalidity of the purported 'anti-filing injunction' and collateral estoppel defenses, in that if these defenses were indeed valid, which they are not, their validity would render moot/unnecessary a Rule 8 defense, <u>but from which in fact</u>, the lack of mootness and specific Rule 8 citation do infer the **<u>invalidity</u>** of the purported 'anti-filing injunction' and collateral estoppel defense. Put otherwise, the K11-10 judge's <u>mere raising</u> of Rule 8 evidences her knowing invalidity of the anti-filing injunction/collateral estoppel defenses.

360. The K11-10 district judge's May 10, 2023, opinion/order constitute a 'Fraud on the Court', but even if it did not, which it does, K11-17 is legally warranted as it is based on new/ongoing

offenses/injuries, previously not in existence, and contains undisputed facts material to the proof of Summary Judgement.

## Rule 54 Infraction, Admission Of Undisputed Material Fact And Oetken's Conversion Into A Witness/Defendant (K11-10):

**361.** On <u>May 12, 2023</u>, Plaintiffs submitted a letter to the K11-10 district judge in which they raised the following facts: **(i)** the K11-10 May 10, 2023 opinion/order (D.E. 27) was invalid/null and void consequent to unadjudicated motions, as pursuant to Rule 54(b) **"Otherwise, any order or other decision, <u>however designated</u>, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.";** **(ii)** On <u>May 24, 2023</u>, the facts contained within the K11-10 <u>April 24, 2023</u> **ADMISSION OF MATERIAL UNDISPUTED FACT OF DEFENDANT ROBERT HEARY** (K11-10: D.E. 9) became permanently admitted not just as to Defendant Heary, but as to all Defendants pursuant to RICO's vicarious liability doctrine; **(iii)** the Defendants and the K11-10 district judge failed to provide authority to negate the controlling law of the doctrine of 'Fraud on the Court', a failure that corroborated Oetken's September 14, 2022 admission in K11-7 that his purported opinion/order were/are a 'Fraud on the Court'; **(iv)** Defendant ICE, in improperly copying Oetken on their May 2, 2023 letter to the court (K11-10: D.E. 17) (an individual with no legitimate adjudicative power in K11-10) did cause him to become a <u>witness/defendant</u>, who obstructed justice in K11-10 by conspiring with the K11-10 district judge to dismiss K11-10 with prejudice, knowing that a public prosecution of K11-10 would expose evidence of all his prior wrongful acts, be they civil and or criminal.

## The Inapplicability Of Mootness (K11-10):

**362.** On <u>May 16, 2023</u>, and in response to Plaintiffs' <u>May 12, 2023,</u> letter, the K11-10 district judge, absent any citation to legal authority and further evidencing her 'Fraud on the Court' did alter the Plaintiffs' <u>May 12, 2023,</u> letter (K11-10: D.E. 29) to claim that her willful non-adjudication of motions filed by Plaintiffs for Summary Judgment/Default Judgment was **"moot"** because the dismissal had the **"effect of denying as moot all open motions"**.

**363.** The K11-10 district judges mootness argument is fallacious because: **(i)** The major premise of the K11-10 district judge's purported opinion/order is Oetken's September 12, 2022, K11-7 purported order/opinion, an admitted/proven 'Fraud on the Court' and thus a premise fatally undermined by the authoritative principles of Rule 60/Doctrine of 'Fraud on the Court'; **(ii)** Finality, pursuant to Rule 54, cannot exist without adjudication of all pending motions, which thus renders null/void the May 10, 2023 K11-10 district judge's purported opinion/order (K11-10: D.E. 27); **(iv)** the legal definition of 'moot' is that of an open question, or a thing that is debatable, unsettled or subject to argument, and thus the K11-10 district judge undermined her purported opinion/order in using this term (there remain debatable/unsettled questions/issues with <u>The Kaul Cases</u>) but even if this were not the unintended result, the new and ongoing evidence/facts/offenses/injuries continuing to be caused to Plaintiff Kaul (2012 to

2023 and ongoing) will continue to preclude from **The Kaul Cases** any consideration of the concept of mootness, until the offenses cease and the injuries are rectified/remedied/remediated.

364. The facts that preclude mootness exist within the scheme that has been perpetrated and continues to be perpetrated  by **The Kaul Cases** Defendants, certain judges within administrative/state/federal courts and others, whereby these individuals have violated and continue to violate Plaintiff Kaul's right to regain his livelihood/life/liberty/economic standing/reputational standing/professional standing/social standing/physical standing/psychological standing by obstructing his efforts to litigate his legal claims, have his New Jersey license reinstated, actualize the May 27, 2020 grant of his Pennsylvania license and or obtain a license in any other state, including the D.C..

# 17. STATEMENT OF EVIDENTIAL EXHIBITS CONTAINED WITHIN THE KAUL CASES

**365.** This body of admitted claim conclusive evidence, some of which was submitted in K11-19 and the remainder of which is contained within **The Kaul Cases**, does exceed the Summary Judgment standard, evidences criminal violations of American law, gross violations of Plaintiff Kaul's human/civil/constitutional rights and is as follows w/excerpts:

a. July 28, 2023 – COMPLAINT IN KAUL v. CHRISTIE/MURPHY: 23-CV-22582 (K11-15):

**"The conspiracy to violate Plaintiff Kaul's civil rights continued from the Morristown Police Department to the United States Marshals Service and into the Mercer County Correctional Center, where the scheme, for which Defendants Christie/Murphy, and in fact all of The Kaul Cases Defendants, pursuant to RICO's vicarious liability doctrine, are liable, involved an attempt to use anti-psychotics to render Plaintiff Kaul mentally infirm, psychiatrically labelled, susceptible to serious injury/death, in order to effectively eliminate his right to life and to actually eliminate Plaintiff Kaul."**

b. April 4, 2023 – ADMISSION OF MATERIAL AND UNDISPUTED FACT OF DEFENDANT ROBERT HEARY: 23-CV-2016 (K11-10)

**"I admit that the knowing, willful, malicious, and purposeful violation of Plaintiff Kaul's human rights is commensurate with the standard of that of a crime against humanity."**

c. February 11, 2022 – INTERVIEW OF DEFENDANT CHRISTIE'S POLITICAL COLLEAGUE, ANTHONY CAPPELLO: 21-CV-06992 (K11-7):

**"Mr. Cappello, a decades-long New Jersey political insider, was presented with various pieces of evidence, and with his intimate knowledge of Defendant Christie, did unequivocally state that the case was "totally believable". His statement undermines the Defendants mischaracterizations of the case as "vexatious … frivolous … meritless … abusive … harassing", and we respectfully request this document's contents be incorporated into your consideration of Defendants' motions … From 2012 to 2017, my requests to Kathleen for this person's identity were unsuccessful, as were my requests for her brother's contact information. She remained fearful of the consequences to her life, but did upon my continued plea, provide an affidavit in September 2017, factually establishing certain content of her brother's communications with the then anonymous state government person."**

d. May 28, 2021 – LETTER FROM PLAINTIFF KAUL TO U.S.D.J. ALLISON BURROUGHS RE: KAUL KIDNAPPING SCHEME: 21-CV-10326 (K11-2)

**"These events lend further evidential weight to the claims, that is irrefutable. As is clear from the record, the commission and attempted cover-up by the Defendants now involves the**

executive/legislative/judicial branches of the State of New Jersey. The Defendants scheme now involves the use of police to threaten, harass and intimidate process servers, witnesses, and the Plaintiff himself, while violating the jurisdiction/authority of the United States ... My concern is that with this escalation of armed force, people will be killed. In that regard, I do request that there <u>be emergently schedule a case management conference</u>, in order to mitigate this threat, and stop the Defendants criminal abuse of state power and continued falsification of evidence."

e. <u>August 23, 2021 – DEFENDANT ALLSTATE ADMISSIONS OF FACT RE: COMMISSION SECURITIES FRAUD: 21-CV-06992 (K11-7)</u>:

"Defendant Allstate does admit to the following facts: .... That in its 2018 10Q filing, it did, on "Page 92 of 93, under "PART II. OTHER INFORMATION-Item 1. Legal Proceedings" with fraudulent intent and effect, omit a material legal proceeding and divert attention to a general "discussion under the heading "Regulations and Compliance".

Defendant Allstate, as the SEC record shows, filed false returns for five (5) years, from 2016 to 2021, this being the year it was exposed by Plaintiff Kaul in K11-7. As a consequence of this fraud and Defendant Allstate being sued in India by Plaintiff Kaul in K11-5 for its practice/policy of racial discrimination, its share price decreased.

f. <u>February 11, 2019 – 'THE SOLOMON CRITIQUE 2'</u>:

This document evidences the massive fraud perpetrated by Defendant Solomon in collusion/conspiracy with other members of **The Kaul Cases** Defendants in the April 9 to June 30, 2013, NJ OAL revocation proceeding, and then in the December 13, 2013, issuing of Defendant Solomon's report, a report that was adopted by **The Kaul Cases** Defendant NJBME on February 12, 2014, and that caused the illegal revocation of Plaintiff Kaul's license on March 24, 2014.

"From April 9, 2013, to June 28, 2013, there was conducted a hearing in the New Jersey Office of Administrative Law, the purpose of which was to illegally revoke Kaul's medical license. The proceeding was a massive fraud, orchestrated with criminal intent by K2 defendant Christopher J. Christie. The proceeding was polluted with perjury + evidential omissions + misrepresentations + falsifications + gross mischaracterizations ...

This analysis, 'The Solomon Critique 2', focuses entirely on Defendant Przybylski and it proves that he, in conjunction with K2 defendants Hafner + Solomon collectively committed two hundred and twenty--two (222) separate instances of perjury + evidential omissions falsifications + misrepresentations. K2 defendant Solomon based his opinion on a record that Kaul has since proven to be one replete with perjury + evidential omissions + fabrications + falsifications + misrepresentations. A massive fraud."

g. <u>September 21, 2018</u> – CERTIFICATION OF MINIMALLY INVASIVE SPINE SURGEON DR. ARNOLD ERWIN FELDMAN:

"It was at this meeting that I first met Dr. Kaul, and to the best of my recollection it was his presence that prompted Dr. Yeung to make the following statement to a group of approximately five (5) physicians:

*<u>"There is a doctor in New Jersey, Richard Kaul, who is performing fusions, but they are going to get him."</u>*

Dr. Kaul, like myself, was a victim of professional jealousy, that manifested itself through a corrupt medical board, that like many in the United States, flagrantly violate the due process rights of physicians."

h. <u>January 16, 2018</u> – 'THE SOLOMON CRITIQUE':

"This document is a detailed analysis of the trial transcript of the hearing in the MATTER OF THE SUSPENSION OR REVOCATION OF THE LICENSE OF RICHARD A. KAUL, M.D. TO PRACTICE MEDICINE AND SURGERY IN NEW JERSEY – OAL DOCKET NO. BDS 08959-12. The document demonstrates the enormous volume of willful misrepresentation, perjury, critical evidential omission, and gross mischaracterization that were committed by Jay Howard Solomon, Esq, Gregory Przybylski, MD and Andrew Kaufman, MD, during the proceeding …

These numbers suggest that the evidence provided was flawed and dishonest and that the interpretation of evidence was selective and prejudiced. The analysis proves that two of the defendants in Kaul v Christie provided misinformation and that they committed perjury. The extent of the corruption of information that was committed suggests the need for a criminal investigation into the reasons why Jay Howard Solomon would violate the law in such a concerted manner."

i. <u>August 6, 2017</u> – CERTIFICATION OF PLAINTIFF KAUL PATIENT, JOHN ZERBINI:

"Dr. Kaufman seemed to have some kind of vendetta against Dr. Kaul, and made comments to the effect that he was going to destroy Dr. Kaul's medical career, his reputation, and make sure he never worked again as a doctor. He stated that he was going to make sure Dr. Kaul was ostracized, and that he and a group of five other doctors had been working together since at least 2011, to make sure Dr. Kaul's medical license was revoked. He mentioned that they were going to have articles and stories published, that caused permanent damage to Dr. Kaul's reputation, so that he would never be able to find work.".

j. <u>September 21, 2017</u> – CERTIFICATION PLAINTIFF KAUL PATIENT, KATHLEEN CALABRESE:

"In approximately May/June 2012 my brother related to me a conversation he had with his acquaintance, during which the acquaintance made the following comment in regard to the suspension of Dr. Kaul's license: "I think it is terrible what they are doing to Dr. Kaul"".

k. <u>July 12, 2017 – AFFIDAVIT OF PLAINTIFF KAUL PATIENT, KENNETH SABO</u>:

"After the interview Ms. Hafner [NJ DAG Involved In revocation scheme telephoned me approximately six times, and on each occasion attempted to have me testify against Dr. Kaul, and on each occasion I refused."

l. <u>October 6, 2016 – LETTER FROM PLAINTIFF KAUL TO K1 U.S.M.J. STEVEN MANNION</u>:

"On September 21, 2016, at approximately 1:30am eight armed police officers from the Somerset County Sheriff's Office arrested me at my residence on a warrant for non-payment of child support. The revocation of my medical license caused immense economic harm to my family and resulted in the loss of my surgical center, Manhattan townhouse, professional practices … I believe that, as a consequence of the federal lawsuit, state agencies, under the control of the defendant politician, are being used in a retaliatory manner, with the clear intention of harassment and intimidation."

m. <u>October 24, 2015 – EMAIL FROM THIRD PARTY WITNESS/PHYSICIAN STEVEN WALDMAN, MD TO PLAINTIFF KAUL</u>:

"Revolutionaries are often met with great resistance even when they are trying to do great and beneficial things. I'm sorry that the fascists in the Medical Board and state government have pulled your license. They are bullies and clearly politically motivated."

n. <u>September 13, 2013 – LETTER FROM PLAINTIFF KAUL PATIENT, COREY JOHNSON, TO CEO OF UMDNJ UNIVERISTY HOSPITAL, JAMES GONZALEZ REGARDING THE KAUL CASES DEFENDANT, ANDREW KAUFMAN, MD</u>:

"That motherfucker Richard Kaul is trying to take over the spine business and we are going to put a stop to it – I later worked out that he made this comment when he realized I had been under the care of Dr. Kaul since 2006 and who in my opinion had provided excellent care."

# 18. <u>STATEMENT OF FACT SPECIFIC TO DEFENDANT ALLSTATE</u>

**366.** The admitted facts substantiating Defendant Allstate's violations of Plaintiff Kaul's human/civil/constitutional rights and causing injury to his life/liberty/property are pled within the below claims and are referenced within the PETITIONER REQUEST PURSUANT TO FEDERAL RULE OF EVIDENCE 201 … TO THE ISSUES ON APPEAL.

**367.** Defendant Allstate has not denied any fact asserted against it within **The Kaul Cases**, in a period from February 2016 to July 2024, including those asserted in K11-17. Facts pertaining to the felonies of amongst other things, perjury/bankruptcy fraud/bank fraud/wire fraud/embezzlement/public corruption/judicial corruption.

**The historical facts of racial discrimination integral to the origins and industrial perpetuation of modern-day economic slavery of Defendants FSMB/Allstate and Co-conspirators Gelco/TD, the latter three derived from the British banking-insurance cartels, are those of a "pattern" of profit purposed racketeering/human rights violations/crimes against humanity.**

**368.** The facts within the articles contained within submissions filed in **The Kaul Cases** since K11-2 (February 24, 2021) are facts never denied and thus admitted for the purpose of proving Defendants four hundred(400) year-long **"open-ended pattern of racketeering"** and human rights violations, that continues today against American physicians.

**369**. In his K11-17 June 14, 2024, opinion, Chief Judge Myers' cursory reference to these facts contained no analysis to disprove that these facts are highly probative to the claims, but instead attempted to characterize and imply their inclusion as being consistent with **The Kaul Cases** Defendants' eight-year-long derogation of the claims, the facts of which are now all admitted. The absurdity of **The Kaul Cases** Defendants' defenses of derogation is that if all claims are indeed "**frivolous … bizarre … far-fetched … etc … etc … etc**" then why not just deny everything.

**370.** The district judges who have aligned themselves with this absurdity are in the great minority and are simply wrong.

**371.** K11-2: D.E. 4-1 Page 33 of 254 – Article NYT May 18, 1998 – "Insurers Swindled Jews, Nazi Files Show": **"The documents, which abound with anti-Jewish slurs, include a confidential industry estimate that at least 19 of the 43 German fire insurance companies stood to suffer losses for the year if they fulfilled their obligations to Jewish policyholders for Kristallnacht. That contradicts an assertion of some German insurers that they did not profit from the Holocaust.".**

**372.** K11-2: D.E. 4-1 Page 28 of 254 – Article The Guardian November 26, 2016 – "Family's quest for truth reveals top insurer's link to SS death camps": **"After Gold's book was published, an executive of Ergo, the company that now owns the insurer, allowed her to see the archive recording the activities of the firm during the Nazi era. They revealed that the SS, which ran factories in the camps at Auschwitz, Buchenwald and Stutthof, close to what is now Gdansk, paid a consortium of firms, including the Victoria, premiums of 3.7m reichsmarks a year (£320,000 at 1939 exchange rates) to insure the factories … "They didn't insure the workers," says Gold. "They were too easily replaced.".**

**373.** K11-2: D.E. 4-1 Page 95 of 254 – Statement of historical fact of insurance/banking industry's critical role in the trans-Atlantic slaving industry and Nazi Holocaust – "The Slaving-

<u>Nazi-Insurance Axis</u>": **"The common thread connecting the slaving industry, the Nazi atrocities and the "War on Doctors" (1990 to the present) is the ruthless/genocidal for-profit insurance/banking industry/machine of which Defendants Allstate/Geico/TD/Northern Trust/Boston Partners are members … The atrocities/crimes (murder/manslaughter/enslavement/economic servitude/human trafficking/imprisonment) against humanity of the slaving industry/the holocaust/the targeted extermination of the infirm/specific racial groups continues to be perpetrated today in the United States by the insurance industry against ethnic minorities, occupied principally by immigrants/Indians/Hispanics/Blacks … Similarly, the insurance industry propaganda machine has concealed from the American public its "War on Doctors" and patients with chronic illnesses. It has concealed its pervasive corruption of the judiciary and crooked physicians willing to provide false testimony against physicians to whom the insurance industry owes money, in order to have these physicians (mostly Indians) eliminated through incarceration/loss of livelihood/license suspension/revocation/suicide/social ostracization/professional ostracization."**

**<u>The insurance industry's four hundred (400) year-plus "pattern" of profit purposed racketeering/human rights violations/crimes against humanity continues in its ongoing abuse of American investigative/prosecutorial/adjudicative agencies in the filing/procuring of false criminal indictments/prosecutions/incarcerations of innocent ethnic minority physicians.</u>**

**374.** In the five (5) week trial of Dr. Lesly Pompy (<u>USA v Dr. Lesly Pompy (18-cr-20454)</u>, a physician from Haiti acquitted on all thirty-eight (38) counts, there emerged evidence on December 2, 2022, in the form of testimony from a James Stewart Howell, an ex-police officer/Blue Cross Blue Shield 'undercover investigator'/Government witness, that detailed the massive schemes of fraud perpetrated against principally ethnic minority physicians by Blue Cross Blue Shield and governmental persons/agencies.

**375.** Plaintiff Kaul incorporated the transcript of this testimony into the matter of <u>Kaul v BCBS/Marino: 23-CV-00518</u> (K11-11) (D.E. 1-4) and submits into K11-20 excerpts of the K11-11 Complaint, which contain facts pertaining to racial targeting and insurance industry **"patterns of racketeering"** that are highly probative of the claims in K11-20:

**"In 2018, Dr. Lesly Pompy, a Michigan based interventional pain physician of <u>Haitian</u> origin, was indicted by the US Government on charges of healthcare fraud, in a case almost identical to that filed against Dr. Anand".**

**"However, during the trial evidence emerged of the <u>fraudulent schemes</u> perpetrated by the Blue Cross Blue Shield corporations in their efforts to entrap knowingly innocent physicians, mostly of whom belonged to ethnic minorities".**

**"During the testimony of a James Howell, an ex-police officer employed by Blue Cross Blue Shield to <u>manufacture entrapment schemes</u>, Howell testified that in furtherance of these schemes he was provided fraudulent medical documents, driving licenses and other official**

documents by agencies/persons of the State of Michigan and physicians employed by Blue Cross Blue Shield".

"Howell's prior testimony in various other prior court proceedings had resulted in the <u>wrongful conviction and incarceration</u> of other ethnic minority physicians, all of whom continue to languish in jail".

"The trial of Dr. Pompy unequivocally establishes the <u>"pattern of racketeering" being perpetrated by the American insurance industry</u> and specifically the Blue Cross Blue Shield corporations, and corroborates the claims that Kaul has asserted within <u>The Kaul Cases</u>, since 2016.".

<u>The American insurance industry's schemes of racial discrimination/asset seizure and commercial conspiracies with governmental agencies against ethnic minority physicians (Hispanic/Black/Indian) are almost exact replicas of those perpetrated against Jews by German industrialists and the Nazi Government as detailed in the final reports of the Nuremberg Trial.</u>

**376.** The parallels between the Nazis persecution of the Jews/others (1933-1945) as detailed in the Nuremberg trial/final report and the persecution of ethnic minority physicians by an insurance industry-government totalitarianism (1990s and ongoing) is more than coincidental, and is fact, simply a continuation of the four hundred (400) year-plus **"pattern"** of profit purposed racketeering/human rights violations/crimes against humanity.
**377.** Irrefutable evidence of these crimes against humanity was released by the American Government under a FOIA request and was published as part of a May 17, 2023, press release issued by Plaintiff Kaul.

**378.** Luigi Mangione's December 4, 2024 public assassination of the CEO of United Healthcare and the public outrage at the health insurance industry is a stark warning that the government/courts **must** do their job to protect the people from the insurance industry's murderous profiteering, no different to that associated with the trans-Atlantic slaving industry, or risk a repeat and worse of December 4, 2024. Nobody took seriously the anger of the German people due to the deprivations of the Versailles Treaty until it was too late. That same public anger exists as evidenced consequent to the Mangione assassination.

# D. LEGAL CLAIMS, RELIEF AND CERTIFICATION

## 19. COUNT ONE

**Association-In-Fact Enterprise: District of Columbia-State of Colorado ("SNC-SC Association-In-Fact Enterprise")**
**Defendant Persons: CPEP/FSMB**
**Co-conspirators: Defendant Solomon/Allstate/Christie**
**RICO Predicate Acts: Wire Fraud/Bribery/Witness Tampering/Evidential Tampering**

**Overview**:

**379.** In a period commencing in early 2023, Defendant CPEP after having been contacted on January 11, 2023, by Plaintiff Kaul regarding the conduction of a physician assessment course as per the February 8, 2021, final order of the Pennsylvania Medical Board, did enter into a knowingly illegal conspiracy with Defendant FSMB and indirectly with co-conspirators Defendants Solomon/Allstate/Christie.

**380.** The purpose of the conspiratorial scheme was to prevent Plaintiff Kaul from obtaining his Pennsylvania license by manufacturing a false reason/s to fail Plaintiff Kaul on the physician assessment.

**381.** Defendants CPEP/FSMB recognized that the issuance to Plaintiff Kaul of his Pennsylvania license would cause his economic resurgence, which would facilitate his ability to prosecute **The Kaul Cases** Defendants.

**382.** Defendants CPEP/FSMB recognized that an enhanced prosecutorial ability would facilitate the emergence of evidence as to the crimes of **The Kaul Cases** Defendants and their co-conspirators.

**383.** Defendant CPEP, a subjugate element of Defendant FSMB, an entity from whom it derives the majority of its business, did use the US wires to exchange information with Defendant FSMB in the conception/development of the scheme to fail Plaintiff Kaul.

In these communications the following points were agreed upon:

**384.** Defendant CPEP would deceive Plaintiff Kaul into believing it would conduct an honest and impartial evaluation.

**385.** Defendant CPEP would financially defraud Plaintiff Kaul for a service it knew it would conduct fraudulently.

**386.** Defendants CPEP/FSMB recognized that their misconduct and use of the US wires to perpetrate such misconduct was illegal but persisted in the belief, quite incredulously, that Plaintiff Kaul would not expose their crimes.

**387.** Defendants CPEP/FSMB were convinced that Plaintiff Kaul would not expose their crimes because they expected that a purported nationwide 'injunction' entered (albeit a 'Fraud on the Court') on September 12, 2022, in K11-7 by U.S.D.J. James Paul Oetken in the SDNY would cause Plaintiff Kaul to believe he was foreclosed from filing claims against them/others for both "ongoing" and "new" racketeering injuries. Defendants expectation is knowingly contrary to the law: <u>Lawlor v. National Screen Service Corp., 349 U.S. 322 (1955) + Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479 (1985)</u>

<u>**Wire Fraud:**</u>

**388.** Defendant CPEP's knowledge of the nature/character of acts that substantiate the elements of the RICO predicate act of wire fraud pre-dated their January 2023 entry into **The Kaul Cases** Defendants **"ongoing pattern of racketeering"**.

**389.** Defendant CPEP entered the conspiracy, so to speak, with their 'eyes wide open' and with a willful/knowing/<u>malicious</u> intention to cause/perpetuate harm to Plaintiff Kaul's life/liberty/property, the principal purpose of which was an attempt to conceal the crimes of **The Kaul Cases** Defendants.

**390.** Defendant CPEP was motivated to enter the conspiracy as its commercial survival is inextricably intertwined with that of Defendant FSMB and its for-profit healthcare corporation quid pro quo collaborators.

**391.** Defendant CPEP did, with a knowing illegality, use the US wires to transmit information in furtherance of **The Kaul Cases** Defendants scheme to attempt to obstruct Plaintiff Kaul's efforts to have reinstated his 2014 illegally revoked New Jersey license/obtain a license in any state.

**392.** Defendant CPEP did, with a knowing illegality, use the US wires to transmit information in furtherance of **The Kaul Cases** Defendants scheme to attempt to obstruct Plaintiff Kaul's efforts to procure justice/compensation in the United States District Court by hindering his license related economic ability to prosecute the claims.

**393.** Subsequent to Defendant CPEP's entry into the conspiracy, it transmitted fraudulently purposed communications across the US wires with Defendant FSMB on hundreds of occasions, the content and subject matter of which pertained to the above agreed upon points.

**394.** Defendant CPEP did know that the transmission of each communication constitutes sufficient fact for the charge of a separate count of wire fraud.

**395.** Defendant CPEP, despite knowledge of the civil/criminal liability associated with its wire fraud offenses, did nonetheless perpetrate these crimes in the conviction that Plaintiff Kaul would not expose the crimes and even if he did, he would be precluded from holding liable Defendant CPEP and **The Kaul Cases** Defendants.

**Bribery:**

**396.** Defendants FSMB/CPEP engage in multiple quid pro quo schemes of bribery with for-profit healthcare corporations, in which they receive monies in exchange for causing, aiding/abetting and or otherwise facilitating the elimination from and obstruction of re-entry into the healthcare market of physicians who either threaten or fail to support corporate agenda/profits.

**397.** Defendants CPEP/FSMB manufacture and publicly propagate lies to justify and provide 'cover' for their schemes of profit purposed grand corruption and racketeering, the so called COVID 'vaccine' being the most recent.

**398.** One of Defendants CPEP/FSMB most frequently propagated lie is that the targeted physician, mostly an ethnic minority individual, is allegedly incompetent and a threat to public safety.

**399.** In furtherance of this lie Defendants CPEP/FSMB conspire with state medical boards to conduct fraudulent legal proceedings in which evidence is tampered with/falsified and witnesses are suborned to perjury in order to substantiate corruptly engineered foregone conclusions of license revocation.

**400.** In conjunction with Defendants CPEP/FSMB bribery related license revocation schemes are the license reinstatement/issuance obstruction schemes, in which Defendant CPEP and other so called 'physician assessment programs', which coincidentally are owned/overseen by nurses/lawyers/businessmen, do 'fail' targeted physicians, and particularly those that fight for their rights, such as Plaintiff Kaul.

**401.** Within this **"HIPIC-FC"** system of tyrannical medical boards/regulatory agencies that conduct the 'dirty work' **or** 'dirty war' of the for-profit healthcare corporations, those physicians who seek justice**/**truth and who fight for their human/civil/constitutional rights are further targeted through criminally conducted elimination schemes and reputational injury, as was/is Plaintiff Kaul: **"It also became apparent to Plaintiff Kaul that Defendant Christie's scheme involved attempting to have Plaintiff Kaul held for as long as possible, with the intention of having him, while in a mentally incapacitated state, physically injured/killed, in**

order to prevent him from continuing his prosecution of <u>The Kaul Cases</u> by his elimination through either death or severe physical/psychological injury."

**402.** Defendants CPEP/FSMB corporate-charity structures provide some of the conduits through which bribes are funneled, while other bribe-monies are funneled towards the paying of personal expenses for senior members of Defendants CPEP/FSMB.

<u>Witness/Evidential Tampering</u>:

**402.** Defendants CPEP/FSMB schemes of physician elimination (license revocation/reinstatement + issuance prevention) necessarily involve causing witnesses (patients/physician 'experts') to lie in legal/associated proceedings in order to pervert the 'means' to justify the 'ends'.

**403.** Defendants CPEP/FSMB identify and repeatedly use the same corrupted/conflicted witnesses in furtherance of their schemes, witnesses whose annual incomes rely substantially on monies received from Defendants CPEP/FSMB and other so called 'physician assessment programs'.

**404.** Defendants CPEP/FSMB knew that Drs. Antony/Brown/Harned were conflicted and knew that in using these individuals in the February 22/23, 2023, assessments did constitute a knowing violation of Plaintiff Kaul's due process rights.

**405.** Defendants CPEP/FSMB knew that Drs. Antony/Brown/Harned (the assessment physicians) were conflicted and knew that in using these individuals in the February 22/23, 2023, assessments did constitute a knowing/willful 'Fraud on the Court', a fraud to which Plaintiff Kaul has been subjected since at least 2010.

**406.** Defendants CPEP/FSMB were motivated to continue the perpetration of such a fraud because their economic survival is inextricably intertwined with that of **The Kaul Cases** Defendants, and economic/professional/reputational advances by Plaintiff Kaul equate to their equivalent retreats by **The Kaul Cases** Defendants.

**407.** Defendants CPEP/FSMB conspired with Antony/Brown/Harned to ensure their reports would be false representations of the case discussions with Plaintiff Kaul in order to cause a 'fail' of the assessment program, and thus a non-issuance of his Pennsylvania license.

**408.** Defendants CPEP/FSMB believed that their scheme to have falsified documents submitted onto the assessment record would go undetected/unprovable, as Defendant CPEP had inserted into their contract with Plaintiff Kaul a clause that prohibited Plaintiff Kaul from recording the virtual assessments.

**409.** Defendant CPEP/FSMB believed that this non-recording clause would prevent Plaintiff Kaul from obtaining evidence to prove the fraud they planned to commit.

**410.** Defendants CPEP/FSMB knew that in July 2022, Plaintiff Kaul had recorded his assessments with **The Kaul Cases** Defendant PACE, and that the recording proved Defendant PACE had falsified its report, as pled in K11-8. Therefore, Defendants CPEP/FSMB sought to prevent Plaintiff Kaul from exposing their planned falsification in a similar manner.

**411.** Defendant CPEP informed Plaintiff Kaul to expect the report within four (4) to six (6) weeks after the assessment, but by the end of April, Plaintiff Kaul had received no report.

**412.** In or around the first week of May 2023 Plaintiff Kaul commenced researching Harned, as he had seemed the most suspicious individual, in that throughout the ninety (90) minute conversation he had not once looked directly at Plaintiff Kaul. Instead, he looked down or to the side, with a demeanor of anxiety and tone that vacillated between overt aggressiveness and a bizarre superciliousness.

**413.** Plaintiff Kaul's research revealed that Harned was a director of the Kentucky chapter of **The Kaul Cases** Defendant, American Society of Interventional Pain Society (**"ASIPP"**), an organization that in 2012 publicly criticized Plaintiff Kaul for performing percutaneous spinal fusions and a member of whom (Andrew Kaufman, MD) testified against Plaintiff Kaul in the 2012-2013 license revocation proceedings. However, since at least 2016, **The Kaul Cases** Defendant ASIPP has taught its members how to perform the percutaneous spinal fusion procedure invented by Plaintiff Kaul in 2005.

**414. The Kaul Cases** Defendant ASIPP/Members motivation for criticism was professional jealousy, in that most of these individuals did not possess the skill to conduct such procedures, including Harned/Antony/Brown. It was more expeditious for them to 'gang-up'/bribe a corrupt governor/defame Plaintiff Kaul than strive to emulate, a conspiracy subsequently aided/abetted, for the purposes of crime concealment, by Defendants CPEP/FSMB's ill-conceived February 2023 assessment fraud.

**415.** Plaintiff Kaul, having established Harned's conflicted state, provided Defendant CPEP an opportunity to claim no knowledge of this offense.

**416.** Defendant CPEP's non-response caused a tacit admission of its knowledge that Harned was conflicted.

**417.** Plaintiff Kaul subsequently established that Antony/Brown were similarly conflicted, and it was at this point that Plaintiff Kaul provided Defendant CPEP an opportunity to rectify their wrongdoing and repeat the assessment with non-conflicted physicians.

**418.** Defendant CPEP's response constitutes an admission of guilt and evidences a guilty state-of-mind in Defendant CPEP's comment regarding Plaintiff Kaul's sudden inappropriateness for the assessment, an inappropriateness that conveniently appeared after Plaintiff Kaul exposed their scheme.

**419.** Plaintiff Kaul's request for a complete copy of his file, a file for which he paid $14,500, was denied and no report was ever issued.

## 20. COUNT TWO

**Association-In-Fact Enterprise: New Jersey Medical Board-Federation State Medical Boards-District of Columbia Medical Board ("NJMB-FSMB-NCMB Association-In-Fact Enterprise")**
**Defendant Persons: Solomon/Christie/Allstate**
**Co-conspirators: Geico/TD**
**RICO Predicate Acts: Mail Fraud/Wire Fraud/Public Corruption/Bribery**

**Overview**:

**420.** In a time period commencing in or around 2010, the Defendants did conspire to commit, and did commit a knowingly illegal **"pattern of racketeering"** and did convert the New Jersey Medical Board/Federation State Medical Boards/D.C. Medical Board into an association-in-fact enterprise **("NJMB-FSMB-NCMB Association-In-Fact-Enterprise")** through and under cover of which they perpetrated the RICO predicate acts of 'Fraud on the Court'/public corruption, that in conjunction with the other RICO schemes, were purposed to eliminate Plaintiff Kaul by attempting to prohibit his access to the courts for compensatory redress/re-procurement of a livelihood.

**421.** As a New Jersey administrative law judge, Defendant Solomon was subjugated to the executive branch of the New Jersey government, of which Defendant Christie, as the then governor, was the 'executive'.

**422.** In a period between 2010 and 2012, Defendant Solomon entered into a quid pro quo with Defendant Allstate, in which he exited retirement for the sole purpose of adjudicating Plaintiff Kaul's 2013 licensing case/hearing. This quid pro quo scheme was orchestrated by Defendant Christie and involved the funneling of bribes from Defendant Allstate to Defendant Solomon, in return for which he would, in a knowingly criminal act, order the illegal revocation of Plaintiff Kaul's New Jersey license on December 13, 2013.

**423.** The benefit that inured to Defendant Christie from this scheme was the revocation of Plaintiff Kaul's license, a knowingly illegal act, for the perpetration of which he had received bribes from Defendant Allstate and others.

**424.** The benefit that inured to Defendant Solomon was that he would re-enter retirement a much wealthier man than when he exited.

**425.** The benefit that inured to Defendant Allstate was that the revocation related non-payment of monies owed to Plaintiff Kaul for the provision of professional services, would translate into increased executive/shareholder compensation.

**426.** Defendant Christie knew that the illegal revocation of Plaintiff Kaul's license would benefit Defendant Allstate in that Defendant Allstate would use it as an excuse to not pay Plaintiff Kaul for medical services he had rendered to Defendant Allstate's fee-paying customers who had sustained auto-accident-related injuries.

**427.** Defendants Christie/Solomon/Allstate knew that their scheme constituted an illegal theft of services and deprivation of Plaintiff Kaul's livelihood right.

**428.** Defendants Christie/Solomon/Allstate did nonetheless use the apparatus of state to perpetrate  a knowingly illegal scheme from which they all profited at the expense of Plaintiff Kaul's life/liberty/livelihood.

## 2009 - 2012

**429.** Defendants knowingly illegal scheme to revoke Plaintiff Kaul's license commenced in or around 2009, shortly after Defendant Christie assumed the New Jersey governorship.

**430.** Defendant Christie, in using the governorship as a political weapon to exact bribes/extort monies from those seeking favors/looking to escape extortionate criminal indictments filed by his subjugate attorney general, did signal his intent to trade the resources/power of the State of New Jersey in quid pro quo schemes with anyone willing to bribe him.

**431.** Defendant Allstate, having perpetrated schemes of judicial corruption within the State of New Jersey since at least 1999, did through intermediaries propose to Defendant Christie such

95

a quid pro quo, in which monies were funneled into Defendant Christie's offshore financial vehicles, his political campaign/businesses associated with him and from which he profited.

432. In the conceiving/planning/execution of this scheme, Defendants Christie/Allstate agreed upon the value of the bribes and the method in which they would be delivered, with a percentage being funneled before the revocation (2010-2013) and the balance after the revocation (2014).

433. The planning/development of the scheme involved Defendants Christie/Allstate's use of the US wires in the exchange of information that included, amongst other things, which persons would be involved, the extent of their knowledge of the scheme's illegality, the risk of information leaks prior to the April 2, 2012, filing of the revocation case against Plaintiff Kaul and how to manipulate the media into propagating their knowingly fraudulent narrative.

434. A critical part of the scheme was choosing an administrative law judge whose career had ended and whom they believed needed the money, would take the risk of participating in the scheme and would lose little if the scheme was exposed.

435. Defendant Solomon was recommended to Defendants Christie/Allstate as such an individual.

436. In the period from 2010 to 2011, there were multiple communications (digital/non-digital) meetings and negotiations between Defendant Solomon and Defendants Christie/Allstate, in which they agreed upon the terms of their quid pro quo scheme.

437. Defendant Allstate provided Defendant Solomon a similar but lesser deal as the one they agreed upon with Defendant Christie, but stipulated in their corrupt pact with Defendant Solomon that their lawyers would co-draft his final opinion/order (December 13, 2013).

438. In the discussions regarding the contents of the final opinion/order, many of which were conducted over the US wires and others in face-to-face meetings, Defendants Allstate/Solomon agreed that all of Plaintiff Kaul's witnesses (15) would be found not credible and all of Defendant Christie's witnesses would be found credible.

439. It was also agreed that any/all evidence that supported Plaintiff Kaul's case and undermined Defendant Christie's case would be excluded and that all evidence that undermined Plaintiff Kaul's case and supported Defendant Christie's case would be included and amplified.

440. It was also agreed that evidence would be falsified and tampered with as deemed necessary to substantiate the revocation and penalties.

441. It was also agreed that Defendant Christie's witnesses would be treated with immense respect, while Plaintiff Kaul and his witnesses would be demeaned and harassed.

**442.** It was also understood that Defendant Christie's then deputy attorney general, Doreen Hafner would coerce and cajole some of Plaintiff Kaul's patients into perjuring themselves by providing knowingly false testimony against Plaintiff Kaul.

**443.** It was also understood that state persons working under Defendant Christie would telephone Plaintiff Kaul's patients seeking to have them fabricate complaints about the care they received from Plaintiff Kaul.

**444.** Defendants Allstate/Solomon/Christie knew that evidential falsification/witness tampering/subornation perjury/fraud were crimes under state/federal law, but yet persisted in their prolonged perpetration as they believed Plaintiff Kaul would never expose their criminal conspiracy as he would be jailed/psychologically incapacitated/killed or otherwise unable to survive due to economic/reputational destruction.

**445.** Defendants Allstate/Solomon/Christie believed that even if Plaintiff Kaul did expose their crimes, he would not be able to initiate legal action as he would have no money to retain a lawyer and did not himself know the law.

**446.** Defendants Allstate/Solomon/Christie believed that even if Plaintiff Kaul taught himself the law, he would be unsuccessful in prosecuting a lawsuit as Defendants Christie/Allstate/Solomon along with **The Kaul Cases** Defendants would bribe and or otherwise corrupt state/federal judges into dismissing his cases.

**447.** Defendants Allstate/Solomon/Christie believed that if Plaintiff Kaul were able to mount a legal challenge, it would be limited to the filing of one lawsuit with the venue restricted to the District of New Jersey, a district in which they controlled the judges.

**448.** Defendants believed that the restriction to the District of New Jersey would cause Plaintiff Kaul's one and only lawsuit to be dismissed with prejudice by a judge who had been bribed by **The Kaul Cases** Defendants.

**449.** In the 2010-2012 planning of the scheme, Defendants Allstate/Solomon/Christie never imagined that in 2023 their crimes would be before the United States District Court for the District of Columbia, the state from which Defendant FSMB coordinated its worldwide COVID 'vaccine' scheme.

**450.** Defendants Allstate/Solomon-lawyer/Christie-lawyer inability to imagine such a scenario accounts for their shameless and knowingly willful commission of crime.

**451.** The malice with which the crimes were committed reflects Defendants Allstate/Solomon/Christie's criminal state-of-mind.

**452.** Defendants Christie/Allstate/Solomon agreed that as soon as Plaintiff Kaul's license was revoked (March 24, 2014), Defendant Solomon would leave the State of New Jersey and move out-of-state to avoid and or render less likely any civil or criminal repercussions.

**453.** It was agreed that Defendant Solomon, upon taking residence out-of-state would not discuss the case with anybody and would attempt to conceal his prior professional history in New Jersey.

**454.** It was also agreed that Defendant Solomon would inform any interested parties that his name was Howard Solomon and not his full name, which is James Howard Solomon, in order that his whereabouts would remain concealed.

**<u>2012-2014</u>**

**455.** Defendants Christie/Allstate/Solomon, having agreed upon the terms of their quid pro quo arrangements and the operative/structural elements of their scheme, did agree that it's perpetration against Plaintiff Kaul would commence on April 2, 2012, with the filing of a complaint to revoke his license, to be accompanied with widespread highly defamatory media coverage over the internet, radio, tv and print.

**456.** Defendants Christie/Allstate/Solomon and others discussed the scheme in military terms as being like that of a legal media 'blitzkrieg' that Defendants were convinced would cause Plaintiff Kaul to simply 'disappear' under a 'barrage' of legal action, civil investigations, criminal investigations, and continuously negative media coverage.

**457.** A critical element of the scheme was to attempt to isolate Plaintiff Kaul from any kind of professional/economic/social support in order that he be unable to find legal representation, medical experts, and or witnesses to testify on his behalf.

**458.** Defendants Christie/Allstate/Solomon and others, in believing that Plaintiff Kaul would indeed be professionally/economically/socially isolated and thus either unable to mount any defense or a minimal defense did schedule only six (6) days for the hearing, most of which they believed would be occupied by the testimony of their witnesses.

**459.** Defendants Christie/Allstate/Solomon believed that Plaintiff Kaul would depart the United States shortly after the commencement of their 2012 legal media 'blitzkrieg', or as communicated to one of Plaintiff Kaul's then lawyers (Paul Schaff) by a person within the office of the NJ AG: **"He [Kaul] is probably going to pack his bags and leave"**

**460.** It was this mistaken belief regarding Plaintiff Kaul's departure that caused Defendants Christie/Allstate/Solomon and others to experience no sense of risk/danger in perpetrating their crimes by, through and with state persons/authority/apparatus.

**461**. This mistaken belief was further bolstered by Defendants conviction that Defendant Christie would become the 2016 US President, and would, if Plaintiff Kaul did not depart, use its power to have Plaintiff Kaul eliminated, in the same manner as he had abused the power of the office of the US Attorney (2001-2009) to eliminate his political opponents (Democratic donor Charles Kushner/Governor James McGreevey/Mayor Sharpe James) or those who refused to support him (Fort Lee Mayor Mark Sokolich). Political Gangsterism.

**462**. With the commencement of the scheme on April 2, 2012, Defendants used the US wires to exchange information regarding media coverage, legal proceedings and the ongoing incitement and conspiracy with patients/insurance companies to file lawsuits against Plaintiff Kaul, as part of Defendants 'blitzkrieg'.

**463**. In the time period from April 2, 2012, to August 2012 Defendants Christie/Allstate/Solomon and their agents used the US wires to disseminate orders to every legal/medical professional in New Jersey to refuse to assist Plaintiff Kaul if he/his lawyer so requested, the purpose being to render him unable to fight the revocation case.

**464**. Shortly after the April 2, 2012, commencement, persons who had initially pledged support did withdraw, a withdrawl that coincided with the rescindment of loans/closure of accounts by **The Kaul Cases** Defendant TD, Plaintiff Kaul's then bank. A central element of the scheme was the destruction of Plaintiff Kaul's economic standing.

**465**. Despite the highly concerted and conspiratorial organization of the scheme, Defendants were not successful in preventing Plaintiff Kaul from finding counsel to prepare an opposition to the revocation case.

**466**. However, Defendants inability to prevent Plaintiff Kaul's case preparation did not deter them from continuing their sabotage, and approximately two (2) weeks before the April 9, 2013, commencement of the hearing with Defendant Solomon, Plaintiff Kaul's then lawyers were told by Defendant Christie/agents that Defendant Solomon had been ordered to revoke Plaintiff Kaul's license regardless of what evidence he presented.

**467**. Consequently, two (2) weeks before the hearing commencement, Plaintiff Kaul's lawyers demanded $200,000 with the threat that if Plaintiff Kaul did not pay them within twenty-four (24) hours they would withdraw from the case,

**468**. Twenty-four (24) hours later they withdrew from the case as Plaintiff Kaul did not have the funds and had already paid them approximately $200,000.

**469**. Within three (3) days a lawyer with whom Plaintiff Kaul had worked since 2007 agreed to represent him at the hearing, which commenced on April 9 and concluded on June 28, 2023.

**470**. On December 13, 2013, Defendant Solomon issued a knowingly fraudulent opinion/order and used the US wires to transmit the document in furtherance of the scheme of Defendants

Solomon/Allstate/Christie and **The Kaul Cases** Defendants to destroy Plaintiff Kaul's life/liberty/property.

**471.** Defendant Solomon recommended revocation and a three hundred thousand dollar ($300,000) 'fine'. He knew this number was purposed to extort Plaintiff Kaul, knew it was illegal, knew it was part of Defendants Illegal scheme and knew it was caused into existence through nothing but Defendants criminal conspiracy.

**472.** Defendants Solomon/Christie, both lawyers, knew that that December 13, 2013, opinion/order was a 'Fraud on the Court', a fraud that was illegally incorporated into subsequent multiple legal proceedings and caused the issuance of fraudulent judgements/multi-million-dollar payouts on fraudulent medical malpractice claims.

**473.** In the time period from April 2, 2012, to December 13, 2013, Defendants scheme caused Plaintiff Kaul's corporations to file for Chapter 11 bankruptcy and the fraudulent filing of multiple lawsuits against Plaintiff Kaul in state/federal courts in New Jersey by ex-patients/insurance companies (Defendant Allstate/**The Kaul Cases** Defendant Geico) and other persons/entities owed money by Plaintiff Kaul's corporations.

**474.** Defendant Solomon's knowingly fraudulent opinion/order was disseminated across the US wires/internet to state/federal/international healthcare/regulatory agencies (state medical boards/DEA) and state/federal investigative/prosecutorial/adjudicative agencies as part of Defendants ongoing attempt to eliminate Plaintiff Kaul.
<u>2014 – 2023</u>:

**475.** From the inception of Defendants scheme, it was their intention to destroy Plaintiff Kaul's life/property and to deprive him of his liberty, and to do so through an ongoing deprivation of his economic/reputational standing in order to attempt to prevent him from exposing their crimes. **The Kaul Cases** Defendants conspiracy commenced in 2005/6 and its ongoing-ness in 2023 is consequent to **The Kaul Cases** Defendants scheme to attempt to prevent Plaintiff Kaul from causing further evidential exposure of their crimes. The conspiracy's ongoing-ness is one cause of the continued cause of action generation. **The Kaul Cases** Defendants are trapped between either admitting their crimes/remediating Plaintiff Kaul (NJ license reinstatement/compensation/public apology) or devoting decades/millions dollars to defending against **The Kaul Cases**.

**476.** In this time period the Defendants, as did others, came to know that if Plaintiff Kaul were to continuing prosecuting claims against them, he would ultimately prevail in procuring remedies to the eleven-year-plus (11 +) injuries (2012-2023) Defendants have caused and continue to cause Plaintiff Kaul.

**477.** In this knowledge and seeking to **"shut Kaul down"** the Defendants and **The Kaul Cases** Defendants did bribe senators/judges and corrupt courts in an attempt to thwart Plaintiff Kaul's

prosecution of **The Kaul Cases**, one example being the corruptly engineered September 12, 2022, purported injunction from a district judge in New York.

478. However, immediately after the March 24, 2014, revocation, Defendants, and others were convinced they had 'gotten away' with their crimes of bribery/subornation perjury/evidential tampering/witness tampering/wire fraud/public corruption/honest services fraud/kickbacks and overall **"patterns of racketeering"**.

479. Defendant Allstate in finalizing the final bribes to Defendants Christie/Solomon did continue to use the US wires in the transmission of confirmation of how and where the bribes were transmitted, such was their confidence that Plaintiff Kaul would be caused to exist or effectively exist.

480. From 2014 to 2016, Defendants continued to perpetuate the publishing of defamatory articles about Plaintiff Kaul, to coincide with every illegal judgment from every illegal case filed in the New Jersey courts.

481. Every time a defamatory article was published, the New Jersey journalists (Lindy Washburn/Susan Livio) would enquire of Plaintiff Kaul's then lawyer if Plaintiff Kaul had left the country, the reason being that if he had, it would signal to **The Kaul Cases** Defendants a minimal likelihood of their crimes being exposed. Livio/Washburn did **The Kaul Cases** Defendants bidding.

482. Defendants intended and knew that the illegal cases/deleterious effects precipitated by the events of the previous years (2010-2014) would continue for many years (2014-2023) and would cause **"ongoing"** and **"new"** injuries to Plaintiff Kaul in many jurisdictions.

483. Defendants knew that the illegal cases would continue in the New Jersey courts as the state judges, many appointed and still under the gubernatorial control of Defendant Christie, would ensure knowingly illegal multi-million-dollar judgements against Plaintiff Kaul.

484. In January 2019, Defendant Allstate, central to the criminal conspiracy and having filed knowingly false lawsuits against Plaintiff Kaul since 2006/7 purposed to harass/deprive Plaintiff Kaul of payments due him, did procure an illegal judgment for almost six million dollars ($6,000,000) from a state court judge appointed by Defendant Christie.

485. Defendant Allstate and other insurance companies had since at least 1999 been involved in a massive racketeering scheme within the New Jersey courts in which they bribed judges in return for entering judgements against physicians and other so called 'healthcare providers'.

486. The purpose of this racket was to eliminate physician/surgical center market competitors and increase executive/shareholder compensation through theft of services/extortion perpetrated under the cover of corrupt judges/courts/politicians.

**487.** Defendants continuation of this **"ongoing"** court-based racket against Plaintiff despite the Wall Street Journal's September 2021 articles regarding judicial corruption/recent 2023 subpoenas by the Senate Judiciary Committee as to persons who participated in judicial corruption, evidences the risk they and others are prepared to take to attempt to prevent Plaintiff Kaul from further exposing their past/ongoing crimes.

**488.** In this period, occurring concurrently with Defendants corruption of the courts, has been their conspiracy with Defendant FSMB to obstruct Plaintiff Kaul's efforts to have his illegally revoked NJ license reinstated and or obtain a license in any other state including the D.C., willful injuries that are ongoing, cumulative, and compounding in their causation of monetary damages.

**489.** In the most recent of **The Kaul Cases** (K11-14/K11-15), the Defendants waived an opportunity to mitigate their damages in refusing to discuss settlement at a Rule 26 Conference on October 20, 2023, a repeat of their refusal to participate in a Rule 26 Conference in K5 on January 26, 2021.

**490.** Defendants willfulness/contumaciousness in continuing to violate Plaintiff Kaul's human/civil/constitutional rights by obstructing his licensing reinstatement/issuance efforts and his good faith efforts at dispute mediation are continuing to cause **"new racketeering injuries"** to Plaintiff Kaul's life/liberty/livelihood for which the law substantiates new claims (Lawlor v. National Screen Service Corp., 349 U.S. 322 (1955); Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479 (1985)) as are now filed in K11-17, and will continue to be filed until the current eleven-plus-years (11+) of injury caused to Plaintiff Kaul by **The Kaul Cases** Defendants are compensated for and remediated ().

## 21. COUNT THREE

<u>**Association-In-Fact Enterprise: Corporations-Governments-FSMB//Co-conspirator TMB**</u>
<u>**IAMRA-Medical Boards/Councils-NYSE ("CFN Association-In-Fact RICO Enterprise")**</u>
<u>**Defendant Person: FSMB**</u>
<u>**Co-conspirator TMB**</u>
<u>**Co-conspirators: Pfizer/Moderna/Astra Zenica/Johnson + Johnson + Corporate Media**</u>
<u>**RICO Predicate Acts: Wire Fraud/Murder/Manslaughter/Public Corruption/Bribery/Money**</u>
<u>**Laundering**</u>

<u>Overview</u>:

**491.** In a time period commencing in or around May 2020, Defendant FSMB/Co-conspirator NCMB /agents in collusion and conspiracy with co-conspirators Pfizer/Moderna/agents and others did order American state medical boards and coerce foreign medical councils to compel, under penalty of license suspension/revocation and or medical registration suspension/erasure,

its physicians to deceive patients into being inoculated with an mRNA compound that patients were falsely led to believe was a vaccine against COVID, but that Defendant FSMB/Co-conspirator NCMB and its corporate/state medical board co-conspirators knew was not only not a vaccine, but a substance with lethal toxicity.

492. Defendant FSMB/Co-conspirator NCMB/co-conspirators were motivated by profit and used the apparatus of law, medicine, business, and government to perpetrate through and attempt to conceal a knowingly Illegal scheme/crime against humanity, that involved the commission of a global **"pattern of racketeering"** that converted the NYSE/State Medical Boards/Foreign Medical Councils/American State Governments/Foreign Governments into an association-in-fact enterprise **("CFN Association-In-Fact RICO Enterprise")**.

493. The RICO predicate acts included and include fraud/murder/manslaughter/public corruption/bribery/money laundering.

**The "CFN Scheme":**

494. The scheme involved the sudden and unscientifically explained appearance of the COVID-19 virus (SARSCoV2) in or around late 2019 and was rapidly followed by corporate-government emergency orders that forced/coerced the public into becoming inoculated with the mRNA compound/complying with so called draconian 'lockdowns'/bankrupting businesses/closing schools/forcing the useless wearing of masks/restricting travel and arresting/jailing/fining/otherwise penalizing citizens who chose not to comply with these dictates.

495. Defendants FSMB/Allstate/Co-conspirators TMB/Geico/TD and their corporate co-conspirators/shareholders generated profits in the billions from the sale of the so-called vaccine to governments, who used tax payer funds to purchase the so called 'vaccine'.

496. Structure: In order to attempt to conceal and mitigate the civil/criminal liability of all persons associated in any manner with any element of the conception/research/development/production/marketing/public relations/distribution/storage/professional coercion/defamation of so called 'anti-vaxers/dispensation/inoculation or any aspect with any relevance/connection/association to any facet of the process, Defendant FSMB/Co-conspirator TMB and its corporate co-conspirators established a structural hierarchy, through which communications were conducted in a strict manner that limited them, in a militaristic manner, to persons/agencies immediately above or below in the hierarchy in an attempt to create a plausible deniability defense

497. The five (5) tiers in descending order are: **(i)** <u>Corporations/Corporate Media</u>: the CEOs/Agents of the toxin manufacturers, that include CEO Joaquin Duato/Agents (Johnson + Johnson) CEO Albert Bourla/Agents (Pfizer), Pascal Soriot/Agents (Astra Zeneca) and CEO Stephane Bancel/Agents (Moderna); **(ii)** <u>Government:</u> persons within the US Food and Drug Administration that authorized the dispensation of the toxin and persons within the US

Treasury that authorized tax payers money be diverted to the toxin manufacturers and persons within the US DOJ that provided immunity to the toxin manufacturers AND persons within international governments/agencies who authorized the use of the toxin and the transfer of wealth from the 'public purse' to the corporate toxin manufacturers; **(iii)** <u>**FSMB/Co-conspirators TMB/IAMRA:**</u> Defendant FSMB/Co-conspirator NCMB, its CEO/Directors including Humayun Chaudry/Lisa Robbins/Agents and the International Association Medical Regulatory Agencies (IAMRA)/Agents; **(iv)** <u>Medical boards/councils</u>: the <u>executive directors</u> of all medical boards/councils/Agents; **(v)** <u>Medical boards/councils</u>: the <u>physician/lay person</u> members of all American state medical boards/international medical councils/Agents.

**498.** <u>Functions</u>: The principal and only function of the **"CFN Scheme"** is corporate/shareholder profit, which was/is achieved through governments knowingly illegal diversion of tax payers money to 'vaccine' manufacturers in exchange for the 'vaccine'.

**499.** However, for the scheme to work it required the participation of Defendant FSMB-/IAMRA and its coercive, punitive, and potentially life-ending 'policing powers' within the global medical profession, to force physicians to both receive and dispense the 'vaccine'.

**500.** Within the scheme there exist communication channels within and between persons in each tier and a covert system through which bribes/other monies were/are secretly funneled in either tax avoidance/evasion schemes. Taxpayers money became distributed, albeit unevenly, throughout the scheme's participants.

**501.** The overall coordination of the scheme is conducted by the Corporations/Agents, who use their Corporate Media as a 'whip' to control/intimidate/direct the public and publicly humiliate those that attempt to expose/expose their crimes against humanity.

**501.** Suppression of free speech regarding the toxicity of the 'vaccine' is a critical element for the perpetration of the scheme, and is achieved by the Corporate Media not reporting the toxicity/complications/deaths associated and or caused by the 'vaccine', and by the manipulation of internet search algorithms in an attempt to 'bury' such information.

**502.** To ensure the schemes profits were protected from lawsuits expected by the Corporations, and as further evidence they knew of the 'vaccine's' toxicity, governmental agencies provided them immunity against lawsuits and established so called 'Vaccine Injury Funds to attempt placate the public. Defendant FSMB/Co-conspirator TMB/IAMRA have no such immunity.

**503.** For the scheme to have been successful, it required the knowingly illegal use of the US wires/other modes of digital/non-digital communication to propagate/perpetuate lies/pretexts regarding the safety/effectiveness of the 'vaccine', the symptom mitigating effect of the 'vaccine' and the increased risk of morbidity/mortality of not being 'vaccinated'.

**504.** The scheme was also furthered by the effect of having publicly ostracized/punished members of the public who refused to be inoculated, this function including the deployment of economic/reputational/social/professional pressure to force the 'vaccine' objectors into becoming inoculated or becoming homeless/poverty stricken/socially ostracized.

## The "CFN Association-In-Fact RICO Enterprise" ("CFN")

**505.** The **"CFN"** is pled consequent to the pleading of the RICO predicate acts and a **"pattern of racketeering"**, which in this case has involved billions of RICO predicate acts, from the conception to the inoculation to the fraud/lies preceding/surrounding/concealing the crimes against humanity, as are codified within the Nuremberg Code.

**506.** <u>Structure</u>: The elements comprising the **"CFN Association-In-Fact Enterprise"** are **(i)** Corporations/Corporate Media; **(ii)** Government; **(iii)** FSMB/Co-conspirator TMB /IAMRA Medical Boards/Councils are separate legal entities that coalesced through conspiracy for the purpose/act of perpetrating a knowingly illegal profit purposed scheme (coerced/forced/mandated 'vaccination') and for the purpose of attempting to use the 'cover' of government/regulatory agencies to conceal and or otherwise legitimize their crimes against humanity.

**507.** The knowing/willful/conspiratorial nature of the crimes and the construction of a legal artifact to attempt to conceal/legitimize/immunize against the crimes, do deprive of any immunity (limited/qualified/absolute) the separate legal entities and the **"CFN Association-In-Fact Enterprise"** and thus specifically, the purported immunity granted to the <u>'vaccine manufacturers' is deprived, and they are therefore subject to suit</u>.

**508.** <u>Function</u>: The principal purpose of the **"CFN Association-In-Fact RICO Enterprise"** was/is a conduit and 'cover' for the concealed perpetration of a knowing crime against humanity.

**509.** The mechanism of these two functions – conduit/cover -  consists respectively of: **(i)** the scheme and its **"pattern of racketeering"** required and indeed could not have been perpetrated absent the **"CFN"**, which is a critical conduit for the scheme's commission. The power of the **"CFN"** to act as a conduit is illegally derived from the power of government, which itself is derived from the power of the people, and for the **"CFN"** to act as a conduit without the risk of global revolution (revolution already underway in France), required the public be deceived by the **"CFN"** elements into believing the 'vaccine' was indeed a vaccine and was safe/effective, which it is not; **(ii)** the scheme's 'cover' was effectuated by the perpetration of lies by and through persons/agencies within governmental, non-governmental and media structures with an apparent legitimacy and 'expertise' in healthcare/regulatory related matters.

## The RICO Predicate Acts

**510.** <u>Wire Fraud:</u> In a period commencing in approximately late 2019/early 2020, if not before, Defendant FSMB/Co-conspirator NCMB commenced conspiring to commit and did commit

millions of ongoing acts of wire fraud in the furtherance/perpetration of the knowingly fraudulent **"CFN"** scheme, a scheme from which Defendant FSMB/Co-conspirator TMB profited from the receipt of bribes from manufacturers of the 'vaccine' and associated testing/prevention paraphernalia.

**511.** The fraudulent communications, transmitted across the US wires, were conducted with their co-conspirators in government and the CEOs/agents at Pfizer/Moderna/Johnson + Johnson, and were purposed to and did in fact increase corporate/shareholder profit and ensure ongoing governmental kickbacks.

**512.** Defendant FSMB/Co-conspirator NCMB /co-conspirators committed these acts at the knowing expense/exploitation of human life.

**Defendant FSMB /Co-conspirator TMB + Co-conspirators Pfizer/Moderna/Astra Zeneca/Johnson + Johnson CEOs Albert Bourla/Joaquin Duato/Pascal Soriot/Stephane Bancel/Agents + Corporate Media**

**513.** <u>Date range:</u> 2019 to 2023

**514.** <u>Conduits of Communication + Bribery by Pfizer/Bourla/Agents to Defendant FSMB/Co-conspirator TMB /Agents (Executive Directors US and Foreign Medical Boards/Councils)</u>: Communication: Directly and through law/public relation firms. Bribery: Directly (disguised as 'philanthropic' donations) and through offshore bank networks.

**515.** <u>Mode of Communication</u>: Email + Voice + SMS (text) + Face to Face

**516.** <u>Substance of Communication</u>: Scheme to cause knowingly illegal mass inoculation of toxin into human race, while profiteering through the embezzlement of monies from the 'public purse' and eliminating/weakening that percentage of the world's population considered to be infirm/detrimental/unhelpful to the corporate agenda/profits.

<u>Tactics Employed</u>:

**517.** Use of the US wires to initiate a discussion regarding the scheme.

**518.** Use of the US wires to communicate that the use of governmental/regulatory/public health /drug regulatory agencies/persons (Anthony Fauci et al) for the scheme's perpetration would provide seemingly legitimate 'cover' which would negate or substantially mitigate the risk of public exposure.

**519.** Use of the US wires to communicate that the perpetration of the scheme/crimes against humanity in collusion/conspiracy with western governmental agencies/persons, would render criminal charges more likely in courts of the BRICS nations.

520. Use of the US wires to communicate that although Defendant FSMB had no immunity, it was highly unlikely their involvement would be exposed.

521. Use of the US wires to communicate that it was highly unlikely that any lawyer/person would identify the **"willful misconduct"** immunity exception of Defendant FSMB/Co-conspirator NCMB's conspiracy/bribery with the 'vaccine' manufacturers.

522. Use of the US wires to communicate the potential profit of billions dollars from the scheme.

523. Use of the US wires to communicate an outline of the scheme.

524. Use of the US wires to communicate the elements of the scheme.

525. Use of the US wires to identify/describe each element of the scheme.

526. Use of the US wires to describe how public fear would be engineered by incorporating into the scheme the elements of (**para. 446 to 452**):

527. ordering the corporate media's use of the US wires in the willful dissemination/propagation of the knowingly false narrative that contraction of the COVID-19 virus would cause permanent damage and or death;

528. having its corporate hospital partners manipulate hospital death statistics to willfully/knowingly/fraudulently ascribe the deaths to the COVID virus.

529. ordering the corporate media's use of the US wires in the willful dissemination/propagation of the knowingly fraudulent death statistics.

530. ordering the corporate media to produce willfully/knowingly fraudulent video news interviews that involved paid actors posing as persons whose relatives died consequent to the COVID-19 virus.

531. ordering the corporate media's use of the US wires in the willful dissemination/propagation of the knowingly false narrative that so called 'social distancing' and the wearing of face masks reduced transmission.

532. ordering the corporate media to continuously report on persons who were denied employment/housing/healthcare because they refused to be inoculated, wear masks and or engage in so called 'social distancing'.

533. ordering the corporate media's use of the US wires in the willful dissemination/propagation of the knowingly fraudulent narrative that governmental members received the 'vaccine' when in fact it was a saline injection.

**534.** Use of the US wires to describe how, by incorporating into the scheme the following element, fear would be engineered within the global medical community in order to coerce physicians to inoculate the public and to silence any dissent as to the toxicity/ineffectiveness of the 'vaccine'.

**535.** bribing/coercing the executives of medical boards/councils to enact disciplinary policies that forced physicians to become inoculated and to inoculate patients, and to suspend/revoke/erase their licenses/registrations if they either refused self/patient inoculation and or provided digital/non-digital information regarding the toxicity/dangers of the 'vaccine'.

**536.** Use of the US wires to describe how the power of fear/coercion would be engineered within the global population by incorporating into the scheme the following elements (**para. 456 to 461**).

**537.** coopting conspiring with the World Health Organization in the issuance of reports/releases that disseminated as fact, the knowing falsehood that contraction of the COVID-19 virus would cause serious permanent injury and or death.

**538.** coopting conspiring with the World Health Organization in the issuance of reports/releases that disseminated as fact, the knowing falsehood that the 'vaccine' was safe/effective.

**539.** coopting conspiring with the US Federal Drug Administration in the issuance of reports/releases that disseminated as fact, the knowing falsehood that the 'vaccine' was safe/effective.

**540.** coopting conspiring with the US Centers for Disease Control in the issuance of reports/releases that disseminated as fact, the knowing falsehood that contraction of the COVID-19 virus would cause serious permanent injury and or death.

**541.** coopting and conspiring with governmental public health and drug regulatory agencies/persons across the planet in the dissemination as fact, the knowing falsehoods that contraction of the COVID-19 virus would cause serious permanent injury and or death <u>and</u> that the 'vaccine' was safe/effective.

**542.** coopting and conspiring with police forces across the planet in the enforcement through physical force/restraint/incarceration and so called 'lockdowns' of the human race, including those that had been inoculated and wore masks.

**543.** Use of the US wires to describe how Defendant FSMB/Co-conspirator NCMB's co-conspirator corporate media partners, would conspire/scheme with the tech industry to corrupt digital news feeds by suppressing any information that exposed the 'vaccine' toxicity and promoted any that extolled its safety.

544. Use of the US wires to describe the critical nexus of the scheme's elements, those of dissemination of lies, the generation of fear, coerced/forced inoculation, behavioral conditioning/modification, the suppression of truth, the absolute enslavement of humanity and the generation of corporate profit.

**Defendant FSMB /Co-conspirator TMB + Co-conspirators IAMRA/Medical Board/Council Executives:**

545. Date range: 2019 to 2023.

546. Conduits of Communication + Bribery by Defendant FSMB/Co-conspirator NCMB to Executive Directors Medical Boards/Councils: Communication: Directly through the IAMRA and indirectly through law/public relation/political lobbying firms. Bribery: Through the IAMRA and through offshore bank networks.

547. Mode of Communication: Email + Voice + SMS (text) + Face to Face.

548. Substance of Communication: A Scheme in which Defendant FSMB an American corporation, in violation of the Foreign Corrupt Practices Act, uses its corruptly procured power to corrupt the 'regulatory/disciplinary' apparatus of foreign medical boards/councils into ordering their executives to perpetrate the Scheme, disguised as policy, that suspended/revoked/erased medical licenses/registrations of physicians who refused to be inoculated/refused to inoculate his patients/advised patients against inoculation/used the internet to communicate any information adverse to the 'vaccine', including but not limited to stating it was lethal, caused permanent injury and was ineffective.

Tactics Employed:

549. Use of the US wires to disseminate the order, falsely disguised as 'COVID Policy', to implement the Scheme of eliminating physicians who either undermined the corporate profit agenda or failed to support it.

550. Use of the US wires to exchange information on a daily basis as to any media or other reports of physicians not complying with the corporate agenda.

551. Use of the US wires to exchange information on a daily basis as to the quota of 'vaccines' being dispensed in various global regions.

552. Use of the US wires to exchange information on a daily basis as to regulatory policing enforcements actions against 'underperforming' physicians

553. Use of the US wires to issue orders to subjugate medical boards/councils to have eliminated underperforming' physicians through license/registration suspension/revocation/erasure.

**554.** <u>Crimes Against Humanity</u>: Defendant FSMB/Co-conspirator TMB and its 'vaccine' manufacturer co-conspirators CEO Joaquin Duato/Agents (Johnson + Johnson) CEO Albert Bourla/Agents (Pfizer), Pascal Soriot/Agents (Astra Zeneca) and CEO Stephane Bancel/Agents (Moderna), knew that the 'vaccine' was toxic and ineffective, and that it would cause death, permanent injury, and generational injury in that 'vaccine' caused genetic mutations/injuries would be transmitted in reproduction.

**555.** The motivation for these crimes, other than immediate profit from the tax payer funds, lies in the fact that advancing technology, such as Artificial Intelligence, renders obsolete the requirement for humans, and that by eliminating 'useless food eating' humans and their ability to procreate, the so called '1%" will retain an increasingly greater percentage of the planet's resources for themselves and their progeny.

**556.** Defendant FSMB/Co-conspirator TMB/Other Co-Conspirators have been perpetrating these ongoing crimes since at least 2019, in collusion/conspiracy with governmental agencies/persons, in multiple jurisdictions across the globe, including this jurisdiction, in furtherance of corporate/personal profit, in knowing violation of human rights and with knowledge that the crimes caused, are causing and will continue to cause death and permanent injury.

**557.** Evidence of these crimes is contained within and within **The Kaul Cases**.

**558.** <u>Public Corruption</u>: In a period commencing in approximately, if not before 2019, Defendant FSMB/Co-conspirator NCMB and other co-conspirators entered into a conspiracy with governmental agencies/persons, in which tax payers monies were funneled from government treasuries to the 'vaccine' manufacturers who then funneled some of these monies as bribes to Defendant FSMB/Co-conspirator NCMB, its executives and executives associated with medical boards/councils across the globe.

**559.** The co-conspirator 'vaccine' manufacturers, while bribing Defendant FSMB/Co-conspirator NCMB/Medical Board and Council Executives, did kickback a percentage of the embezzled tax payer money to corrupt politicians/governmental officials.

**560.** The injuries caused by this scheme were to the public treasury, to the public health/welfare, to the public's right to honest services, to the public's human rights and to the SOCIAL CONTRACT between the people and government. Defendant FSMB/Co-conspirator NCMB/Governmental and Corporate Co-Conspirators acts of public corruption have violated and continue to violate the SOCIAL CONTRACT, such that its terms are no longer valid.

**561.** <u>Bribery</u>: In a period commencing in approximately, if not before 2019, Defendant FSMB/Co-conspirator NCMB and its medical board/council co-conspirators did receive bribes from the 'vaccine' manufacturer co-conspirators (Johnson + Johnson/Pfizer/Astra Zeneca/Moderna) in a series of quid pro quo schemes, in which the bribes were paid in exchange for Defendant FSMB/Co-conspirator NCMB's abuse of regulatory power in the

coercion of physicians, under threat of license/registration suspension/revocation/erasure into inoculating patients with the 'vaccine', while knowing it would cause death/permanent injury.

**562.** Defendant FSMB/Co-conspirator NCMB knew that the more doses dispensed, the more taxpayer monies were funneled from the government to the 'vaccine' manufacturers, the greater their corporate profits and the greater the bribes.

**563.** The bribes were disguised as 'philanthropic' payments to the corporate vehicle of Defendant FSMB/Co-conspirator NCMB and were also funneled to offshore bank networks of executives associated with Defendant FSMB/Co-conspirator NCMB Medical Boards/Medical Councils, in order to ensure they enforced the coercion of physicians into inoculating patients with the 'vaccine'.

**564.** <u>Money Laundering</u>: The <u>bribes</u> received by Defendant FSMB/Co-conspirator NCMB /Medical Board Executives/Medical Council Executives from the 'vaccine' manufacturers as part of a series of quid pro quo schemes in which physicians under threat of license/registration suspension/revocation/erasure were forced/coerced into knowingly inoculating patients with a substance they knew would cause death and permanent injury, <u>were funneled into, and laundered</u> through offshore bank networks and through Defendant FSMB/Co-conspirator NCMB US based tax-deducting corporation and stock market Investment vehicles.

**565.** The financial benefit of bribes was also realized through the laundering-effect of remittance by the 'vaccine' manufacturers to <u>law firms/lawyers</u> to whom Defendant FSMB/Co-conspirator NCMB owed monies, and whom the 'vaccine' manufacturers retained specifically to launder the bribes, the payment of which directly benefited Defendant FSMB/Co-conspirator NCMB.

## 22. COUNT FOUR

<u>Association-In-Fact Enterprise: United States District Court-NYSE ("SDNY-NYSE Association-In-Fact- Enterprise)</u>
<u>Defendant Persons: Allstate</u>
<u>Co-conspirators: Geico/TD/ICE</u>
<u>RICO Predicate Acts: Bribery/Fraud on the Court/Public Corruption/Money Laundering</u>

<u>Overview:</u>

**566.** In a time period commencing in approximately September 2021, the Defendants did conspire to commit, and did commit a knowingly illegal **"pattern of racketeering"** and did convert the Chambers of U.S.D.J., James Paul Oetken and the New York Stock Exchange into an association-in-fact enterprise **("SDNY-NYSE Association-In-Fact-Enterprise")** through and under cover of which they perpetrated the RICO predicate acts bribery/fraud on the court/public

corruption/money laundering, purposed to eliminate the Plaintiffs by having U.S.D.J. Oetken dismiss K11-7 with prejudice and permanently injunct Kaul/Basch from prosecuting their claims against the Defendants.

**567.** In the latter half of September 2021, the corporate Defendants did begin conspiring to perpetrate a knowingly illegal scheme (**"SDNY-NYSE Scheme"**) against the United States District Court for the Southern District of New York, in which they planned, and did eventually effectuate, a quid pro quo scheme with U.S.D.J. James Paul Oetken, that involved the funneling of non-tangible/tangible favors (stocks/shares/bonds in return for having K11-7 dismissed with prejudice and Kaul/Basch injuncted from further prosecuting <u>The Kaul Cases</u> Defendants.

**568.** In September 2021, the Defendants, having realized that U.S.D.J. Oetken did not intend on dismissing or transferring the case to the District of New Jersey, a court whose judges are on their 'payroll', initiated a series of digital/non-digital communications/meetings in which they agreed that their only option was to bribe U.S.D.J. Oetken.

**569.** The Defendants and their lawyers discussed the details of how to minimize any exposure of the scheme, and conceal the communications and funneling of bribes, and decided to utilize an 'arms-length' tactic, by co-opting third-party agents as the 'middlemen', a ruse employed by the Defendants for decades in the New Jersey courts.

**570.** It was not until approximately February 2022, that the specifics of the scheme had been agreed upon and willing third-party agents identified.

**571.** The next phase involved persuading U.S.D.J. Oetken to participate in the scheme, and consisted of intensive time-consuming third-party mediated communications, which occurred slowly due to the Defendants priority for the maintenance of secrecy and their recognition that if any information were leaked to court staff, it would sabotage the scheme, and cause U.S.D.J. Oetken to withdraw.

**572.** A substantial part of the time from inception to execution was assigned to the contents of U.S.D.J.'s September 12, 2022, and to the Defendants attempt to effectively and permanently suppress Plaintiff Kaul's ability to vindicate his rights.

**573.** In these communications, the Defendants' lawyers transmitted across the US wires to non-official emails belonging to U.S.D.J. Oetken and or agents acting on his behalf, the substance of the September 12, 2022, report, which the Defendants intended to disseminate to their shareholders, who had been withdrawing their positions.

**574.** The Defendants recognized that unless the opinion/order permanently suppressed Plaintiff Kaul's legal rights, their shareholders would continue their withdrawal and their share price would continue to decrease.

112

**575.** Subsequent to the September 12, 2022, opinion/order Defendant Allstate's share price has risen, a rise that has enriched U.S.D.J. Oetken, and a rise that is a direct consequence of his illegally procured order. Defendant Allstate continues to launder the proceeds of this crime through the NYSE, and to cause the dissemination of these fraudulent assets into the global equities market, including that in India.

**576.** In the planning and perpetration of the scheme, neither the Defendants nor U.S.D.J. Oetken discussed nor expected the Plaintiffs to request U.S.D.J. Oetken's financial holdings/exparte communications, nor file a motion for his disqualification, but they did conspire to include verbiage encouraging the Plaintiffs to file an appeal, knowing that an appeal would prohibit a judicial disciplinary investigation, and more likely conceal their corruption of the Court.

**577.** However, when the Plaintiffs did request U.S.D.J. Oetken's financial holdings/exparte communications, the Defendants in collusion/conspiracy with U.S.D.J. Oetken through their third-party agents, concluded that their optimal option was to ignore the Plaintiffs' request and motion, believing that the Plaintiffs would not ascertain a legal basis on which to render null/void the order, and that even if they did, they would not ascertain the requisite law to exclude U.S.D.J. Oetken and his purported 'injunction' from any involvement in a future filing.

**578.** In the perpetration of this overall scheme, the Defendants have, through their use of the US wires, knowingly committed wire fraud and through their use of the apparatus of the United States District Court, committed honest services fraud against the American public.

## 23. COUNT FIVE

**Association-In-Fact Enterprise: State of New York-New York State Medical Board-District of Columbia-District of Columbia Medical Board ("NYSMB-FSMB-NCMB Association-In-Fact-Enterprise)**
**Defendant Persons: FSMB/Allstate**
**Co-conspirator: Geico**
**RICO Predicate Acts: Bribery/Fraud on the Court/Public Corruption**

**Overview:**

**579.** In a time period commencing in approximately April 2021, the Defendants did conspire to commit, and did commit a knowingly illegal **"pattern of racketeering"** and did convert the State of New York/New York State Medical Board/the District of Columbia/ District of Columbia Medical Board into an association-in-fact enterprise **("NYSMB-FSMB-TMB Association-In-Fact-Enterprise")** through and under cover of which they perpetrated the RICO predicate acts fraud on the court/public corruption, purposed to, in conjunction with the other RICO Schemes,

purposed to eliminate Plaintiff Kaul, by attempting to prohibit his access to the courts for compensatory redress and his access to a livelihood.

**580.** In February 2021, Plaintiff Kaul submitted a licensure application to the New York State Medical Board, and on July 14, 2021, an investigator for the state emailed him a letter, stating that his application had been denied by a supposed sub-committee of the board who allegedly found that there existed a **"question of moral suitability".** This was and is a lie, as no subcommittee ever considered Plaintiff Kaul's application. This illegal/fraudulent denial was circulated via the US wires to the  National Practitioner Data Bank/Defendant FSMB and to every state medical board, including the District of Columbia.

**581.** Plaintiff Kaul, after having been informed by this person of his right to appeal, requested a copy of the alleged opinion, in order to ascertain the basis of the opinion, but was informed it would not be provided until the conclusion of the appeal.

**582.** Plaintiff Kaul indicated he would seek judicial relief if the document was not provided by August 25, 2021, and on September 17, 2021, Plaintiff Kaul filed a petition for an OTSC in the New York State Supreme Court.

**583.** The petition was directed at Defendant Hengerer and Dr. Howard Zucker, the New York State Health Commissioner, and sought an order compelling production of the alleged opinion.

**584.** The NY AG responded for the Respondents, arguing that Kaul had no **"clear legal right"** to the document, <u>despite knowing that no such document existed</u>, and the NY AG thus implicitly adopted the Respondents knowingly false position that such a document existed.

**585.** The Respondents/NY AG propagated their fraud into the New York State Supreme Court, and on January 3, 2022, the judge adopted their fraud and denied Kaul's petition based on **the "clear legal right"** defense.

**586.** Plaintiff Kaul appealed to the First Department of the New York State Supreme Court, Appellate Division, at which point a senior appellate litigation counsel within the NY AG entered the case.

**587.** However, in April 2022, while this matter was proceeding through the New York State Supreme Court, Plaintiff Kaul was contacted by counsel for the New York State Medical Board, and advised that his application was to be scheduled for a hearing on October 3, 2022.

**588.** Plaintiff Kaul re-requested a copy of the alleged opinion of the supposed sub-committee, but none was provided, and in June 2022, Kaul had a senior board member admit that no subcommittee had ever convened regarding his application and that no opinion had ever been issued.

**589.** Plaintiff Kaul served a subpoena on this individual to appear at the October 3, 2022, hearing. He did not move to quash the subpoena nor appear.

**590.** The virtual hearing was initiated on October 3, 2022, and was adjudicated by a hearing officer with a panel of approximately twelve (12) members of the New York State Medical Board.

**591.** As the matter commenced it became immediately apparent to Plaintiff Kaul that the proceeding's sole purpose was to provide cover for the fraud of the alleged opinion and to deny Plaintiff Kaul's appeal.

**592.** Plaintiff Kaul halted the proceeding by asserting that unless the alleged opinion was produced, the matter could not proceed, and that regardless, the issue of the alleged opinion was pending in the Appellate Court.

**593.** The hearing officer/panel went off-line for approximately ten (10) minutes, to discuss whether to proceed. Counsel for the board argued that the matter should proceed, but the officer/panel discontinued the hearing, pending the outcome of the Appellate Division.

**594.** Plaintiff Kaul subsequently procured a transcript of the approximately twenty (20) minute hearing.

**595.** The New York State Medical Board is a member of the **"Federation Cartel"** and profits from the fees, fines and other expensive and uselessly proven educational activities that American physicians are forced to undergo to obtain, retain and have licenses reinstated. The commercial existence of these units of the **"FC"** depends on this revenue stream, and the monies generated from disciplinary actions.

**596.** The greater the number of state board disciplinary actions, the more affected physicians are shunted into 'Solent-Green' like **"FC"** system, with the majority of physicians being either ethnic minorities and or foreign medical graduates, most of whom have 'slaved' in the American system for decades, and most of whom have their life assets illegally seized by government agencies under direction from the insurance industry.

**597.** The **"NYSMB-FSMB-TMB Scheme"** was conceived of shortly after Plaintiff Kaul commenced his application for licensure in the State of New York, and involved the K11-7 Defendants/agents conspiring/colluding with the New York State Medical Board/agents in the perpetration of a scheme to attempt to prevent Plaintiff Kaul from obtaining a license in order to facilitate, in conjunction with the other RICO Schemes , the elimination of Plaintiff Kaul, in order to attempt to eradicate the legal/economic/political/public relations threats posed by Plaintiff Kaul's economic resurgence and or their continued prosecution by Plaintiff Kaul in the United States District Court.

**598.** One of the litigation benchmarks in **The Kaul Cases** appears to be Defendant Allstate's share price, which fell during the pendency of K11-7, and only began to rise after the illegal September 12, 2022, opinion/order.

**599.** The litigation related fall substantiated the merit of K11-7. Investors, such as K11-2 Defendant Boston Partners, withdraw their positions after consultation with litigation counsel.

**600.** The **"NYSMB-FSMB-TMB Scheme"**/ **SDNY-NYSE Scheme"**/ **"UC-PACE Scheme"** emerged in late 2022, and were coordinated principally by the **"FC"** and the corporate K11-7 Defendants, with the purpose of attempting to prohibit Plaintiff Kaul's access to the courts for compensatory redress/evidential disclosure and his access to a livelihood.

**601.** Within the conspiratorial digital/non-digital communications relevant to the conception, planning and perpetration of the **"NYSMB-FSMB-TMB Scheme"**, the Defendants did not anticipate that Plaintiff Kaul would pursue the issue of the alleged opinion to the Appellate Division, nor have a senior board member admit that no subcommittee was ever convened nor any opinion ever issued, and so they perpetrated their fraud through the state's administrative/judicial/prosecutorial apparatus with a sense of experienced impunity, and with an overall purpose of attempting to contribute to halting Kaul's prosecution of the K11-7 Defendants.

**602.** The Defendants used the US wires in the perpetration of the **"NYSMB-FSMB-TMB Scheme"** and within the corpus of communication, there exists evidence of a knowingly illegal agreement with the New York State Medical Board that any response to Plaintiff Kaul's application should be delayed, and that if Plaintiff Kaul persisted in requiring a response, a false response should be fabricated without involving any member of the board, but falsely claiming otherwise.

**603.** It is noteworthy that during the October 3, 2022, hearing, Plaintiff Kaul observed an appearance of 'shock' on the faces of several panel members when he raised the issue that senior members (Dr. Jane Massie/Dr. Raju Ramanathan) had admitted that no subcommittee/opinion had ever been convened/issued.

**604.** It is the **"pattern"** of the Defendants to conduct their **"pattern of racketeering"** through courts/governmental agencies in a manner that is restricted, for the purpose of secrecy, to a person/limited persons, with whom the Defendants engineer or have already engineered a bribery-based quid pro quo scheme.

**605.** The immensity of the potential losses of liberty/property/life associated with the crimes of **The Kaul Cases** Defendants, has caused them to coerce others into committing knowing/willful violations of the law and Plaintiff Kaul's human/constitutional rights, with the most recent coercion consisting of an assurance that U.S.D.J. Oetken's purported 'injunction' would definitely eliminate any threat posed by Plaintiff Kaul.

**606.** The Defendants have conducted this **"pattern of racketeering"** for decades in collusion/conspiracy with the state medical board members of the **"FC"**, by using the medical boards purported mission to **"protect the public"** as cover for their profit purposed racketeering crimes of illegally suspending/revoking the licenses of innocent physicians. In fact, Defendant FSMB/Co-conspirator NCMB's long-standing mandate to its subjugate medical boards is to increase their quotas of profit-generating 'physician discipline', a scheme to which it attaches monetary incentives for those that meet the corporate quota, or put otherwise corporate 'bonuses'.

**607.** Defendant FSMB publishes lists of subjugate medical board ranking in terms of 'disciplinary' actions, in order to 'shame' those in the lower sections into manufacturing higher numbers. The greater the number of actions, the more profit to the **"FC"**, from so called 'fines' and legal/other fees required by the targeted/victimized physician to regain his/her illegally seized license.

**608.** There exists admitted fact within <u>The Kaul Cases</u> that medical boards do not **"protect the public"**, as the **"FC"** system of physician discipline related fees/fines and slave physician labor for the insurance industry, is purposed simply for corporate/executive profit. A continuation of a four hundred (400) year **"pattern"**.

## 24. COUNT SIX

<u>Association-In-Fact Enterprise: State of California-UC San Diego Physician Assessment and Clinical Education (PACE) Program</u>
<u>Defendant Persons: FSMB/Allstate</u>
<u>Co-conspirator: Geico</u>
<u>RICO Predicate Acts: Wire fraud/Conspiracy/Public Corruption</u>

<u>Overview:</u>

**609.** In a time period commencing in approximately April 2022, Defendants FSMB/Allstate, and Co-conspirators NCMB/Geico did conspire to commit, and did commit a knowingly illegal **"pattern of racketeering"** and did convert the State of California and the UC San Diego Physician Assessment and Clinical Education (PACE) Program into an association-in-fact enterprise **("UC-PACE Association-In-Fact-Enterprise")**

**610.** It was through and under cover of the **"UC-PACE Association-In-Fact-Enterprise"** that Defendants FSMB/Allstate and Co-Conspirators NCMB/Geico perpetrated the RICO predicate acts of fraud on the court/public corruption, purposed to, in conjunction with the other RICO Schemes to attempt to eliminate Plaintiff Kaul by attempting to prohibit his access to the courts for compensatory redress and his access to a livelihood/license.

**611.** On May 27, 2020, the State of Pennsylvania granted Kaul's application for licensure after a one-day administrative hearing on February 7, 2020.

**612.** In order for Plaintiff Kaul to be provided an actual license, he was required to take an assessment course, which he commenced with K11-8 (Kaul v PACE/Leung-USDC-SDC-23-CV-00955) Defendant PACE in May 2022, with the conduction of three virtual interviews on May 4, June 15, and July 6, 2022.

**613.** K11-8 Defendant PACE, a for-profit corporation, derives the majority, if not all of its business from the **"FC"**, and prior to Plaintiff Kaul's first interview it knew the FSMB was a Defendant in K11-7. During the first interview, Plaintiff Kaul detected a suspicious tone, which caused the subsequent two (2) interviews to be recorded.

**614.** On July 21/22, Plaintiff Kaul completed the second and on-site component of the course at the K11-8 Defendant PACE's facility in San Diego, the entirety of which was video recorded by K11-8 Defendant PACE and from which Plaintiff Kaul retained contemporaneous notes.

**615.** At the conclusion of the course on July 22, 2022, after Plaintiff Kaul had drafted the final note to be submitted to the evaluation committee, he created a copy of this note for his records.

**616.** Prior to Plaintiff Kaul's departure he enquired as when he would receive the final report, and was informed it would be emailed directly to him, and only him within eight (8) weeks.

**617.** On September 22, 2022, having not received the report, Plaintiff Kaul telephoned K11-8 Defendant PACE and was informed by the person responsible for drafting the report that she has allegedly been out on **"sick leave"** and no other staff member had wanted to **"work"** on the report.

**618.** On October 12, 2022, Plaintiff Kaul received an email from this person, in which she requested Kaul provide her an email/telephone number of a **"contact person"** at the Pennsylvania Medical Board.

**619.** Plaintiff Kaul instructed this person that the report was NOT to be sent to any person associated with the medical board until he had reviewed it.

**620.** K11-8 Defendant PACE perpetrated the **"FC-PACE Scheme"** with Defendant FSMB to render a false and negative report regarding Plaintiff Kaul, and to transmit it directly to the Pennsylvania Medical Board to attempt to cause it to not issue Plaintiff Kaul a license, and to prevent Plaintiff Kaul from exposing its fraudulence and to then claim qualified immunity if and when Plaintiff Kaul sued.

**621.** The perpetration of this scheme was conducted across the US wires by emails and telephone conversations, and it was agreed that a knowingly false and highly defamatory report

would be issued, in which K11-8 Defendant PACE would describe Plaintiff Kaul as not only being a danger to the public, but that he would likely never meet the standards to ever return to the practice of medicine.[2]

**622.** The K11-7 Defendants conducted the same negative report/opinion/order generating scheme with K11-8 Defendant PACE, as it did with U.S.D.J. Oetken. K11-8 Defendant PACE, in drafting and transmitting the knowingly fraudulent report, did not anticipate that the virtual interviews had been recorded and that Plaintiff Kaul had retained a copies of his contemporaneous notes.

**623.** On October 17, 2022, K11-8 Defendant PACE used the US wires to transmit to Plaintiff Kaul a copy of their knowingly fraudulent report. It is an eleven (11) page document that Plaintiff Kaul's audio/final note evidence proves is fraudulent.

**624.** Plaintiff Kaul, having reviewed the report, did then request he be sent a copy of his entire case file, which includes the video recordings of the July 21/22 on-site assessments.

**625.** K11-8 Defendant PACE continues to withhold the property of Plaintiff Kaul's file.

**626.** On October 19, 2022, Plaintiff Kaul sent a letter to K11-8 Defendant PACE, in which he included a link to the July 6, 2022, audio recording and re-requested a copy of his file.

**627.** No file was produced.

**628.** On October 31, 2022, Plaintiff Kaul sent a second letter, in which he provided further evidence of the fraudulence of the October 17, 2022, report, and re-requested a copy of his case file.

**629.** No file was produced.

**630.** K11-8 Defendant PACE remained in communication with Defendant FSMB and used the US wires to discuss what steps it should implement to address Plaintiff Kaul's exposition of their fraud, and Plaintiff Kaul's October 19/31 letters.

**631.** Within these communications it was agreed that K11-8 Defendant PACE should not amend its fraudulent report, as U.S.D.J. Oetken's September 12, 2022, order/opinion purported to foreclose Plaintiff Kaul from filing suit in the United States District Court, and thus, in their estimation, Plaintiff Kaul could not seek redress for Defendant PACE's violation of his rights.

---

[2] (**The Kaul Cases** Defendants were seeking to permanently **"shut Kaul down"** in his efforts to procure a license, fearful that Plaintiff Kaul's license related economic resurgence would facilitate his prosecution of **The Kaul Cases** Defendants/further exposition of their crimes, which accounts for the rampant falsification of K11-8 Defendant PACE's 'assessment')

**632.** K11-8 Defendant PACE's lawyers obtained a copy of U.S.D.J. Oetken's September 12, 2022, report, and advised K11-8 Defendant PACE that Plaintiff Kaul had no legal recourse for their false report, and that they should send Plaintiff Kaul a letter informing him that they would not amend their report.

**633.** In the commission of this scheme, K11-8 Defendant PACE knew its misconduct constituted a violation of the wire fraud act, the honest services act and of Plaintiff Kaul's human/constitutional rights, and that their misconduct had converted the University of California – San Diego into a **"racketeering enterprise"** that furthered the interests of the **"FC"** at the expense of the people of the State of California.

**634.** <u>The Kaul Cases</u> Defendants decade-plus-long criminal conspiracy has exposed the State of California to immense domestic/international legal liability.

**635.** On November 10, 2022, Plaintiff Kaul submitted a FOIA request to the UC-San Diego seeking copies of all physician assessment reports since 2012. K11-8 Defendant PACE was notified of this request. Plaintiff Kaul's request was denied.

**636.** On May 25, 2023, Plaintiff Kaul filed suit against K11-8 Defendants PACE/Leung in the United States District Court for the Southern District of California.

## 25. COUNT SEVEN

<u>Association-In-Fact Enterprise: The District of Columbia-NYSE-SEC ("SNS Association-In-Fact-Enterprise)</u>
<u>Defendant Persons: Allstate/Christie</u>
<u>Co-conspirators: TD/Geico/ICE</u>
<u>RICO Predicate Acts: Securities fraud/mail fraud/wire fraud/money laundering</u>

<u>Overview</u>:

**637.** In a time period commencing in approximately 2009, the Defendants Allstate/Christie and Co-Conspirators TD/Geico/ICE did conspire to commit, and did commit a knowingly illegal **"pattern of racketeering"** and did convert the NYSE/SEC/The District of Columbia into an association-in-fact enterprise, through and under cover of which they perpetrated thousands of the RICO predicate acts of mail fraud/wire fraud/securities fraud/money laundering, purposed to advance their political/economic agenda.

**638.** Specifically, Defendant Christie sought to raise monies for gubernatorial and presidential campaigns, while Defendant Allstate and Co-conspirators Geico/TD/ICE sought to increase executive compensation and share price.

639. The Defendants **"The District of Columbia-NYSE-SEC" ("DNS Scheme")** scheme involved an intersection of the worlds of medicine/business/law/politics, and commenced in 2009, with the purpose of causing injury to Plaintiff Kaul's economic standing/reputation/livelihood/liberty/life through the perpetration of the following acts (**474-480**) of state/court-facilitated misconduct.

640. having Plaintiff Kaul's medical license revoked.

641. eradicating all debt owed to Plaintiff Kaul by insurance carriers (approx. $45 million).

642. destroying Plaintiff Kaul's reputation;

643. eliminating any future financial liability to Plaintiff Kaul.

644. causing Plaintiff Kaul to enter a state of poverty/homelessness;

645. attempting to cause/actually causing Plaintiff Kaul to be jailed/deported/attempted drugging-killing.

646. intimidating other minimally invasive spine surgeons into not performing minimally invasive spine surgery, in order to divert a greater percentage of the public's insurance premiums into corporate/executive compensation.

647. Defendants Allstate/Christie and Co-Conspirators TD/Geico/ICE have colluded and conspired to orchestrate both their underlying **"SNS Scheme"** and the subsequent, and multiple schemes to conceal and provide cover for the **"SNS Scheme"**.

648. The concealment has been perpetrated through massive schemes of corruption of state/federal politicians/judges, in an attempt to prevent Plaintiff Kaul from exposing **The Kaul Cases** Defendants and Co-Conspirators decades-long schemes of judicial/public corruption.

649. In 2005, Plaintiff Kaul invented and successfully performed the first outpatient minimally invasive spine surgery, at a NJ surgical center that had credentialed him to perform the procedure, and under the authority of his state medical license; a license issued in 1996 by the State of New Jersey for both medicine and **surgery**.

650. The state argued in administrative proceedings (NJ Office Administrative Law) from April 2 to June 28, 2013, that Plaintiff Kaul was not licensed to perform surgery. In this proceeding the Defendants and the state committed massive fraud, as evidenced in '**The Solomon Critique'/The Solomon Critique 2**'.

651. From 2006 to approximately 2009, Plaintiff Kaul was subjected to rule-of reason antitrust violations by **The Kaul Cases** Defendants, who wanted to eliminate the threat of Plaintiff Kaul's rapidly expanding minimally invasive spine surgery practice.

**652.** In furtherance of this scheme, **The Kaul Cases** Defendants did engage in multiple quid pro quo schemes with Defendant Christie, in which they funneled bribes into his political campaign, purposed to have him use state power to have the medical board revoke Plaintiff Kaul's license, an act that commenced illegally, was conducted illegally, and remains illegal (2008/9-2023)

**653.** Plaintiff Kaul's license was illegally suspended/revoked on April 2, 2012/March 24, 2014, and **The Kaul Cases** Defendants did with knowing illegality, use the US mail/wires to transmit this fraudulent notice globally to all governmental agencies, all state medical boards, including the District of Columbia/National Practitioners Data Bank/DEA/FBI.

**654.** From 2012 to 2020, pursuant to RICO's vicarious liability doctrine, Defendants Allstate/Christie, and Co-Conspirators TD/Geico/ICE, did conspire to commit, and did commit bankruptcy fraud and insurance fraud, by causing Plaintiff Kaul's medical malpractice carriers to be defrauded of millions of dollars by aiding/abetting the submission and fraudulent judicial adjudication of false 'medical malpractice' claims, as pled in K11-4.

**655.** Commencing in 2016, Defendants Allstate/Christie and Co-Conspirators TD/Geico/ICE, did extend their **"pattern of racketeering"** into the NYSE, through an ongoing commission of the predicate acts of securities fraud, in that they submitted false SEC filings/accounts, that defrauded, and continue to defraud the global equities market.

**656.** Based on this knowingly false information, Defendants Allstate/Christie and Co-Conspirators TD/Geico/ICE did perpetrate millions of trades with unsuspecting investors, concealing from them the massive risk associated with the purchase of these fraudulent equities.

**657.** In conjunction with these crimes, Defendants Allstate/Christie and Co-Conspirators TD/Geico/ICE did not disclose to the market that its profits, including those from the District of Columbia, are the product of crimes, as detailed in **The Kaul Cases**, but yet willfully and with knowledge of its illegality, did launder the proceeds of these crimes through the NYSE.

**658.** **The Kaul Cases** Defendants have converted the NYSE into a massive money-laundering operation, into which it has funneled the proceeds of its global **"patterns of racketeering"**, including those generated from the mass inoculation (5.5 billion humans) of the experimental toxic gene-splicing mRNA compound.

**659.** From 2006 to the present, the overarching theme of Defendants Allstate/Christie and Co-Conspirators TD/Geico/ICE crimes, has been the commission of increasingly more serious crimes, in an attempt to conceal their prior crimes, malfeasance and misconduct.

**660.** What commenced in 2006 with the professional jealousy of Plaintiff Kaul's competitors, of which Defendant Heary was a 'ring-leader', is in 2023, a multitude of felonies that include, amongst others: **(i)** bankruptcy fraud; **(ii)** securities fraud; **(iii)** mail fraud; **(iv)** wire fraud; **(v)** perjury: **(vi)** bribery; **(vii)** obstruction of justice; **(viii)** public/judicial corruption; **(ix)** civil rights

violations; **(x)** evidence tampering; **(xi)** witness tampering; **(xii)** false imprisonment; **(xiii)** false prosecution: **(xiv)** insurance fraud; **(xv)** kickbacks; **(xvi)** human rights violations; **(xvii)** retaliation; **(xviii)** false seizure of property; **(xix)** honest services fraud; **(xx)** racketeering; **(xxi)** conspiracy; **(xxii)** market manipulation/money laundering; **(xiii)** crimes against humanity; **(xiv)** violations of the Nuremberg Code.

## Co-conspirator ICE:

661. From 2016 to the present, Co-conspirator ICE knew or should have known that Co-conspirators TD/Geico and Defendant Allstate committed securities fraud, in willfully, and with knowledge of its illegality, failing to report to the market and the SEC their liability in **The Kaul Cases**.

662. Co-conspirator ICE was motivated to willful ignorance and did fail to cross reference court records with the filings of Co-conspirators Geico/TD and Defendant Allstate.

663. Co-conspirator ICE, in recognizing that its profits were tied to those of Defendant Allstate and Co-conspirators TD/Geico did tacitly conspire with these Defendant/Co-conspirators to perpetrate a knowingly illegal scheme of securities fraud concealment, that artificially manipulated the market, and was purposed to prevent a decrease in its share price.

664. Co-conspirator ICE used the US mail and wires to exchange information with Defendant Allstate and Co-conspirators Geico/TD, in furtherance of the **"SNS Scheme"**, in recognition of the illegality of the scheme and the manipulation of the market that would be caused by such a fraud.

665. Co-conspirator ICE did conspire with and did commit a **"pattern of racketeering"** by aiding and abetting the laundering of the criminal proceeds of Defendant Allstate and Co-conspirators TD/Geico through the apparatus of the **"SNS Association-In-Fact Enterprise"**, the principal purpose of which was to increase insurance industry executive profit and share price, at the expense, and through the exploitation of Plaintiff Kaul and thousands of other physicians, many of whom remain falsely imprisoned.

666. Co-conspirator ICE, although having reported regulatory/litigation risks in its SEC filings, did willfully and knowingly fail to specifically identify the securities fraud crimes of Defendant Allstate and Co-conspirators Geico/TD and is thus liable for these crimes.

667. Similarly, Co-conspirator ICE is also liable for the crimes from which Defendant Allstate/Co-conspirators TD/Geico's invested criminal proceeds originated, crimes that constitute a **"patterns of racketeering"** within the geographic boundaries of the District of Columbia, commencing in a period at least, if not before, Defendant Christie's first term as governor.

**668.** Co-conspirator ICE recognizes that because it both trades on the NYSE and engages in commerce with global exchanges, which affects the value of those exchanges, that its participation in the **"SNS Scheme"** caused it to become a conduit to these global exchanges of NYSE market valuation that it knew, or ought to have known were false and were the product of crime, but did also become a crime itself [market valuation] consequent to Co-conspirator ICE's global dissemination of a knowingly false market valuation that concealed the fact that the monies underpinning it were derived from the crimes of Defendant Allstate and Co-conspirators Geico/TD

**669.** Co-conspirator ICE used the US mail/wires to globally transmit knowingly fraudulent information about the market valuation of Defendant Allstate and Co-conspirators Geico/TD in that it omitted any specific reference within its SEC filings of the legal liability ($28,000 trillion +) to the global equities market of **The Kaul Cases**.

**670.** Co-conspirator ICE, in propagating this knowingly fraudulent information to the global equities market, did recognize its role in false equity evaluations and the creation of a 'bubble market' in India.

**671.** Co-conspirator ICE's Indian headquarters is Hyderabad (Plaintiff Kaul's birthplace), and it is cognizant of the fact that the Indian stock market was reported as being in a 'bubble' by the Reserve Bank of India. On December 16, 2022, Plaintiff Kaul filed a notice of litigation against Defendant ICE (India).

**672.** Defendant ICE recognizes that the false evaluations of the NYSE are responsible for the Indian 'bubble', and that the false evaluations of the NYSE are a consequence of **The Kaul Cases** Defendants financial crimes.

**673.** Co-conspirator ICE committed and continues to commit a massive fraud on the global financial market.

Christie:

**674.** From 2001, the year that Defendant Christie was appointed the US Attorney for the District of New Jersey, he abused state power and converted state/federal agencies into **"racketeering enterprises"**, through which he has conducted a **"pattern of racketeering"** purposed to further the economic/political agendas of himself and those individuals with whom he engaged in quid pro quo schemes of bribery and public corruption.

**675.** Commencing in or around 2008/2009, Defendant Christie entered into knowingly illegal conspiracies with Defendant Allstate and Co-conspirators Geico/TD, in which they methodically planned schemes to have eliminated Plaintiff Kaul (economic standing/reputation/livelihood/liberty/life) through the abuse of governmental power and physical violence).

**676.** Defendants Christie/Allstate and Co-conspirators Geico/TD/ICE conspired with state/federal investigative/prosecutorial authorities to file knowingly false criminal indictments against Plaintiff Kaul. These investigations ceased when Plaintiff Kaul filed K1 (February 22, 2016) except for, in a retaliatory manner, the filing of a knowingly false state tax indictment (May 2016) and suspension of Plaintiff Kaul's driving license (February 27, 2016).

**677.** From 2009 to 2017, Defendant Christie converted the executive/legislative/judicial branches of the State of New Jersey into a **"racketeering enterprise"**, that he used against Plaintiff Kaul, in a scheme to have him jailed/deported/seriously injured/killed.

**678.** The scheme sought to eliminate the debt owed to Plaintiff Kaul by the insurance industry.

**679.** The scheme sought to eliminate future liability to Plaintiff Kaul by the insurance industry.

**680.** The scheme sought to eliminate the threat that Plaintiff Kaul's minimally invasive spine surgery practice posed to **The Kaul Cases** physician/hospital Defendants, from whom, along with Defendant Allstate and Co-Conspirators Geico/TD, Defendant Christie had received bribes.

**681.** Defendant Christie believed that he would become the 2016 President of the United States, that Plaintiff Kaul would be eliminated, and the crimes of **The Kaul Cases** Defendants would go undetected, and that Plaintiff Kaul would not commence litigation in 2016.

**682.** However, when Plaintiff Kaul did commence litigation, Defendant Christie, in collusion/conspiracy with **The Kaul Cases** Defendants and certain judges within the United States District Court, did perpetrate a massive scheme of obstruction of justice, that violated Plaintiff Kaul's human rights, and was intended to prevent Plaintiff Kaul from exposing the crimes, and to obviate the obligation of Defendant Allstate and Co-conspirators TD/Geico (Berkshire Hathaway) to report the $28,000 trillion + in their SEC filings.

**683.** In the perpetration of the **"SNS Scheme"**, Defendant Christie did use the US mail/wires to exchange information with **The Kaul Cases** Defendants regarding the bankruptcy and securities fraud, as it pertained detrimentally to the share price of Defendant Allstate and Co-conspirator TD/Geico.

**684.** In aiding and abetting the **"SNS Scheme"**, Defendant Christie did fully recognize its illegality and the international criminal consequences of his participation in the defrauding of the global equities market.

**685.** Defendant Christie, nonetheless, did persist in the perpetration of the scheme out of fear that if the $28,000 trillion + liability were disclosed to the global equities market, it would cause shareholder litigation, that would expose the massive crimes committed by **The Kaul Cases** Defendants within the executive/legislative/judicial branches of the State of New Jersey, the United States District Court, and the United States Bankruptcy Court (2006 to Present).

686. Defendant Christie was also motivated to aid and abet the securities/bankruptcy fraud, as he had been bribed with shares from Defendant Allstate and Co-conspirator Geico, as part of the quid pro quo scheme in which he ordered the medical board to revoke Plaintiff Kaul's license.

687. Defendant Christie maintains a controlling position within the **"SNS Association-In-Fact Enterprise"** from which he continues to illegally profit, the profits of which he launders through the enterprise of his political lobbying/law business, that currently provide cover for his **"ongoing"** schemes of bribery and public corruption.

### Defendant Allstate/Co-conspirator Geico:

688. Plaintiff Kaul commenced suit against Defendant Allstate and Co-conspirator Geico on February 22, 2016, in K1, in which Plaintiff Kaul sought $28,000 trillion + in monetary damages. Allstate's market capitalization was approximately $33 billion, and thus it was obligated to report the claims in its SEC filings. It did not, and still has not.

689. Pursuant to RICO's vicarious liability doctrine, Defendant Allstate remains liable for the securities violation of its Co-conspirator, Geico.

690. Co-conspirator Geico, in recognizing the immense civil/criminal consequences of disclosure, and the damage to its reputation within the global equities market, did conspire with Co-conspirator ICE in its withholding of this information.

691. Co-conspirator ICE was motivated to participate in the **"SNS Scheme"** as its share price and corporate profits were linked to those of Co-conspirator Geico, and it recognized that exposure to the global equities market of the $28,000 trillion + liability had the potential to bankrupt Co-conspirator Geico.

692. Co-conspirators ICE/Geico did use the US mail/wires and face-to-face meetings to exchange information about the **"SNS Scheme"**.

693. Within the corpus of communication, Co-conspirators ICE/Geico concluded that the risk of Plaintiff Kaul exposing a securities fraud violation was minimal compared to the risk of bankruptcy if The Kaul Cases were exposed to the global equities market.

694. Co-conspirator Geico, in recognizing that Co-conspirator ICE would not report its false filings to the SEC/DOJ, did continue to fraudulently trade millions of shares from 2016 onwards, in the knowledge of its illegality, and that it would cause false market valuations, market manipulations and investors to be defrauded.

695. Co-conspirator Geico reaped illegal profits from the **"SNS Scheme"**,

696. Co-conspirator Geico funneled the illegal profits as bribes to certain judges within the United States District Court (K11-3) and certain state/federal politicians (K11-1), in order to control the **"racketeering enterprise"** into which <u>The Kaul Cases</u> Defendants had converted certain courts (district/appellate) within the United States District Court.

697. In a period commencing in approximately 2008/2009, Co-conspirator Geico, a corporation that conducts business in every state, did, through a **"pattern of racketeering",** and in conspiracy/collusion with <u>The Kaul Cases</u> Defendants, convert into **"racketeering enterprises"** the District of Columbia/All Other American States, the United States District Court, the United States Bankruptcy Court, the New York Stock Exchange and state/federal investigative/prosecutorial authorities, all purposed to eliminate Plaintiff Kaul from the American healthcare market and life itself.

698. Co-conspirator Geico then used the **"racketeering enterprises"** (District of Columbia/All Other American States, the United States District Court, the United States Bankruptcy Court, the New York Stock Exchange, and state/federal investigative/prosecutorial authorities) to attempt to obstruct Plaintiff Kaul's litigation/license procurement, in order to provide cover for their crimes, when their Kaul elimination scheme failed (2008/9 to 2021).
<u>Co-conspirator TD</u>:

699. On February 22, 2016, with the filing of K1, Plaintiff Kaul did expose the crimes of Co-conspirator TD, and their role in the willful deprivation of Plaintiff Kaul's economic resources, necessary to fight the revocation proceedings filed by Defendant Christie's then state AG, Jeffrey Chiesa.

700. In K1, Plaintiff Kaul also exposed Co-conspirator TD's knowingly illegal/conspiratorial use of state/bankruptcy courts within the geographic boundaries of the State of New Jersey to bankrupt Plaintiff Kaul's corporations and illegally deprive him of his personal/business assets ($45 million accounts receivable/others).

701. Co-conspirator TD, a corporation that conducts business in the District of Columbia/All Other American States, commenced conspiring with Defendants Christie/Allstate and Co-conspirator Geico in or around 2010, in a series of quid pro quo schemes, in which Co-conspirator TD received regulatory favors from Defendant Christie in return for arbitrarily foreclosing on Plaintiff Kaul's personal/commercial loans.

702. Defendant Allstate/Co-conspirator Geico had bribed Defendant Christie to eliminate Plaintiff Kaul.

703. Defendant Christie's quid pro quo with Co-conspirator TD, was partially purposed to deprive Plaintiff Kaul of monies to litigate the licensing case against the State of New Jersey.

**704.** Defendant Christie's quid pro quo with Co-conspirator TD, was partially purposed to bankrupt his corporations in order to facilitate the elimination of debt ($45 million) owed to Plaintiff Kaul by the insurance industry.

**705.** Co-conspirator TD, in recognizing the immense civil/criminal liability of **The Kaul Cases**, did conspire with Co-conspirator ICE to conceal the litigation from the global equities market, and did submit false SEC filings and accounts from 2016 to 2021,

**706.** Co-conspirator TD submitted false SEC filings in the belief that Kaul would not expose its prior crimes, as **The Kaul Cases** Defendants had bribed certain judges within the United States District Court and the United States Bankruptcy Court.

**707.** Co-conspirator TD submitted false SEC filings with a sense of impunity derived from its knowledge of the fact that Defendant FSMB/Co-conspirator NCMB acting through the **"Federation Cartel"** would attempt to obstruct Plaintiff Kaul's efforts at license procurement.

**708.** Co-conspirator TD submitted false SEC filings with a sense of impunity derived from its belief that **The Kaul Cases** Defendants obstruction of Plaintiff Kaul's litigation and the **"FC"**'s obstruction of license procurement would collectively obstruct Plaintiff Kaul from procuring funding to litigate and even if he did, to actually litigate.

**709.** From 2016 onwards Co-conspirator TD did use the US mail/wires and engage in face-to-face meetings with Defendants Allstate/Christie and Co-conspirators ICE/Geico in furtherance of the **"SNS Scheme"**.

**710.** At these meetings, and within these communications, Defendants Christie/Allstate and Co-conspirators Geico/ICE did discuss and conclude that the risk of Plaintiff Kaul exposing their securities fraud violation was substantially outweighed by the risk of disclosing the $28,000 trillion + liability to the global equities market.

**711.** In conspiring with **The Kaul Cases** Defendants, Co-conspirator TD did recognize the illegality of their failure to disclose and did follow the advice of counsel in failing to disclose.

**712.** Co-conspirator TD's counsel did conspire/collude with counsel for **The Kaul Cases** Defendants in furtherance of the **"SNS Scheme"** for the purpose of concealing their prior crimes,

**713.** Co-conspirator TD's prior crimes involved massive schemes of judicial/public corruption, at the center of which was Defendant Christie, his presidential ambitions, and the commercial agendas of corporations/persons from whom Defendant Christie had received bribes.

**714.** Co-conspirator TD, in willfully committing securities fraud and defrauding the global equities market of their right to honest services, did perpetrate such a scheme with the

premeditated purpose of violating Plaintiff Kaul's litigation rights, in that it stymied his 'whistleblowing' on the crimes of **The Kaul Cases** Defendants.

**715.** Defendant Allstate and Co-conspirators Geico/TD did recognize that disclosure to the global equities market would cause investors to withdraw their stock position, as occurred with K11-2 Defendant Boston Partners, after Plaintiff Kaul informed them in November 2018 of the pending litigation in K1/K2.

**716.** Defendant Allstate and Co-conspirators Geico/TD  did recognize that a disclosure of the $28,000 trillion + liability would cause massive shareholder litigation and damaging publicity regarding their schemes of judicial/public corruption, and that this litigation/publicity would augment Plaintiff Kaul's prosecutorial rights.

**717.** Defendant Allstate and Co-conspirators Geico/TD knowing, and willful violation of the Sarbanes-Oxley Act was purposed to provide cover for their previous crimes against Plaintiff Kaul (bribery/mail fraud/wire fraud/judicial corruption/public corruption/civil rights violations/perjury/kickbacks/false arrest/false imprisonment/obstruction of justice/illegal seizure of assets/money laundering/bankruptcy fraud/bank fraud), and were purposed to, and did in fact, violate Plaintiff Kaul's prosecutorial rights.


# 26. COUNT EIGHT

**Association-In-Fact Enterprise: The District of Columbia-United States Bankruptcy Court-NYSE**
**Defendant Persons: Allstate/Stolz**
**Co-conspirators: Geico/TD**
**RICO Predicate Acts: bankruptcy fraud/mail fraud/wire fraud/public corruption/bank**
**fraud/securities fraud/money laundering**

**Overview**:

**718.** In a period from approximately 2008/2009 to 2013, Defendant Allstate and Co-conspirators Geico/TD, entities that conduct business in all states, did commence conspiring to commit, and did commit a **"pattern of racketeering"** through the enterprise of the District of Columbia/All Other American States.

**719.** From 2013 to 2016, Defendant Allstate and Co-conspirators Geico/TD did extend and amplify this **"pattern of racketeering"** into the United States Bankruptcy Court.

**720.** From 2016 onwards, Defendant Allstate and Co-conspirators Geico/TD and did extend and amplify this **"pattern of racketeering"** into the NYSE, to form an association-in-fact enterprise,

the **"District of Columbia-United States Bankruptcy Court-New York Stock Exchange Association-In-Fact Enterprise"** (**"DUN-Association-In-Fact Enterprise"**).

**721.** The Defendant Persons that orchestrated, controlled, aided, and abetted, and that did either occupy or effect controlling positions within the enterprises were Defendants Stolz/Allstate.

**722.** The Co-conspirators, Geico/TD and specifically, K11-3 Defendant/U.S.B.J. John Sherwood, did aid and abet Defendants Stolz/Allstate's perpetration of their **"SUN Scheme"** through a **"pattern of racketeering"**.

**723.** The **"pattern of racketeering"** involved the commission of the RICO predicate acts of mail fraud/wire fraud/perjury/obstruction of justice/kickbacks/judicial corruption/public corruption/money laundering/bankruptcy fraud/bank fraud/securities fraud,

**724.** The **"pattern of racketeering"**  and the RICO predicate acts were knowingly/willfully committed, and with knowledge of their illegality, through a purposeful conversion of the District of Columbia/U.S.B.C./NYSE into **"an association-in-fact racketeering enterprises"**, the principal purpose of which was to increase executive/corporate profit and compensation for Defendant Allstate, who funneled bribes to Defendants Stolz/Christie.

**725.** The bribes funneled by Defendant Allstate to Defendants Stolz/Christie were either disguised as 'legal fees'/political campaign 'donations', or deposited in offshore bank accounts/trusts.

**726.** Defendants Stolz/Christie and Co-conspirators Geico/TD did use the US mail/wires and conduct face-to-face meetings in the District of Columbia, for the purpose of devising, planning, and executing the knowingly illegal **"SUN Scheme"**.

**727.** Defendants Stolz/Allstate/Christie and Co-conspirators Geico/TD, in the initial planning of their criminal enterprise did not anticipate that in 2016, Plaintiff Kaul would commence litigation, or that the damages sought would be in excess of ten percent (10%) of their market capitalization.

**728.** In fact, Defendants Stolz/Allstate/Christie and Co-conspirators Geico/TD believed that Plaintiff Kaul would be deported/jailed/killed, and on May 27, 2021, they did, in a state of desperation, perpetrate a scheme in which Plaintiff Kaul was illegally arrested/kidnapped/imprisoned, with the intention of having him permanently injured or killed in the Mercer County jail in Trenton, New Jersey.

**729.** The scheme failed, and Plaintiff Kaul filed suit on June 15, 2021, against K11-9 Defendants Christopher J. Christie/Philip Murphy/Doreen Hafner/Robert McGuire/Gurbir Grewal, <u>the latter who is named in pending criminal indictment against Senator Robert Menendez.</u>

**730.** Defendants Stolz/Allstate/Christie and Co-conspirators Geico/TD, in recognizing their $28,000 trillion + liability, did conspire with Co-conspirator ICE, in the concealment of this information from the global equities market, in which Defendant Allstate and Co-conspirators Geico/TD trade.

**731.** In 2012, Defendant Allstate extended its operations into India, while simultaneously conducting, in collusion/conspiracy with American state/federal Investigative/prosecutorial authorities, policies of racially targeting Indian physicians for license revocation and imprisonment.

**Defendant Allstate/Co-conspirator Geico**:

**732.** In June 2013, Co-conspirator TD, in furtherance of the Defendants **"racketeering schemes"** (2008/2008-2023) caused Plaintiff Kaul's corporations to file for Chapter 11 bankruptcy, by arbitrarily/illegally cancelling all his personal/business loans and closing all his personal/business accounts.

**733.** On July 21, 2014, the Chapter 11 was converted to a Chapter 7, because of the illegal revocation of Plaintiff Kaul's license on March 24, 2014. Defendant Stolz and his now deceased law partner, Robert Wasserman, were assigned as the trustee.

**734.** In a period that commenced in approximately July 2014, Defendant Allstate/Co-conspirator Geico did enter into a conspiracy with Defendant Stolz, in which Defendant Stolz accepted bribes from Defendant Allstate/Co-conspirator Geico in return for not pursuing the $45 million accounts receivable owed to Plaintiff Kaul by Defendants Allstate/Co-conspirator Geico and others within the insurance industry, as is irrefutably pled in K4.

**735.** Defendant Allstate/Co-conspirator Geico did use the US mail/wires and face-to-face meetings with Defendant Stolz to exchange information regarding the perpetration of the **"SUN Scheme"**, the purpose of which was to increase share price/executive compensation and bribes to Defendant Stolz.

**736.** During these communications, Defendants Allstate/Stolz and Co-conspirator Geico did consider the money laundering risk posed by the investment of the proceeds of their crimes into the NYSE.

**737.** Defendants Allstate/Stolz and Co-conspirator Geico calculated that the risk was minimal, as Plaintiff Kaul would be eliminated and any person who had knowledge of the crimes would remain silent, fearful of retaliation of a criminal indictment from Defendant Christie, who was still the NJ Governor.

**738.** Defendants Allstate/Stolz and Co-conspirator Geico calculated that their illegal scheme would cause an elevation of share price, the false basis of which would be concealed from the global investment community.

**739.** Subsequent to the filing of K1, the Defendants Allstate and Co-conspirators Geico/TD did conspire to not report the case in their SEC filings, in order to provide cover for, amongst other things, their crime of bankruptcy/creditors fraud.

**740.** However, in filing knowingly false SEC returns, they committed securities fraud, a crime that they have committed before, but in this case, a crime that commenced in 2016, and is ongoing in 2023.

**741.** On May 27, 2021, <u>The Kaul Cases</u> Defendants attempted to have Plaintiff Kaul seriously injured or killed (K11-9) and on June 14-15, 2023, did have Plaintiff Kaul illegally arrested/jailed/attempted murder.

<u>Defendant Stolz</u>:

**742.** Defendant Stolz, a lawyer, knew that in conspiring to commit and committing the RICO predicate acts of bankruptcy fraud/securities fraud/mail fraud/wire fraud, through a **"pattern of racketeering"** in which he converted the United States Bankruptcy Court into a **"racketeering enterprise"**, for a period commencing on July 21, 2014, he has defrauded the global equities market of its right to honest services, caused injury to foreign markets and has thus incurred international criminal liability.

**743.** Plaintiff Kaul has exposed the crimes of Defendant Stolz, who from 2018 conspired with corrupted judges in the District of New Jersey to prevent Plaintiff Kaul from prosecuting his claims against Defendant Stolz.

**744.** The tactics used by Defendant Stolz included having Co-conspirator/K11-3 Defendant U.S.B.J. John Sherwood enter an order in February 2020, that sought to bar Plaintiff Kaul from prosecuting Defendant Stolz for his crimes.

**745.** Co-conspirator/K11-3 Defendant Sherwood, as plausibly and irrefutably pled in K11-3, did accept bribes from Defendant Allstate/Co-conspirator Geico and K11-11 Defendant Blue Cross Blue Shield in return for entering judgements adverse to Plaintiff Kaul/creditors in the bankruptcy proceedings (July 21, 2014, to July 31, 2020).

**746.** <u>The Kaul Cases</u> Defendants 'hijacked' the authority of the United States Bankruptcy Court through massive schemes of judicial corruption/bribery.

**747.** When Plaintiff Kaul commenced litigation against Defendant Stolz in 2018 (K4) Defendant Stolz and his lawyer, Scott Rever, desperate to prevent their prosecution by Plaintiff Kaul, did threaten to expose the names of state/federal politicians and judges, who had either participated/facilitated his bankruptcy fraud in Plaintiff Kaul's case, or had received bribes from the insurance industry in cases involving other physicians/healthcare providers.

**748.** From 2016 to the present, Defendant Stolz, with knowledge of Defendant Allstate/Co-conspirators Geico/TD's securities fraud crimes, has failed to report the crimes to regulators or the global equities market, as he recognizes that to report would expose his crime of bankruptcy fraud, and the crimes/malfeasance of all of **The Kaul Cases** Defendants, extending back to 2006.

**749.** Defendant Stolz has knowledge that Defendant Allstate/Co-conspirators Geico/TD did conspire with Co-conspirator ICE to conceal from the global equities market, their $28,000 trillion + liability.

**750.** Defendant Stolz has knowledge that Defendant Allstate/Co-conspirators Geico/TD did conspire with the SEC to have K11-9 Defendant/Co-conspirator and ex-NJ AG Gurbir Grewal, transferred on June 29, 2021, from the Office of the NJ AG to the securities fraud enforcement division, after Plaintiff Kaul sued him in K11-9 for his role in the May 27, 2021, kidnapping of Plaintiff Kaul.

**751.** Defendant Stolz has knowledge that K11-2 Defendant, Boston Partners, admitted to withdrawing its position in Co-conspirator Allstate, after they received a letter from Plaintiff Kaul in November 2018, that informed them of securities fraud violations committed by Defendant Allstate/Co-conspirators Geico/TD, in submitting knowingly false SEC filings in a period from 2016 onwards.

**Co-conspirator TD:**

**752.** In approximately 2010, Co-conspirator TD commenced conspiring against Plaintiff Kaul with Defendants Allstate/Christie and Co-conspirator Geico in a scheme to eliminate Plaintiff Kaul through the destruction of his career/livelihood/reputation/economic standing.

**753.** In furtherance of this scheme, Co-conspirator TD used the US mail/wires to transmit information regarding the scheme's devising/implementation/execution, in the knowledge that such transmission constituted the crimes of mail/wire fraud.

**754.** However, Co-conspirator TD did not believe that Plaintiff Kaul would expose its crimes, as it received information from Defendants Christie/Allstate and Co-conspirator Geico that Plaintiff Kaul would be eliminated.

**755.** Co-conspirator TD entered into a series of quid pro quo schemes with Defendants Allstate/Christie and Co-conspirator Geico in which they conducted a **"pattern of racketeering"** through the American banking system and United States Bankruptcy Court, through the commission of the RICO predicate acts of mail fraud/wire fraud/bankruptcy fraud/bank fraud.

**756.** Co-conspirator TD, in its conspiratorial role in the nationwide licensing suspension/licensing prohibition scheme directed at Plaintiff Kaul that commenced in 2012 in NJ, did subsequently convert into an **"association-in-fact racketeering enterprise"**, the District

of Columbia/United States Bankruptcy Court/NYSE in the knowledge of the immense civil/criminal liability that such crime, if exposed, would cause to them and their shareholders.

757. In approximately late 2013/2014, Co-conspirator TD, in collusion/conspiracy with Defendants Allstate/Christie and Co-conspirator Geico did file a knowingly false banking fraud claim against Kaul, with www.checksystems.com.

758. The purpose and effect of this fraudulent www.checksystems.com claim was to prevent Plaintiff Kaul's access to banking services, cause a deterioration in his credit score in order to prevent him funding the licensing litigation.

759. Co-conspirator TD did not anticipate that Plaintiff Kaul would sue them in 2016, nor that he would expose their securities fraud violation (2016 to present).

760. During the Chapter 11 and then Chapter 7 bankruptcy proceedings (June 17, 2013, to July 31, 2020), Co-conspirator TD, with knowledge of the illegality of the revocation of Plaintiff Kaul's license, and the **"racketeering schemes"** perpetrated by, amongst others, Defendants Allstate/Christie, and Co-conspirator Geico that caused the revocation/subsequent legal cases against Plaintiff Kaul, did conspire with its counsel to not report the bankruptcy fraud to authorities.

761. Co-conspirator TD's reason for failing to report the bankruptcy fraud was that it did not want exposed its prior crimes and involvement in **The Kaul Cases** Defendants scheme to eliminate Plaintiff Kaul (livelihood/reputation/assets/freedom/human rights).

762. Co-conspirator TD conspired with Defendants Stolz/Allstate and Co-conspirator Geico and K11-2 Defendant, John Diiorio, Esq, Plaintiff Kaul's Chapter 7 lawyer, to threaten Plaintiff Kaul that unless he signed over title to the real estate in which his surgical center was located, despite it belonging to a corporation not part of the Chapter 11 proceeding, that Plaintiff Kaul's ex-wife would be sued by Defendant Stolz and she/Plaintiff Kaul's young children would be evicted from their childhood home.

763. In a period from 2016 onwards, Co-conspirator TD conspired with its lawyers/accountants to defraud the global equities market of its right to honest services, through the submission of false SEC filings and accounting reports.

764. Co-conspirator TD perpetrated these criminal deceptions on the global equities market, in the belief, and with the intention of violating Plaintiff Kaul's prosecutorial rights in K1, knowing that disclosure of the K1 facts and the immense financial liability would have caused investors to withdraw their positions and commence shareholder litigation.

765. Co-conspirator TD knew that shareholder litigation would have exposed their crimes, that include those associated with the purchase of Commerce Bank in 2007, in which they bribed multiple NJ state politicians in a 'pay-to-play' scheme, in order to complete the purchase.

**766.** Co-conspirator TD knew that such an exposition of crime would have conclusively proved Plaintiff Kaul's claims in K1 and specifically the fact of the 2009/2010 quid pro quo scheme with Defendant Christie, in which Co-conspirator TD, in exchange for regulatory banking favors in New Jersey, did consent to cancelling Plaintiff Kaul's personal/commercial loans, closing his accounts, and filing a knowingly fraudulent claim with www.checksystems.com

## 27. COUNT NINE

**Association-In-Fact Enterprise: The District of Columbia-United States District Court**
**Defendant Persons: Christie/Heary**
**Co-conspirator: AHS**
**RICO Predicate Acts: mail fraud/wire fraud/bribery/obstruction of justice/public corruption/money laundering**

**Overview**:

**767.** In a period commencing in approximately 2006, Defendants Christie//Heary and Co-conspirator AHS commenced conspiring to commit, and did commit, a **"pattern of racketeering"** through the association-in-fact enterprise of the District of Columbia and the United States District Court, the **"SU Association-In-Fact Enterprise"**, in furtherance of the **"SU Scheme"**,

**768.** Defendants Christie//Heary and Co-conspirator AHS perpetrated the **"SU Scheme"** through the commission of the RICO predicate acts of mail fraud/wire fraud/bribery/public corruption/obstruction of justice/perjury/kickbacks/bank fraud/investor fraud.

**769.** A motivating factor for the **"SU Scheme"** was to increase Defendants Christie//Heary and Co-conspirator AHS's economic/political power within the American legal/medical/business/political sectors of industry, at the expense of Plaintiff Kaul, free standing surgical centers, and non-neurosurgical minimally invasive spine surgeons,

**770.** A reassuring factor in the "SU Scheme", one that provided a sense of impunity, was Defendant Christie/Heary and Co-Conspirator AHS's belief that through corruption, they could indefinitely pervert the United States District Court into providing cover for their crimes within the District of Columbia/All Other American States.

**Defendant Christie**:

**771.** In 2000, when Defendant Christie was appointed the US Attorney for the District of New Jersey, he commenced abusing state prosecutorial power for advancement of his personal/political/economic agendas by manufacturing false indictments to threaten persons

with criminal prosecution in order to coerce them into funneling money (directly/indirectly) into his political campaigns and offshore bank accounts/trusts.

**772.** Defendant Christie used this money to occupy the governor's office in 2009/2013, from which he continued the **"pattern of racketeering"** of extortion and quid pro quo scheme bribery, in which bribes were funneled into his political campaigns/offshore bank accounts by, amongst others, Defendant Heary and Co-conspirator AHS.

**773.** The quid pro quo schemes were purposed to have eliminated Plaintiff Kaul from the healthcare market and from life itself.

**774.** The quid pro quo schemes were purposed to have eliminated free standing surgical centers.

**775.** The quid pro quo schemes were purposed to have eliminated billing codes for outpatient spine surgery.

**776.** The quid pro quo schemes were purposed to have introduced legislation that prevented the issuance of state licenses for physician owned surgical centers

**777.** The quid pro quo schemes were purposed to have downgraded the RVU of billing codes for spine surgery in free standing physician owned surgical centers.

**778.** These illegally conducted tactics were part of an overall strategy perpetrated by for-profit healthcare corporations, such as Defendant Allstate and Co-conspirators Geico/AHS, to illegally monopolize, through both per se/rule of reason violations, the American healthcare market.

**779.** At the heart of this conspiracy lies the **"HIPIC-FC" ("Hospital-Insurance-Pharmaceutical-Industrial Complex – Federation Cartel")** and related to this is the **"Hospital-Insurance-Pharmaceutical-Industrial-Complex-US Government Cartel"** the **"HIPIC-USC".**

**780.** These two cartels, **"HIPIC-FC"** and **"HIPIC-USC"**, operate to eliminate physicians through license revocation/incarceration/suicide/death, in order to increase the corporations' profits/share price, by reducing the amount of patient care provided, by reducing the number of physicians.

**781.** Defendant Christie, in his capacity as the US Attorney did come to understand the mechanics of the securities market, and was involved with securities fraud cases. Co-conspirator ICE came into existence as recently as 2000, the year Defendant Christie became US Attorney, but yet by 2021 it has a market capitalization of $68 billion.

Bribery:

782. Defendant Christie's relationship with bribers, bribery and quid pro quo schemes extends back to his early political/legal career in Morris County, New Jersey.

783. In a time period from 2008 to 2016, Defendants Heary and Co-conspirator AHS funneled bribes to Defendant Christie, using as cover, his political campaign account and law/public relation/political lobbying firms with whom Defendant Christie conducted illegal transactions, in which he used the public treasury to funnel state contracts to these firms in return for bribes.

784. The bribes flowed from Defendants Heary and Co-conspirator AHS to Defendant Christie, and the public's money (kickbacks) flowed from Defendant Christie to Defendants Heary ($3.1 million state 'salary') and Co-conspirator AHS, in the form, amongst others, of government grants and tax deductions/exemptions.

Mail Fraud/Wire Fraud:

785. In a period from 2008 to 2021 Defendant Christie did, with knowledge of its illegality, use the US mail/wires to exchange information with Defendants Heary and Co-conspirator AHS in furtherance of the **"SU Scheme"**, for the purpose of illegal spine market monopolization (2008-2014)

786. In a period from 2008 to 2021 the Defendants Christie/Heary and Co-conspirator AHS did, with knowledge of its illegality, use the US mail/wires to exchange information regarding the provision of cover in the United States District Court against Plaintiff Kaul's prosecution of their antitrust/racketeering/civil rights crimes (2016-2021).

787. The attempted procurement of cover constituted an effort to ensure Plaintiff Kaul did not expose **The Kaul Cases** Defendants illegal spine market monopolization.

Obstruction of Justice:

788. In a period from 2012 to 2021, Defendant Christie did conspire to commit, and did commit an obstruction/violation of Plaintiff Kaul's right to justice by, through and as a consequence of his control of the executive/judicial/legislative branches of the State of New Jersey.

789. The obstruction/violation caused **"ongoing"** and **"new racketeering"** injuries to Plaintiff Kaul's economic standing/reputation/livelihood/life/liberty.

790. Defendant Christie conspired with Defendants Stolz/Allstate and Co-Conspirator TD/Geico to obstruct Plaintiff Kaul's right to justice in the United States Bankruptcy Court (2013 to 2020), an obstruction that caused further new injuries and exacerbated ongoing injuries.

791. Defendant Christie conspired with **The Kaul Cases** Defendants/counsel (2016-2021) to obstruct/violate Plaintiff Kaul's prosecutorial rights in the United States District Court,

**792.** The purpose of the violation/obstruction was to attempt to prevent Plaintiff Kaul from further exposing their crimes in the State of New Jersey and the United States Bankruptcy Court.

Public Corruption:

**793.** In a period from 2008 to 2021, Defendant Christie abused his political power and public office to engage in acts of public corruption with private actors (persons/corporations), state/federal judges, medical boards, and NJ state police.

**794.** Defendant Christie's corrupt acts were purposed to eliminate Plaintiff Kaul (deportation/jailed/suicide-killed).

**795.** Defendant Christie's corrupt acts were purposed to order/coerce state judges/courts to obstruct Plaintiff Kaul's right to justice and to have entered multi-million-dollar judgments in knowingly fraudulent cases brought against him by **The Kaul Cases** Defendants/Co-Conspirators (lawyers/patients), in the widely publicized (2012 to 2015) aftermath of the illegal 2012/2014 suspension/revocation.

**796.** Defendant Christie's corrupt acts were purposed to obstruct Plaintiff Kaul's right to justice in the United States Bankruptcy Court (2013-2020).

**797.** Defendant Christie's corrupt acts were purposed to violate Plaintiff Kaul's prosecutorial rights in the United States District Court (2013-2023).

**798.** Defendants Christie/Allstate and Co-Conspirators Geico/TD conspired with the SEC to have Co-Conspirator Grewal transferred to the enforcement division of the SEC on June 29, 2021, to attempt to quash a securities fraud prosecution of Defendant Allstate and Co-Conspirators Geico/TD.

**AHS**:

Mail/Wire Fraud:

**799.** In a period from approximately 2008/2009 to 2014, Co-Conspirator AHS did with knowledge of its illegality, use the US mail/wires to conspire with, amongst others, Defendant Christie, regarding the perpetration of the first half of the **"SU Scheme".**

**800.** The first half of the **"SU Scheme"** involved the illegal revocation of Plaintiff Kaul's license, the destruction of his economic standing/reputation and elimination, be it by jail/deportation/suicide-death.

**801.** From 2016 to 2021, Defendant AHS/counsel did, with knowledge of its illegality, use the US mail/wires to conspire with **The Kaul Cases** Defendants/counsel, regarding the perpetration of the second half of the **"SU Scheme"**,

802. The second half of the **"SU Scheme"** involved the corruption of judges within the United States District Court to obstruct justice by violating Plaintiff Kaul's prosecutorial rights.

803. The purpose of the second half of the **"SU Scheme"** was to attempt to prevent Plaintiff Kaul from further exposing the crimes committed in the first half of the **"SU Scheme"**, and the securities fraud violations of Defendants Allstate and Co-conspirators TD/Geico.

804. Co-Conspirator AHS's shareholding in these corporations has increased since the filing of K1, on February 22, 2016, as is a fact with many other of <u>**The Kaul Cases**</u> Defendants.

<u>Bribery</u>:

805. In a period from 2008/2009, Co-Conspirator AHS did engage in a series of quid pro quo schemes with Defendant Christie, in which they converted the executive/legislative/judicial branches of the State of New Jersey into a **"racketeering enterprise"**,

806. Through the **"racketeering enterprise"** Co-Conspirator AHS conducted a **"pattern of racketeering"**.

807. Co-Conspirator AHS's **"pattern of racketeering"** involved a conspiracy to commit, and the actual commission with knowing illegality of the RICO predicate acts of bribery/public corruption.

<u>**Heary**</u>:

<u>Mail/Wire Fraud</u>:

808. In a period from approximately 2008/2009 to 2014, Defendant Heary did with knowledge of its illegality, use the US mail/wires to conspire with, amongst others, Defendant Christie, regarding the perpetration of the first half of the **"SU Scheme"**,

809. The first half of the **"SU Scheme"** involved the revocation of Plaintiff Kaul's license, the destruction of his economic standing/reputation and elimination, be it by jail/deportation/death.

810. From 2016 to 2021, Defendant AHS/counsel did, with knowledge of its illegality, use the US mail/wires to conspire with <u>**The Kaul Cases**</u> Defendants/counsel, regarding the perpetration of the second half of the **"SU Scheme"**,

811. The second half of the **"SU Scheme"** involved the corruption of judges within the United States District Court to obstruct justice by violating Plaintiff Kaul's prosecutorial rights,

**812.** The purpose of the second half of the **"SU Scheme"** was to attempt to prevent Plaintiff Kaul from further exposing the crimes committed in the first half of the **"SU Scheme"**, and the securities fraud violations of Defendant Allstate and Co-Conspirators.

**813.** Defendant Heary's shareholding in these corporations has increased since the filing of K1, on February 22, 2016, as is the case with many other of **The Kaul Cases** Defendants. <u>Bribery/Public Corruption</u>:

**814.** In a period from 2008/2009, Defendant Heary did engage in a series of quid pro quo schemes with Defendant Christie,

**815.** In the perpetration of these quid pro quo schemes, Defendants Christie/Heary did directly/indirectly convert the District of Columbia into a **"racketeering enterprise"**.

**816.** Defendants Christie/Heary and the Co-Conspirators in collusion with **The Kaul Cases** Defendants, perpetrate through the **"racketeering enterprise"** a **"pattern of racketeering"**.

**817.** The **"pattern of racketeering"** involved conspiring to commit and actually committing with a knowing illegality, the RICO predicate acts of bribery/public corruption.

## 28. COUNT TEN

<u>Association-In-Fact Enterprise: State of New Jersey-United States District Court-United States Bankruptcy Court-NYSE</u>
<u>Defendant Persons: FSMB/Christie/Allstate</u>
<u>Co-conspirators: Geico/NCMB</u>
<u>RICO Predicate Acts: mail fraud/wire fraud/bribery/obstruction of justice/public corruption/money laundering</u>

<u>Overview</u>:

**818.** In a period that commenced in approximately 2008/2009, the Defendants did conspire to commit, and did commit, with knowledge of its illegality, a **"pattern of racketeering"**.

**819.** The **"pattern of racketeering"** involved conspiring to commit and actually committing with a knowing illegality RICO predicate acts of mail fraud/wire fraud/bribery/obstruction of justice/public corruption.

**820.** Defendants Allstate/FSMB/Christie and their Co-Conspirators Geico/NCMB in perpetrating a **"pattern of racketeering"** did convert the District of Columbia, the United States Bankruptcy Court, the United States District Court, and the NYSE into an association-in-fact racketeering enterprise, the **"SUUN Association-In-Fact Enterprise"**.

821. Through the **"SUUN Association-In-Fact Enterprise"** Defendants Allstate/FSMB/Christie and their Co-Conspirators Geico/NCMB perpetrated the **"SUUN Scheme"**.

822. A purpose of the **"SUUN Scheme"** was to eliminate Plaintiff Kaul (jailed/deported/suicide-killed)

823. A purpose of the **"SUUN Scheme"** was to have Defendant Christie become the 2016 US President.

824. A purpose of the **"SUUN Scheme"** was to prevent Plaintiff Kaul from further exposing their crimes, and the securities fraud/bank fraud/bankruptcy fraud of Defendant Allstate and Co-conspirators Geico/TD Bank.

825. Central to the perpetration of the **"SUUN Scheme"** was the **"Hospital-Insurance-Pharmaceutical-Industry-Complex"** (**"HIPIC-FC")** and their monopolization/control of all elements of American medicine by for-profit public-private corporations.

826. The shared economic mission of the **"HIPIC-FC"** is the maximization of corporate profit and share price.

827. The **"HIPIC-FC"** maximization of corporate profit/share prices is procured through the exploitation of the American public (denial of care) and medical profession (license suspension/revocation/incarceration) achieved through their corrupt control of the executive/legislative/judicial branches of state/federal government.

**Christie:**

Mail/wire fraud:

828. In a period commencing from approximately 2008/2009 to 2016 Defendant Christie did use the US mail wires in a knowing illegal manner, to exchange information with Defendant Allstate and Co-conspirator Geico regarding the perpetration of the first half of the **"SUUN Scheme"**.

829. The first half of the **"SUUN Scheme"** involved the revocation of Plaintiff Kaul's license, the destruction of his economic standing/reputation and elimination, be it by jail/deportation/death.

830. From 2016 to 2021, Defendant Christie did use the US mail/wires in a knowingly illegal manner, to exchange information with Defendants Allstate/FSMB and Co-conspirators Geico/TD regarding the second half of the "SUUN Scheme".

831. The second half of the **"SUUN Scheme"** involved obstructing Plaintiff Kaul's efforts to procure a license anywhere in the world.

141

832. The second half of the **"SUUN Scheme"** involved violating Plaintiff Kaul's prosecutorial rights and obstructing his access to justice by corrupting judges within the United States District Court.

833. The purpose of the second half of the **"SUUN Scheme"** was an attempt to prevent Plaintiff Kaul from further exposing the crimes of Defendants Allstate/FSMB/Christie and Co-conspirators Geico/TD.

834. These crimes include securities fraud/bankruptcy fraud/bank fraud.

835. Defendant Christie received substantial shares from Defendant Allstate and Co-Conspirators Geico/TD as part of the quid pro quo schemes of bribery, to eliminate Plaintiff Kaul.

Bribery:

836. In a period from 2008/2009 to 2016, Defendant Christie did enter into a series of quid pro quo schemes with Defendant Allstate and Co-Conspirator Geico.

837. In these quid pro quo schemes, Defendant Christie received bribes disguised as political campaign donations and corporate shares,

838. In these quid pro quo schemes, Defendant Christie received bribes (monies) transferred into multiple tax-free offshore havens, including Israel.

839. In a period from 2016 to 2021, Defendant Christie did corrupt judges within the United States District Court in quid pro quo schemes purposed to violate Plaintiff Kaul's prosecutorial rights.

840. The purpose of violating Plaintiff Kaul's prosecutorial rights was to prevent him from further exposing the crimes of **The Kaul Cases** Defendants.

841. These crimes include securities fraud/bankruptcy fraud/bank fraud.
Obstruction of justice/public corruption:

842. In a period from 2008/2009 to 2016, Defendant Christie conspired to commit, and did commit, in collusion/conspiracy with **The Kaul Cases** Defendants, and as part of the first half of the **"SUUN Scheme"**, an ongoing scheme to violate Plaintiff Kaul's right to justice within administrative/state/bankruptcy/federal courts within the geographic boundaries of the State of New Jersey,

843. The violations were the intended product of multiple quid pro quo schemes in which **The Kaul Cases** Defendants funneled bribes to Defendant Christie to have Plaintiff Kaul eliminated.

844. In a period from 2016 to 2021, Defendant Christie did corrupt judges within the United States District Court to violate Plaintiff Kaul's prosecutorial rights and obstruct justice.

845. A purpose of the obstruction of justice was to prevent Plaintiff Kaul from further exposing Defendants Allstate/FSMB/Christie and Co-conspirators Geico/TD decades-long schemes of corruption of American state/federal politicians/judges/legislators.

846. A purpose of the obstruction of justice was to prevent Plaintiff Kaul from further exposing Defendants Allstate/FSMB/Christie and Co-conspirator Geico/TD crimes of securities fraud/bankruptcy fraud/bank fraud.

Money laundering:

847. In a period from 2008/2009 to 2017, Defendant Christie did launder the proceeds of his **"SUUN Scheme"** related criminal activity, in the same places that he laundered the proceeds of his many other criminal enterprises.

848. Defendant Christie laundered the proceeds through his family.

849. Defendant Christie laundered the proceeds through the NYSE.

850. Defendant Christie laundered the proceeds through offshore trusts/banks.

851. Defendant Christie laundered the proceeds through his law/political lobbying firm.

852. Defendant Christie laundered the proceeds through his lawyers.

853. Defendant Christie laundered the proceeds through his accountants.

854. Defendant Christie laundered the proceeds through his public relation personnel (Mercury Public Relations).

855. Defendant Christie laundered the proceeds through investments in Defendants Allstate and Co-Conspirators Geico/TD/AHS.

856. Defendant Christie laundered the proceeds through his real estate holdings.

**Allstate/Geico:**

Mail fraud/wire fraud:

857. In a period commencing in 2008/2009, Defendant Allstate and Co-Conspirator Geico did, with a knowing illegality, use the US mail/wires to exchange information with Defendant

FSMB/Co-conspirator NCMB, in furtherance of both the first half of the **"SUUN Scheme"** and in continued furtherance of the decades-long **"HIPIC-FC"** scheme (1986-Present).

**858.** In these communications, Defendant Allstate, and Co-Conspirator Geico conspired with Defendant FSMB to globally disseminate knowingly fraudulent/highly defamatory information in furtherance of Plaintiff Kaul's elimination.

**859.** The hoped-for-elimination (economic/reputation/livelihood/liberty/life) of Plaintiff Kaul was to prevent him exposing the crimes of **The Kaul Cases** Defendants.

**860.** From 2016 to 2021, Defendant Allstate did, with a knowing illegality, use the US mail/wires to exchange information with Defendant FSMB/Co-conspirators NCMB and all **The Kaul Cases** Defendants, in furtherance of the second half of the **"SUUN Scheme"**.

**861.** The second half of the **"SUUN Scheme"** involved violating Plaintiff Kaul's prosecutorial rights in the United States District Court through judicial corruption.

**862.** A purpose of the violation was to prevent Plaintiff Kaul from further exposing **The Kaul Cases** Defendants prior crimes (2008/2009-2016) in the District of Columbia and the United States Bankruptcy Court.

**863.** A purpose of the violation was to attempt to conceal their securities fraud crimes on the NYSE (2016-2023).
Bribery:

**864.** Defendant Allstate/Co-conspirator Geico have, since 1986, participated in an illegal bribery-based scheme of racketeering with Defendant FSMB/Co-conspirator NCMB/other state medical boards, the **"HIPIC-FC"** scheme, in a profit-purposed monopolization of the entire American healthcare system.

**865.** The monopolization is made possible by the corruption/control of the political/judicial bodies of the American Republic, and remains facilitated by Citizens United (2010).

**866.** From 2008/2009 to 2016 Defendants Allstate/FSMB and Co-Conspirators Geico/NCMB/other state medical boards perpetrated a massive series of crimes against Plaintiff Kaul, though the conduction of a **"pattern of racketeering"**.

**867.** The **"pattern of racketeering"** was perpetrated through the **"SUUN Association-In-Fact Enterprise"**

**868.** The **"pattern of racketeering"** furthered the first half of **"SUUN Scheme"**.

**869.** The **"pattern of racketeering"** provides further evidence of the longstanding **"HIPIC-FC"** scheme, in which, in its simplest form, for-profit corporations operating in the healthcare

market, engage in knowingly illegal quid pro quo bribery schemes with Defendant FSMB/Co-conspirator NCMB/other state medical boards, in which these entities operating through the **"FC" ("Federation Cartel")** have eliminated (license suspension/revocation/indictment/incarceration/suicide) physicians whose thoughts/words/actions either fail to support or undermine the corporate profit agenda. A scheme of **CORPORATE TOTALATARIANSIM**.

Obstruction of justice/public corruption:

**870.** From 2008/2009 to 2016, Defendant Allstate and Co-Conspirator Geico did, with knowing illegality, use the US mail/wires to exchange information with Defendant FSMB regarding the **"SUUN Scheme"** to eliminate Plaintiff Kaul.

**871.** From 2016 to 2021, Defendant Allstate and Co-Conspirator Geico did with knowing illegality use the US mail/wires to conspire to commit, and commit corruption of judges within the New Jersey Superior Court, the United States Bankruptcy Court (DNJ) and the United States District Court.

**872.** The purpose of the judicial corruption was to obstruct justice by violating Plaintiff Kaul's prosecutorial rights.

**873.** A purpose of the obstruction of justice was to prevent Plaintiff Kaul from further exposing **The Kaul Cases** Defendants crimes against Plaintiff Kaul in the District of Columbia, crimes which commenced in 2012 and are ongoing.

**874.** A purpose of the obstruction of justice was to prevent Plaintiff Kaul from exposing **The Kaul Cases** Defendants commission/aiding/abetting bankruptcy fraud in the United States Bankruptcy Court (2013-2020).

**875.** A purpose of the obstruction of justice was to attempt to conceal **The Kaul Cases** Defendants securities fraud offenses committed in the NYSE (2016-2023), crimes that have thus not been investigated by the SEC, because Co-Conspirator Grewal was fraudulently appointed its enforcement director in June 2021, for exactly this illegal purpose.

Money laundering:

**876.** Defendant Allstate and Co-Conspirator Geico did launder and continue to launder the proceeds of their crimes (2008/2009-2023) through the NYSE and global investment community, including the sovereign funds of many other nations, and exchanges, including the London, Shanghai, and Bombay Stock Exchanges.

**877.** Defendant Allstate and Co-Conspirator Geico continue to fail to disclose to international markets their ongoing commission of securities fraud (2016-2023), with knowledge of the

immense liability this continues to cause to private/sovereign funds currently invested on the NYSE.

**878.** Defendant Allstate and Co-Conspirators Geico/TD have not disclosed the $28,000 trillion + liability in any filings, anywhere in the world, at any point in time after 2016.
**FSMB/Co-conspirator NCMB:**

Mail fraud/wire fraud:

**879.** In a period from 2008/2009 to 2016, Defendant FSMB did with knowing illegality use the US mail/wires to exchange information with Defendant Allstate and Co-Conspirators Geico/NCMB regarding the first half of the **"SUUN Scheme"**, that involved the revocation of Plaintiff Kaul's license, the destruction of his economic standing/reputation and his elimination, be it by jail/deportation/killed.

**880.** From 2016 to May 2023, Defendant FSMB did similarly use the US mail/wires to conspire with **The Kaul Cases** Defendants to commit acts of corruption of judges/senators within the United States District Court/US Government, purposed to violate Plaintiff Kaul's prosecutorial rights and obstruct justice.

**881.** Defendant FSMB's obstruction of justice was purposed to prevent Plaintiff Kaul from further exposing **The Kaul Cases** Defendants crimes (2008/2009 to 2023), including those of securities fraud.

**882.** From 2014 to 2021, Defendant FSMB in collusion/conspiracy with and through the **"FC"**, did conspire with **The Kaul Cases** Defendants to attempt to obstruct Plaintiff Kaul from procuring a medical license anywhere in the world including the District of Columbia.

**883.** The purpose of a global obstruction of license procurement was an attempt to restrict Plaintiff Kaul's access to capital, in the belief/hope it would obstruct his ability to prosecute his claims to judgment.

**884.** Defendant FSMB's purpose in attempting to violate Plaintiff Kaul's ability to prosecute his claims to judgment is to attempt to prevent Plaintiff Kaul from exposing the crimes (2008/2009 to 2021) of **The Kaul Cases** Defendants

**885.** The crimes of **The Kaul Cases** Defendants, including Defendant FSMB are mail fraud/wire fraud/perjury/extortion/kickbacks/obstruction of justice/public corruption/evidence tampering/witness tampering/securities fraud/bankruptcy fraud/bank fraud/money laundering/judicial corruption/kidnapping/manslaughter/chemical weapon trafficking/COVID vaccine related crimes against humanity.

Bribery:

**886.** Since 1986, Defendant FSMB has conducted ongoing schemes of bribery with for-profit corporations (**"HIPIC-FC"**) in furtherance of their scheme to monopolize all elements of American medicine, from the business of regulation to healthcare commerce.

**887.** Defendant Allstate and Co-Conspirator Geico bribed, and continue to bribe Defendant FSMB to have Plaintiff Kaul eliminated from the market (2012/2014)

**888.** Defendants Allstate, Co-Conspirator Geico and **The Kaul Cases** Defendants continue to bribe Defendant FSMB-NCMB to attempt to prevent Plaintiff Kaul's re-entry into clinical practice.

**881.** The purpose of attempting to prevent Plaintiff Kaul's re-entry is an attempt to deny him access to capital.

**882.** Defendant FSMB-NCMB and all **The Kaul Cases** Defendants believe that if Plaintiff Kaul is denied capital, it will prevent Plaintiff Kaul from prosecuting them in the United States District Court.

**883.** From 2016 to 2021, Defendant FSMB-NCMB has bribed judges/senators within the United States District Court/US Government, in order to violate Kaul's prosecutorial rights and obstruct justice.

**884.** A purpose of the obstruction of justice was to prevent Plaintiff Kaul from further exposing **The Kaul Cases** Defendants crimes against Plaintiff Kaul in the District of Columbia, crimes which commenced in 2012 and are ongoing.

**885.** A purpose of the obstruction of justice was to prevent Plaintiff Kaul from exposing **The Kaul Cases** Defendants commission/aiding/abetting bankruptcy fraud in the United States Bankruptcy Court (2013-2020).

**886.** A purpose of the obstruction of justice was to attempt to conceal **The Kaul Cases** Defendants securities fraud offenses committed in the NYSE (2016-2023), crimes that have thus not been investigated by the SEC, because Co-Conspirator Grewal was fraudulently appointed its enforcement director in June 2021, for exactly this illegal purpose.

Obstruction of justice/public corruption:

**887.** From 2016 to 2021, Defendant FSMB by, through and with the **"FC"**, and in collusion/conspiracy with **The Kaul Cases** Defendants, did bribe judges/senators within the United States District Court/US Government.

**888.** The purpose of bribing judges/senators was to pervert the course of justice by violating Plaintiff Kaul's prosecutorial rights.

147

889. The purpose of violating Plaintiff Kaul's prosecutorial rights was to pervert the course of justice in order to attempt to prevent Plaintiff Kaul from further exposing the crimes of **The Kaul Cases** Defendants.

Money laundering:

890. Since 1986, Defendant FSMB has generated millions of dollars from its **"pattern of racketeering"** within American medicine, through the willful exploitation/expense of the American public/medical profession.

891. Defendant FSMB's criminal proceeds have been laundered through investments in corporations publicly traded on the NYSE, including Defendant Allstate and Co-Conspirator Geico and other health insurance companies including third-party carriers commercially allied with state/federal governments.

892. Defendant FSMB's proceeds are also laundered through law/political lobbying/public relation firms that funnel bribes to state/federal judges/executives/legislators, in exchange for judgments/legislation that further the political/economic agendas of Defendant FSMB/Co-conspirator NCMB/other state medical boards and all corporations involved in commerce with the **"HIPIC-FC-Association-In-Fact Enterprise"**.

## 29. COUNT ELEVEN

**Association-In-Fact Enterprise: The District of Columbia-United States Bankruptcy Court-United States District Court**
**Defendant Persons: Christie/Allstate**
**Co-conspirators: Geico/Grewal/Murphy**
**RICO Predicate Acts: kidnapping/mail fraud/wire fraud/bribery/obstruction of justice/public corruption**

Overview:

893. In a period from April 2, 2012, to the present, Defendants Christie/Allstate and Co-Conspirators Geico/Grewal/Murphy did conduct a **"pattern of racketeering"**. within the association-in-fact enterprise of the District of Columbia-United States Bankruptcy Court-United States District Court (**"TBD Association-In-Fact Enterprise"**).

894. In conducting the **"pattern of racketeering"** within/through the **"TBD Association-In-Fact Enterprise"**, Defendants Christie/Allstate and Co-Conspirators Geico/Grewal/Murphy did convert the District of Columbia/United States Bankruptcy Court/United States District Court into a **"racketeering enterprise"**.

895. It was through the **"TBD Association-In-Fact Enterprise"** that Defendants Christie/Allstate and Co-Conspirators Geico/Grewal/Murphy perpetrated the RICO predicate acts of kidnapping/mail fraud/wire fraud/bribery/obstruction of justice/public corruption/judicial corruption.

896. The purpose of Defendants Christie/Allstate and Co-Conspirators Geico/Grewal/Murphy's commission of the RICO predicate acts through a **"pattern of racketeering"** was to prevent Plaintiff Kaul from further exposing their crimes prior to the crimes of having Plaintiff Kaul kidnapped on May 27, 2021/illegally arrested-jailed on June 14, 2023.

897. The purpose of the prevention of exposition of crimes, other than the civil/criminal liability, was Defendant Christie's 2024 political aspirations.

898. Defendants Christie/Allstate and Co-Conspirators Geico/Grewal/Murphy's scheme to suppress Plaintiff Kaul's prosecution of **The Kaul Cases**, functioned partly in that all cases filed by Plaintiff Kaul, except K11-1/K11-3, were transferred to the District of New Jersey-Newark, where Plaintiff Kaul had no choice but to voluntarily dismiss them.

899. From the commencement of K1 on February 22, 2016, in only one case – K5 – was a Rule 16 Order entered. The K5 Defendants, consistent with their corruption of the court, had the case transferred from the Camden to the Newark vicinage, where the Rule 16 Order was stayed.

**Christie**:

Kidnapping:

900. On May 26, 2021, Defendant Christie was served at his law office in Morristown, with a summons and complaint in K11-2.

901. Shortly thereafter, Defendant Christie did, with knowing illegality, conspire with Defendant Allstate and Co-conspirators Murphy/Grewal/Geico to have Kaul kidnapped on May 27, 2021, by nine (9) armed individuals who purported to be NJ state police, as pled in K11-9.

902. No warrants were produced, and Plaintiff Kaul was forcibly detained against his will, and rapidly removed to a local police station, where he was chained to a bench.

903. Plaintiff Kaul was then forcibly transferred to another police station and told that he was to be transferred to the Mercer County Jail in Trenton, NJ.

904. Plaintiff Kaul's repeated requests for a warrant were ignored.

**905**. Defendants Christie/Allstate and Co-Conspirators Geico/Grewal/Murphy/**The Kaul Cases** Defendants commission of this RICO predicate act was committed in order to have Plaintiff Kaul jailed/injured/killed.

**906.** The purpose of having Plaintiff Kaul jailed/injured/killed was to cause him to become physically/psychologically unable to continue the prosecution of K11-2/other future litigation by having him eliminated.

**907.** The purpose of preventing Plaintiff Kaul's prosecution of K11-2 was to prevent him further exposing the crimes of **The Kaul Cases** Defendants, including those of securities fraud.

**908.** On May 29, 2021, it was made evident to Plaintiff Kaul that many people had knowledge of the 'Kaul Kidnapping Scheme', as Plaintiff Kaul received a phone call from his ex-wife, with whom he had not spoken since November 2020, in which she recounted specifics details of the event that she obtained from her cousin, a physician who works at K11-2 Defendant Hackensack University Medical Center (**"HUMC"**).

Mail/wire fraud:

**909.** In a period from May 26, 2021, to the present, Defendant Christie, with knowing illegality did use the US mail/wires to exchange information with Defendant Allstate and Co-Conspirators Geico/Grewal/Murphy/**The Kaul Cases** Defendants regarding the planning/execution and unexpected consequences of the 'Kaul Kidnapping Scheme.

**910.** When the scheme failed, the Defendants, realizing that Plaintiff Kaul would file suit, did use the US mail/wires to conspire with judges/senators in the United States District Court/US Government to violate Plaintiff Kaul's prosecutorial rights by obstructing justice through venue transfer from the Southern District of New York to the District of New Jersey,

**911.** Plaintiff Kaul's suit (K11-9), after having been transferred to the District New Jersey – Newark Vicinage, was dismissed, in an attempt to prevent Plaintiff Kaul from further exposing the crimes of **The Kaul Cases** Defendants (2008/2009 to 2021).

Bribery:

**912.** In a period from 2008/2009 to 2016, Defendant Christie did engage in multiple quid pro quo schemes of bribery with Defendant Allstate and Co-Conspirator Allstate, in which he abused state power to further the economic/political agendas of, amongst others, himself and these corporate Defendant/Co-Conspirators.

**913.** A purpose of the schemes was to have him elected the 2016 US President.

**914.** A purpose of the scheme was to increase share value/executive compensation of Defendant Allstate/Co-Conspirator Geico, through the knowing/willful exploitation of the American public and medical profession.

**915.** During his tenure as NJ Governor (2009-2017) Defendant Christie abused state power to have incarcerated many innocent physicians (principally Hispanic/Indian/African American) to whom the insurance industry owed money for their provision of life-saving clinical services.

**916.** These false prosecutions/convictions were perpetrated by his Attorney General, and in NJ state courts corrupted by Defendants Allstate/Co-Conspirator Geico.
Obstruction of justice/public corruption:

**917.** Defendant Christie, in conspiring to have Plaintiff Kaul kidnapped, did attempt to violate Plaintiff Kaul's prosecutorial rights, and obstruct justice in the United States District Court.

**918.** Defendant Christie's obstruction of justice was purposed to prevent Plaintiff Kaul from exposing the massive crimes of **The Kaul Cases** Defendants, of amongst other things, judicial/political corruption.

**Murphy**:

Kidnapping:

**919.** Co-Conspirator Murphy, prior to becoming the NJ Governor was the US Ambassador to Germany, and prior to that was a partner at Goldman-Sachs, a corporation that holds shares in Defendant Allstate/Co-Conspirator Geico, the dividends from which Co-Conspirator Murphy continues to profit.

**920.** Co-Conspirator Murphy, recognizing that there were no legitimate means of contesting Plaintiff Kaul's right to continue prosecuting **The Kaul Cases** Defendants, did conspire with Defendants Christie/Allstate and Co-Conspirators Grewal/Geico to have Plaintiff Kaul eliminated on May 27, 2021, be it by either severe injury and or death.

**921.** A purpose of eliminating Plaintiff Kaul was to prevent him from further exposing the crimes of **The Kaul Cases** Defendants, including the securities fraud violations.

**922.** Co-Conspirator Murphy, in perpetrating the 'Kaul Kidnapping Scheme' did recognize its illegality and violation of Plaintiff Kaul's fundamental human rights, but persisted nonetheless, because of the immense civil/criminal liability posed to **The Kaul Cases** Defendants.

Mail/wire fraud:

**923.** Co-Conspirator Murphy, in conspiring to perpetrate the 'Kaul Kidnapping Scheme' did, with knowledge of its illegality, use the US mail/wires to exchange information with Defendants

Christie/Allstate and Co-Conspirators Grewal/Geico regarding the execution and then the unintended consequences of the scheme's failure including Plaintiff Kaul's filing/publicization of K11-9.

Bribery:

**924.** Co-Conspirator Murphy continues to receive bribes from Defendant Allstate/ Co-Conspirator Geico, under cover of dividends/shares from Goldman-Sachs, and has not, since becoming the NJ Governor, relinquished his/his family's holdings in the corporation, in accordance with NJ law pertaining to state official conflicts of interest.

Obstruction of justice/public corruption:

**925.** Defendant Murphy, in conspiring to have Plaintiff Kaul kidnapped, did attempt to violate Plaintiff Kaul's prosecutorial rights, and obstruct justice in the United States District Court.

**926.** A purpose of the obstruction of justice was to prevent Plaintiff Kaul from exposing the felonies of **The Kaul Cases** Defendants, of amongst other things, judicial/political corruption.

**927.** Co-Conspirator Murphy, in furtherance of this scheme to obstruct justice, did in a period commencing June 15, 2021, conspire with judges/senators in the United States District Court/US Government to have K11-9 transferred from the Southern District of New York to the District of New Jersey.

**928.** Co-Conspirator Murphy, in furtherance of this scheme to obstruct justice, did in a period commencing June 15, 2021, conspire with judges/senators in the United States District Court/US Government to have K11-9 dismissed almost immediately after it had been transferred from the Southern District of New York to the District of New Jersey.

**Grewal**:

Kidnapping:

**929.** On May 27, 2021, Co-Conspirator Grewal did conspire with Defendants Christie/Allstate and Co-Conspirators Murphy/Geico to have Plaintiff Kaul kidnapped on May 27, 2021, with the purpose of having him incarcerated in the Mercer County jail in Trenton, over the Memorial Day Weekend, in order to have him either seriously injured and or murdered.

**930.** When the 'Kaul Kidnapping Scheme' commenced on May 27, 2021, at approximately 2:30 pm EST, Co-Conspirator Grewal remained in constant contact with the kidnappers, and did, at approximately 7 pm EST, learn that the scheme had publicly failed.

**931.** Co-Conspirator Grewal, in the planning and execution of the scheme, did know that its principal purpose was to have Plaintiff Kaul eliminated,

**932.** Co-Conspirator Grewal, in the planning and execution of the scheme, did know that its principal purpose of having Plaintiff Kaul eliminated was to prevent him further exposing the serious and massive crimes (2008/2009-2021) of **The Kaul Cases** Defendants.

Mail/wire fraud:

**933.** Co-Conspirator Grewal, did know that in the planning, perpetration and 'damage control' phases of the 'Kaul Kidnapping Scheme' he did, with knowing illegality use the US wires to exchange information with Defendants Christie/Allstate and Co-Conspirators Murphy/Geico.

**934.** Co-Conspirator Grewal knew that his illegal use of the US wires constituted the felony of wire fraud.

**935.** In these exchanges over the US wires, Defendant Christie/Allstate and Co-Conspirators Geico/Murphy/Grewal expressed their opinion that the scheme would be successful.

**936.** In these exchanges, conducted over the US wires, Defendant Christie/Allstate and Co-Conspirators Geico/Murphy/Grewal stated that the scheme's success would render Plaintiff Kaul mentally/physically unable to continue his prosecution of **The Kaul Cases** Defendants.

**937.** Also contained within these exchanges were frantic emails that evidenced their fear of public exposure when they learned that the scheme had failed, particularly as it related to the political careers of Defendant Christie and Co-Conspirators Murphy/Grewal.
Bribery:

**938.** Co-Conspirator Grewal made the decision to participate in the 'Kaul Kidnapping Scheme' believing it would be successful in causing Plaintiff Kaul's elimination through severe physical/psychological injury and or death.

**939.** However, when it failed and Plaintiff Kaul sued him on June 15, 2021 (K11-9), he panicked and was transferred to the enforcement division of the SEC, in the belief it would shield him from prosecution by Plaintiff Kaul.

**940.** Co-Conspirator Grewal 's transfer was part of a quid pro quo with the Defendants Christie/Allstate and Co-Conspirators Murphy/Geico.

**941.** In the quid pro quo scheme, a purpose of the transfer from being the NJ AG to the SEC enforcement director was to 'purchase'/ensure the silence of Defendant Grewal regarding the 'Kaul Kidnapping Scheme'.

**942.** In the quid pro quo scheme, a purpose of Co-Conspirator Grewal's transfer from being the NJ AG to the SEC enforcement director was to prevent exposure of the securities fraud crimes of Defendant Allstate and Co-conspirators /TD/Geico (Berkshire Hathaway).
**Obstruction of justice/public corruption:**

**943.** Co-Conspirator Grewal was appointed the NJ AG in 2017 by Co-Conspirator Murphy upon the recommendation of Defendant Christie, who had, while governor, appointed Co-conspirator Grewal a state county prosecutor. Co-conspirator Grewal worked under Defendant Christie while the latter was the US Attorney (2001-2009).

**944.** Co-Conspirator Grewal obediently followed orders from Defendant Christie and the insurance industry, in the filing of indictments/license revocation actions against physicians to whom the insurance industry owed monies.

**945.** Many of these false cases were brought on fabricated and meaningless claims regarding the prescription of pain-relieving medications.

**946.** Co-Conspirator Grewal conspired with Defendants Christie/Allstate and Co-Conspirators Geico/Murphy in schemes of public corruption.

**947.** Within these schemes of public corruption, Co-Conspirators Grewal/Murphy/Geico, and Defendants Christie/Allstate abused state/judicial power to knowingly/illegally violate the constitutional rights of principally ethnic minority (Indians/African Americans/Hispanics) physicians to whom the insurance industry owed monies.

**948.** A principal purpose of violating their constitutional rights was to cause them a deprivation of their fundamental right to due process/obstruction of justice in their defense against the indictments/license revocation proceedings.

**949.** A purpose of this judicially aided/abetted due process deprivation/obstruction justice scheme was to further the economic agenda of **The Kaul Cases** Defendants, through the exploitation of the American public.

**950.** A purpose of this judicially aided/abetted due process deprivation/obstruction justice scheme was to further the political agenda of **The Kaul Cases** Defendants, through the exploitation of the American medical profession.

**951.** Co-Conspirator Grewal, in the commission of these RICO predicate acts (kidnapping/mail fraud/wire fraud/bribery/obstruction of justice/public corruption) did violate the authority of all districts of the United States District Court.

**952.** Co-Conspirator Grewal, in the commission of these human rights violations did violate the rights of the United States as delegated and enshrined within the Universal Declaration Of Human Rights.

**953.** Co-Conspirator Grewal, in the knowingly illegal commission of these human rights violations did further injure the reputation of the United States as a signatory/beneficiary of the duties/privileges owed/derived from the Universal Declaration Of Human Rights.

954. Co-Conspirator Grewal, in the knowingly illegal commission of these RICO predicate acts/human rights violations did recognize that he, a lawyer/NJ AG, converted the State of New Jersey into a **"racketeering enterprise"** to serve the interests of corrupt corporations/politicians/judges.

955. Co-Conspirator Grewal, in the knowingly illegal commission of these RICO predicate acts/human rights violations did recognize that he, a lawyer/NJ AG, did act in a tyrannical manner.

956. Co-Conspirator Grewal, in recognizing he did act in a tyrannical manner, did also recognize his acts re-affirmed/re-in forced Defendant Christie's conversion of the District of New Jersey (USA: 2000-2008) State of New Jersey (Governor NJ: 2009-2017) into a tyranny.

957. Co-Conspirator Grewal was a subjugate of Defendant Christie as an AUSA DNJ, before being assigned as lead prosecutor in Bergen County, New Jersey by Co-conspirator Murphy.

**<u>Allstate/Geico</u>:**

**<u>Public Corruption/Fraud on the Court/Witness Tampering/Evidence Tampering/False Indictments/False Arrests/Kidnapping/False Incarcerations.</u>**

958. From 2006 to 2016, Defendant Allstate/Co-Conspirator Geico employed a multi-pronged strategy to attempt to eliminate Plaintiff Kaul.

959. The strategy included knowingly false denials of certification for patient clinical care.

960. The strategy included knowingly false denial of payment after Plaintiff Kaul provided clinical care.

961. The strategy included knowingly false contestations of Plaintiff Kaul at every fee arbitration.

962. The strategy included the dissemination of knowing falsehoods to lawyers/doctors/surgical centers/hospitals to attempt to destroy Plaintiff Kaul's reputation,

963. The strategy included the dissemination of knowing falsehoods to lawyers/doctors/surgical centers/hospitals to attempt to make it impossible for Plaintiff Kaul to work.

964. The strategy included the filing and their publicization of knowingly fraudulent lawsuits against Plaintiff Kaul in corrupted NJ state/federal courts.

965. A purpose of the filing and publicization of knowingly fraudulent lawsuits was to re-litigate the arbitration hearings in which Plaintiff Kaul prevailed.

**966.** Plaintiff Kaul prevailed in almost ninety-nine percent (99%) of all arbitration hearings.

**967.** Defendant Allstate/Co-Conspirator Geico's strategy to attempt to eliminate Plaintiff Kaul included ordering the state medical board to revoke (illegally) Plaintiff Kaul's license.

**968.** Defendant Allstate/Co-Conspirator Geico's strategy to attempt to eliminate Plaintiff Kaul included having the NJ State AG initiate highly publicized criminal investigations/grand jury proceedings purposed to societally alienate/ostracize Plaintiff Kaul.

**969.** A purpose of the alienation/ostracization was to render Plaintiff Kaul unable to retain witnesses to defend against planned criminal indictments by the NJ State AG.

**970.** A purpose of the witness deprivation was to deprive Plaintiff Kaul of the ability to defend against planned criminal indictments by the NJ State AG.

**971.** A purpose of the alienation/ostracization was to render Plaintiff Kaul unable to procure monies to defend against planned criminal indictments by the NJ State AG.

**972.** A purpose of the monies deprivation was to deprive Plaintiff Kaul of the ability to defend against planned criminal indictments by the NJ State AG.

**973.** A purpose of the defense deprivation (monies/witnesses) was an attempt to ensure Plaintiff Kaul was convicted consequent to planned criminal indictments by the NJ State AG.

**974.** A purpose of any conviction consequent to planned criminal indictments by the NJ State AG was to illegally seize Plaintiff Kaul/his family's assets.

**975.** A purpose of any conviction consequent to planned criminal indictments by the NJ State AG was to have Plaintiff Kaul incarcerated.

**976.** A purpose of any incarceration consequent to planned criminal indictments by the NJ State AG was to attempt to have Plaintiff Kaul eliminated from the American healthcare market.

**977.** A purpose of Plaintiff Kaul's NJ State AG caused elimination from the American healthcare market was to illegally increase, through antitrust violations, the profits of competing healthcare corporations by eliminating the competitive threat posed by Plaintiff Kaul.

**978.** A purpose of any incarceration consequent to planned criminal indictments by the NJ State AG was to attempt to prevent Plaintiff Kaul from exposing the crimes of **The Kaul Cases** Defendants (2006-Present).

**979.** Defendant Allstate/Co-Conspirator Geico's strategy to attempt to eliminate Plaintiff Kaul included have the US Attorney/FBI initiate criminal investigations purposed to societally alienate/ostracize Plaintiff Kaul.

156

**980.** A purpose of the alienation/ostracization was to render Plaintiff Kaul unable to retain <u>witnesses</u> to defend against planned criminal indictments by the US Attorney/FBI .

**981.** A purpose of the <u>witness</u> deprivation was to deprive Plaintiff Kaul of the ability to defend against planned criminal indictments by the US Attorney/FBI.

**982.** A purpose of the alienation/ostracization was to render Plaintiff Kaul unable to procure <u>monies</u> to defend against planned criminal indictments by the US Attorney/FBI.

**983.** A purpose of the <u>monies</u> deprivation was to deprive Plaintiff Kaul of the ability to defend against planned criminal indictments by the NJ State AG.

**984.** A purpose of the defense deprivation (monies/witnesses) was an attempt to ensure Plaintiff Kaul was convicted consequent to planned criminal indictments by the US Attorney/FBI.

**985.** A purpose of any conviction consequent to planned criminal indictments by the US Attorney/FBI was to illegally seize Plaintiff Kaul/his family's assets.

**986.** A purpose of any conviction consequent to planned criminal indictments by the US Attorney/FBI was to have Plaintiff Kaul incarcerated.

**987.** A purpose of any incarceration consequent to planned criminal indictments by the US Attorney/FBI was to attempt to have Plaintiff Kaul eliminated from the American healthcare market.

**988.** A purpose of Plaintiff Kaul's US Attorney/FBI's caused elimination from the American healthcare market was to illegally increase, through antitrust violations, the profits of competing healthcare corporations by eliminating the competitive threat posed by Plaintiff Kaul.

**989.** A purpose of any incarceration consequent to planned criminal indictments by the US Attorney/FBI was to attempt to prevent Plaintiff Kaul from exposing the crimes of **The Kaul Cases** Defendants (2006-Present).

**990.** The strategy included having Plaintiff Kaul indicted on false tax charges.

**991.** The strategy included conspiring with Plaintiff Kaul's ex-wife to have him jailed on unpaid child support charges.

**992.** The strategy included preventing Plaintiff Kaul access to banking services.

**993.** The strategy included bribing judges/senators in federal court/government to obstruct/dismiss all cases filed by Plaintiff Kaul in the United States District Court.

994. The strategy included scheming to have and actually having Plaintiff Kaul kidnapped on May 27, 2021, after Defendant Christie had been served with the summons/complaint in K11-2 on May 26, 2021.

Mail/wire fraud:

995. Defendant Allstate/Co-Conspirator Geico, in the planning/execution/'damage control' phases of the 'Kaul Kidnapping Scheme', did, with knowledge of its illegality, use the US mail/wires to exchange information with Defendant Christie and Co-Conspirators Murphy/Grewal.

Bribery:

996. Defendant Allstate/Co-Conspirator Geico did funnel bribes to Defendants Christie/Murphy/Grewal as part of a quid pro quo scheme.

997. The quid pro quo scheme involved Defendant Christie and Co-Conspirators Murphy/Grewal corruptly 'selling' public (state) power, without the public's permission, to Defendant Allstate/Co-Conspirator Geico.

998. The scheme's purpose was to attempt to ensure the elimination of Plaintiff Kaul (jailed/deported/killed) to prevent him from further exposing their crimes.
Obstruction of justice/public corruption:

999. In having Plaintiff Kaul kidnapped on May 27, 2021/illegally arrested-jailed on June 14, 2023, **The Kaul Cases** Defendants did violate with physical violence his prosecutorial rights in the United States District Court, in the belief that he would either be unwilling or unable (psychologically/physically) to continue the prosecution of his claims.

1000. In violating Plaintiff Kaul's prosecutorial rights, Defendants Christie/Allstate, and Co-Conspirators Murphy/Grewal/Geico did in the process, attempt to cause a knowingly illegal obstruction of justice within the United States District Court.

1001. Defendants Christie/Allstate and Co-Conspirators Murphy/Grewal/Geico, in coopting a state police agency into the commission of the crimes of kidnapping/mail fraud/wire fraud did obstruct justice in the United States District Court.

1002. In the commission of the obstruction of justice Defendants Christie/Allstate and Co-Conspirators Murphy/Grewal/Geico converted the apparatus of American State/United States District Court into a **"racketeering enterprise"**.

1003. Through the **"NCBD Association-In-Fact Racketeering Enterprise"** Defendants Christie/Allstate and Co-Conspirators Murphy/Grewal/Geico, being aided/abetted by state police, did conduct a **"pattern of racketeering"** through the commission of RICO predicate acts

of obstruction of justice/public corruption/bribery/wire fraud/public corruption/fraud on the court/witness tampering/evidence tampering/false indictments/false arrests/kidnapping/false incarcerations.

**1004**. The principal purpose of the **"pattern of racketeering"** was to attempt to eliminate Plaintiff Kaul to prevent him from further exposing the crimes of **The Kaul Cases** Defendants (2006-2023).

## 30. COUNT TWELVE

**Association-In-Fact Enterprise: State of New York-The District of Columbia-NYSE ("SDN Association-In-Fact Enterprise)**
**Defendant Persons: Allstate/FSMB**
**Co-conspirators: Geico/Hengerer/NCMB**
**RICO Predicate Acts: Bribery/Mail Fraud/Wire Fraud/Obstruction of Justice/Conspiracy**

**Overview:**

**1005**. In a period that commenced in late 2020, the Defendant FSMB/Allstate and Co-Conspirators Geico/Hengerer/NCMB did conspire to conduct, and did conduct a knowingly illegal **"pattern of racketeering"**

**1006**. Defendants FSMB/Allstate and Co-Conspirators Geico/Hengerer/NCMB conducted the **"pattern of racketeering"** through the **"SSN Association-In-Fact Enterprise".**

**1007**. The **"pattern of racketeering"** involved the commission of the RICO predicate acts of bribery/ mail fraud/wire fraud/obstruction of justice/conspiracy.

**1008**. A purpose of the **"pattern of racketeering"** was to illegally prevent Plaintiff Kaul from obtaining a physician license in the State of New York.

**1009**. The license prevention scheme was an attempt to suppress Plaintiff Kaul's economic resurgence, in the belief that such a scheme would hinder Plaintiff Kaul's exposure of **The Kaul Cases** Defendants' crimes (2006-2023).

**1010-**. **The Kaul Cases** Defendants crimes include, amongst others, bribery/public corruption/evidence tampering/witness tampering/bankruptcy fraud/bank fraud/mail fraud/wire fraud/judicial corruption/perjury/kickbacks/securities fraud (2006-2023 committed within judicial/political/legislative bodies of the American state/federal systems).

**1011**. In the commission of obstructing Plaintiff Kaul's efforts to obtain a license in the State of New York (October 2020 to July 2021), Defendants FSMB/Allstate and Co-Conspirators

Geico/Hengerer did conspire to and did commit a multitude of frauds across the US wires to attempt to deceive, delay and deny Plaintiff Kaul's application, an **"ongoing"** injury consequent to an **"ongoing pattern of racketeering"**, one purpose of which is to attempt to prevent Plaintiff Kaul exposing <u>The Kaul Cases</u> Defendants crimes.

1012. Defendants FSMB/Allstate and Co-Conspirators Geico/Hengerer with others did use the US wires to propagate knowingly false information that the denial of Plaintiff Kaul's application by a supposed medical board subcommittee was based on a question of so called **"moral suitability"**.

1013. Plaintiff Kaul's multiple requests for the production of any state policy regarding the process of character assessment were ignored.

1014. In furtherance of Defendants FSMB/Allstate and Co-Conspirators Geico/Hengerer effort to conceal the fraudulence of their **"moral suitability"** scheme, they conspired with an individual by the name of **"Vincent Vollaro"**.

1015. The conspiracy was purposed to attempt, on June 17, 2021, to engage Plaintiff Kaul in a non-recorded phone call, in which **"Vincent Vollaro"** a non-lawyer/non-physician/non-ethicist would **"explain the process"** [**"moral suitability"**] to Plaintiff Kaul.

1016. The call did not occur, but its purpose was to fabricate evidence to bolster Defendants FSMB/Allstate and Co-Conspirators Geico/Hengerer falsehood regarding a supposed subcommittee's purported **"moral suitability"** as the basis for the denial of Plaintiff Kaul's NY February 2021 license application.

1017. Plaintiff Kaul has established as a matter of fact that no board subcommittee ever convened to consider Plaintiff Kaul's application.

1018. Plaintiff Kaul has established as a matter of fact that there exists no opinion, reasoned or not, that finds  a **"question of moral suitability"** as the basis for denial of licensure.

1019. On July 14, 2021, consequent to Plaintiff Kaul having sent letters to every member of the NY State Government regarding the state's liability for the crimes of <u>The Kaul Cases</u> Defendants,  Defendants FSMB/Allstate, and Co-Conspirators Geico/Hengerer did conspire with **"Vollaro"** to use the US wires to transmit a knowingly fraudulent document.

1020. In the knowingly fraudulent document **"Vollaro"** asserts that a **"subcommittee"** of the state medical board denied Plaintiff Kaul's application based on a purported **"question of moral suitability"**.

1021. Plaintiff Kaul's subsequent requests for a copy of the transcript and signed purported opinion of the supposed subcommittee were ignored and then denied.

**1022.** On August 27, 2021, Plaintiff Kaul filed a petition (<u>Kaul v Zucker/Hengerer: 101019-2021</u>) in the New York Supreme Court (Borough of New York), that sought to compel Defendant Hengerer to produce the purported **"subcommittee"** opinion.

**1023.** To date no physician/member of the New York State Medical Board has confirmed participating in any evaluation of Plaintiff Kaul's application.

**Co-conspirator Hengerer:**

**1024.** Co-Conspirator Hengerer is a board director of Defendant FSMB with whom he engages in commerce related to the business of so called **"physician discipline"**.

**1025.** Co-Conspirator Hengerer is the Chairman of the New York State Board Committee for Professional Medical Conduct.

**1026.** Co-Conspirator Hengerer has a controlling position in deciding which physicians licenses are suspended and or revoked.

**1027.** Co-Conspirator Hengerer abuses the power of his position to have prohibited the issuance of licenses to physicians whom for-profit healthcare corporations (insurance/hospital/pharmaceutical) have targeted for elimination.

**1028.** Co-Conspirator Hengerer abuses the power of his position to have suspended/revoked the licenses of physicians whom for-profit healthcare corporations (insurance/hospital/pharmaceutical) have targeted for elimination.

**1029.** Co-Conspirator Hengerer is cognizant of the illegality of his participation in the **"HIPIC-FC"** (**"Hospital-Insurance-Pharmaceutical Industrial Complex – Federation Cartel"**) scheme.

**1030.** Defendants FSMB/Allstate and Co-Conspirators Geico/Hengerer compete with Plaintiff Kaul in the American healthcare market.

**1031.** Despite Co-Conspirator Hengerer's cognizance of the illegality he persisted in his unlawful use of the US mail/wires to propagate the license prohibition scheme to prevent Plaintiff Kaul from participating in the relevant market.

**1032.** Defendants FSMB/Allstate and Co-Conspirators Geico/Hengerer's license prohibition scheme constitutes a willful/ongoing antitrust injury to Plaintiff Kaul and the healthcare market.

**1033.** Defendants FSMB/Allstate and Co-Conspirators Geico/Hengerer's license prohibition scheme constitutes an offense that Defendant Hengerer recognizes is violative of Plaintiff Kaul's constitutional/human rights to life/liberty/property.

**1034.** Co-Conspirator Hengerer, despite knowing the penalties associated with his violations of antitrust law and of Plaintiff Kaul's constitutional/human rights, was motivated to commit the crimes.

**1035.** Co-Conspirator Hengerer's motivation pertained to the economic benefit that inured to him.

**1036.** The economic benefit derived partly from his commercial association with the American Hospital Association, to which Plaintiff Kaul's revolutionary outpatient spine surgical work presented a substantial business threat.

**1037.** Co-Conspirator Hengerer was paid to be a surgical chairman at Strong Memorial Hospital in Rochester, NY for many decades.

**1038.** The economic benefit derived partly from his commercial association with Defendant FSMB which received bribes from for-profit healthcare corporations, whose commercial agendas were threatened by Plaintiff Kaul's revolutionary outpatient spine surgical work.

**1039.** In a period commencing on May 13, 2021, Co-Conspirator Hengerer, despite being noticed on multiple occasions by Plaintiff Kaul that he was participating in a **"pattern of racketeering"** did continue with his knowingly unlawful conduct.

<u>**Defendants FSMB/Allstate and Co-conspirators Geico/NCMB:**</u>

**1040.** The introduction of the HCQIA in 1986 foreshadowed and created the conditions that spawned the **"HIPIC-FC"**.

**1041.** Through the **"HIPIC-FC"** scheme Defendants Allstate/FSMB and Co-Conspirators Geico/NCMB have converted the American healthcare market into a massive **"racketeering enterprise"** purposed purely for profit at the expense and through the exploitation of the American public/medical profession.

**1042.** The singular goal of for-profit healthcare corporations is the maximization of executive compensation/share price at the cost of human life.

**1042.** A February 22, 2018, article in ProPublica exposed Strong Memorial Hospital in Rochester, NY, as a corporation that reaps vast/excessive/disproportionate profits from conducting business in the healthcare market.

**1043.** For many decades, Co-Conspirator Hengerer was Chairman of the Surgical Department at Strong Memorial Hospital, a member of the American Hospital Association.

**1044.** Defendants FSMB/Allstate and Co-Conspirator Geico have conspired with/continue to conspire with Co-Conspirator TMB in using the D.C. physician licensing apparatus to conduct a **"pattern of racketeering"**.

**1045.** Defendants FSMB/Allstate and Co-Conspirators Geico/TMB's **"pattern of racketeering"** involved the commission against Plaintiff Kaul of the RICO predicate acts of wire fraud/conspiracy/bribery/obstruction of justice.

**1046.** Defendants FSMB/Allstate and Co-Conspirators Allstate/NCMB recognize that in committing these RICO predicate acts through the physician regulatory apparatus; they did knowingly convert the District of Columbia into a **"racketeering enterprise"**.

**1047.** A purpose of the commission of the RICO predicate acts was to prevent Plaintiff Kaul from procuring a D.C. license.

**1048.** A purpose of the license prevention scheme was to suppress Plaintiff Kaul's economic resurgence.

**1049.** A purpose of the suppression of Plaintiff Kaul's economic resurgence was to suppress his ability to prosecute **The Kaul Cases**.

**1050.** A purpose of the suppression of Plaintiff Kaul's prosecution of **The Kaul Cases** was to suppress any further exposure to the global equities market/international regulators of the securities fraud crimes of Co-Conspirators Geico/TD and Defendant Allstate.

**1051.** Co-conspirator Geico/TD and Defendants Allstate/FSMB and their counsel do know that on September 7, 2021, a release was published to the world-wide-web entitled: **"United States Securities And Exchange Commission Alerted To Securities Fraud Crimes Of Three Titans Of North American Finance"**.

**1052.** The release was disseminated to the CEOs/CFOs of the S/P 500.

**1053.** On September 7, 2021, Defendant Allstate's share price was 138, and on September 1, 2023, it was 111.

**1054.** Subsequent to the release, Co-conspirators Geico/TD and Defendant Allstate did use the US wires to transmit knowingly false information to their shareholders/global investment community.

**1055.** The knowingly false information consisted of willful misrepresentations/omissions in SEC filings regarding litigation in India and the US.

163

**1056.** In using the US wires to transmit knowingly false information to their shareholders/global investment community, Co-conspirators Geico/TD and Defendant Allstate did knowingly violate section 10(b) of the Securities/Exchange Act.

**1057.** Defendants FSMB/Allstate and Co-conspirators Geico/NCMB ongoing crimes constitute an **"ongoing open-ended pattern of racketeering"** being willfully conducted through **"SSN Association-In-Fact Enterprise"**.

**1058.** Defendants FSMB/Allstate and Co-Conspirator Geico/NCMB's knowingly **"ongoing open-ended pattern of racketeering"** continues to violate Plaintiff Kaul's constitutional/human rights.

**1059.** The knowing/willful violation continues to cause Plaintiff Kaul to be illegally deprived (2012-Present) of his right to a livelihood.

**1060.** The knowing/willful violation continues to cause Plaintiff Kaul to be illegally deprived (2012-Present) of his right/duty to support his children.

**1061.** The knowing/willful violation continues to cause Plaintiff Kaul to be illegally deprived (2012-Present) of his right to freedom.

**1062.** On May 27, 2021/June 14, 2023, **The Kaul Cases** Defendants, with knowledge of their immense civil/criminal liabilities in multiple international jurisdictions, did attempt to have Plaintiff Kaul seriously injured/killed and did have Plaintiff Kaul falsely arrested/jailed.

**1063.** Pursuant to RICO's doctrine of vicarious liability, all of **The Kaul Cases** Defendants have incurred, and will continue to incur liability of the aforementioned crimes, and any further ones that any of the Defendants might commit.


# 31. COUNT THIRTEEN

### Violation of Civil Rights
### Symbiosis of State/Private Actors

**1064.** The 'state actor' <u>Symbiotic</u> test confirms that all Defendants and Co-Conspirators have 'state actor' status for the purpose of a section 1983 claim.

**1065.** The 'state actor' <u>Joint Participation Doctrine</u> test confirms that all Defendants and Co-Conspirators have 'state actor' status for the purpose of a section 1983 claim.

**1066.** The 'state actor' <u>State Command and Encouragement</u> test confirms that all Defendants and Co-Conspirators have 'state actor' status for the purpose of a section 1983 claim.

**1067.** The 'state actor' <u>Pervasive Entwinement</u> test confirms that all Defendants and Co-Conspirators have 'state actor' status for the purpose of a section 1983 claim.

**1068.** The 'state actor' <u>Public Function</u> test confirms that all Defendants and Co-Conspirators have 'state actor' status for the purpose of a section 1983 claim.

**1069.** All of the above pled facts do confirm the intertwinement, for the purposes of section 1983 claims, of the 'state actor' status of the private actors/defendants/co-conspirators.

**1070.** All of the above facts do confirm the intertwinement, for the purposes of section 1983 claims of the conferring on the state of the liability of the crimes caused by the private actors/defendants/co-conspirators against Plaintiff Kaul.

**1071.** The above facts include the exchange between private and state actors of monies pertaining to **"patterns of racketeering"** conducted through American states.

**1072.** The above facts include the exchange between private and state actors of monies pertaining to **"patterns of racketeering"** conducted through the United States District Court.

**1073.** The above facts include the exchange between private and state actors of monies pertaining to **"patterns of racketeering"** conducted through the United States Bankruptcy Court.

**1074.** The above facts include the exchange between private and state actors of information pertaining to **"patterns of racketeering"** conducted through American states.

**1075.** The above facts include the exchange between private and state actors of information pertaining to **"patterns of racketeering"** conducted through the United States District Court.

**1076.** The above facts include the exchange between private and state actors of information pertaining to **"patterns of racketeering"** conducted through the United States Bankruptcy Court.

**1077.** The above facts include the exchange between private and state actors of monies for the purchase of state power/function through schemes of judicial/political bribery.

**1078.** The above facts include the exchange between private and state actors of monies for the funding by the state of legal defenses of private actors/defendants in **<u>The Kaul Cases</u>**.

## 32. COUNT FOURTEEN
### Section 1983 claim

**1079.** In a period from 2008/2009 to the present, **The Kaul Cases** Defendants, as 'state actors' did abuse state/federal power to knowingly/willfully violate and deprive/continue to deprive Plaintiff Kaul of his constitutional rights pursuant to the First Amendment of the United States Constitution.

**1080.** In a period from 2008/2009 to the present, **The Kaul Cases** Defendants, as 'state actors' did abuse state/federal power to knowingly/willfully violate and deprive/continue to deprive Plaintiff Kaul of his constitutional rights pursuant to the Second Amendment of the United States Constitution.

**1081.** In a period from 2008/2009 to the present, **The Kaul Cases** Defendants, as state-actors did abuse state/federal power to knowingly/willfully violate and deprive/continue to deprive Plaintiff Kaul of his constitutional rights pursuant to the Fourth Amendment of the United States Constitution.

**1082.** In a period from 2008/2009 to the present, **The Kaul Cases** Defendants, as state-actors did abuse state/federal power to knowingly/willfully violate and deprive/continue to deprive Plaintiff Kaul of his constitutional rights pursuant to the Fifth Amendment of the United States Constitution.

**1083.** In a period from 2008/2009 to the present, **The Kaul Cases** Defendants, as state-actors did abuse state/federal power to knowingly/willfully violate and deprive/continue to deprive Plaintiff Kaul of his constitutional rights pursuant to the Sixth Amendment of the United States Constitution.

**1084.** In a period from 2008/2009 to the present, **The Kaul Cases** Defendants, as state-actors did abuse state/federal power to knowingly/willfully violate and deprive/continue to deprive Plaintiff Kaul of his constitutional rights pursuant to the Eight Amendment of the United States Constitution.

**1085.** In a period from 2008/2009 to the present, **The Kaul Cases** Defendants, as state-actors did abuse state/federal power to knowingly/willfully violate and deprive/continue to deprive Kaul Plaintiff of his constitutional rights pursuant to the Fourteenth Amendment of the United States Constitution.

**1086.** These deprivations/violations willfully/maliciously caused by **The Kaul Cases** Defendants did illegally deprive/continue to deprive Plaintiff Kaul of the property of his livelihood.

**1087.** These deprivations/violations willfully/maliciously caused by **The Kaul Cases** Defendants did illegally deprive/continue to deprive Plaintiff Kaul of the property of all his business real estate.

**1088.** These deprivations/violations willfully/maliciously caused by **The Kaul Cases** Defendants did illegally deprive/continue to deprive Plaintiff Kaul of the property of all his <u>personal real estate</u>.

**1089.** These deprivations/violations willfully/maliciously caused by **The Kaul Cases** Defendants did illegally deprive/continue to deprive Plaintiff Kaul of the property of all his <u>life earnings</u>.

**1090.** These deprivations/violations willfully/maliciously caused by **The Kaul Cases** Defendants did illegally deprive/continue to deprive Plaintiff Kaul of the property of all his <u>pensions</u>.
**1050.** These deprivations/violations willfully/maliciously caused by **The Kaul Cases** Defendants did illegally deprive/continue to deprive Plaintiff Kaul of the property of all his <u>financial investments</u>.

**1091.** These deprivations/violations willfully/maliciously caused by **The Kaul Cases** Defendants did illegally deprive/continue to deprive Plaintiff Kaul of the property of all his <u>professional licenses</u>.

**1092.** These deprivations/violations willfully/maliciously caused by **The Kaul Cases** Defendants did illegally deprive/continue to deprive Plaintiff Kaul of the property of all his <u>accounts receivable</u>.

**1093.** These deprivations/violations willfully/maliciously caused by **The Kaul Cases** Defendants did illegally deprive/continue to deprive Plaintiff Kaul of his right to <u>due process</u>.

**1094.** These deprivations/violations willfully/maliciously caused by **The Kaul Cases** Defendants did illegally deprive/continue to deprive Plaintiff Kaul of his right to <u>free speech</u>.

**1095.** These deprivations/violations willfully/maliciously caused by **The Kaul Cases** Defendants did illegally deprive/continue to deprive Plaintiff Kaul of his right to <u>impartial tribunals/judges/courts</u>.

**1096.** These deprivations/violations willfully/maliciously caused by **The Kaul Cases** Defendants did illegally deprive/continue to deprive Plaintiff Kaul of his right to <u>prosecute his claims</u>.

**1097.** These deprivations/violations willfully/maliciously caused by **The Kaul Cases** Defendants did illegally deprive/continue to deprive Plaintiff Kaul of his right to <u>equal protection under the law</u>.

**1098.** These deprivations/violations willfully/maliciously caused by **The Kaul Cases** Defendants did illegally deprive/continue to deprive Plaintiff Kaul of his right <u>to liberty</u>.
**1099.** These deprivations/violations willfully/maliciously caused by **The Kaul Cases** Defendants did illegally deprive/continue to deprive Plaintiff Kaul of the <u>property of eleven (11) years of his life</u>.

**1100.** These deprivations/violations/injuries were willfully/maliciously perpetrated by private actors within/through/with the assistance of the executive/judicial apparatus of the <u>American State</u>.

**1101.** These deprivations/violations/injuries were willfully/maliciously perpetrated by private actors within/through/with the assistance of the <u>United States Bankruptcy Court</u>.

**1103.** These deprivations/violations/injuries were willfully/maliciously perpetrated by private actors within/through/with the assistance of the <u>United States District Court</u>.

**1104.** These deprivations/violations/injuries were willfully/maliciously perpetrated by private actors within/through/with the assistance of the <u>New York Stock Exchange</u>.

**1105.** These deprivations/violations/injuries were willfully/maliciously perpetrated by state actors within/through/with the assistance of the executive/judicial apparatus of the <u>American State</u>.

**1106.** These deprivations/violations/injuries were willfully/maliciously perpetrated by state actors within/through/with the assistance of the <u>United States Bankruptcy Court</u>.

**1107.** These deprivations/violations/injuries were willfully/maliciously perpetrated by state actors within/through/with the assistance of the <u>United States District Court</u>.

**1108.** These deprivations/violations/injuries were willfully/maliciously perpetrated by state actors within/through/with the assistance of the <u>New York Stock Exchange</u>.

**1109.** The commercial/communications nexus between state and private actors within **The Kaul Cases**, critical to the perpetration of the within pled schemes confers 'state actor' liability on all private actors as to the deprivations/violations/injuries caused to Plaintiff Kaul's <u>human/constitutional rights</u>.

**1110.** The commercial/communications nexus between state and private actors within **The Kaul Cases**, critical to the perpetration of the within pled schemes confers 'state actor' liability on all private actors as to the deprivations/violations/injuries caused to all Plaintiff Kaul's <u>property rights</u>, as stated above.

**1111.** **The Kaul Cases** Defendants were and are motivated to commit and continue to commit these deprivations/violations/injuries to Plaintiff Kaul's <u>human/constitutional/property rights</u>.

**1112.** The motivation is based on **The Kaul Cases** Defendants scheme to prevent Plaintiff Kaul from exposing their crimes, including those of <u>defrauding the global equities market</u>.

## 33. COUNT FIFTEEN

### UN Human Rights Violation
### The United Nations Universal Declaration of Human Rights

**1113.** **The Kaul Cases** Defendants and Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to Article 1 of the United Nations Universal Declaration of Human Rights: **"All human beings are born free and equal in dignity and rights. They are endowed with reason and conscience and should act towards one another in a spirit of brotherhood."**

**1114.** The Article 1 violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

**1115.** **The Kaul Cases** Defendants and Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to Article 2 of the United Nations Universal Declaration of Human Rights. Plaintiff Kaul is a citizen of India: **"Everyone is entitled to all the rights and freedoms set forth in this Declaration, without distinction of any kind, such as race, colour, sex, language, religion, political or other opinion, national or social origin, property, birth, or other status. Furthermore, no distinction shall be made on the basis of the political, jurisdictional, or international status of the country or territory to which a person belongs, whether it be independent, trust, non-self-governing or under any other limitation of sovereignty."**

**1116.** The Article 2 violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

**1117.** **The Kaul Cases** Defendants and Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to Article 3 of the United Nations Universal Declaration of Human Rights: **"Everyone has the right to life, liberty and security of person."**

**1118.** The Article 3 violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

**1119.** **The Kaul Cases** Defendants and Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to Article 4 of the United Nations Universal Declaration of Human Rights: **"No one shall be held in slavery or servitude; slavery and the slave trade shall be prohibited in all their forms."**

**1120.** The Article 4 violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

**1121.** **The Kaul Cases** Defendants and Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to Article 5 of the United Nations Universal Declaration of Human Rights: **"No one shall be subjected to torture or to cruel, inhuman or degrading treatment or punishment."**

1122. The <u>Article 5</u> violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

1123. <u>The Kaul Cases</u> Defendants and Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to <u>Article 6</u> of the United Nations Universal Declaration of Human Rights: "Everyone has the right to recognition everywhere as a person before the law."

1083. The <u>Article 6</u> violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

1124. <u>The Kaul Cases</u> Defendants and Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to <u>Article 7</u> of the United Nations Universal Declaration of Human Rights: "All are equal before the law and are entitled without any discrimination to equal protection of the law. All are entitled to equal protection against any discrimination in violation of this Declaration and against any incitement to such discrimination."

1125. The <u>Article 7</u> violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

1126. <u>The Kaul Cases</u> Defendants and Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to <u>Article 8</u> of the United Nations Universal Declaration of Human Rights: "Everyone has the right to an <u>effective remedy</u> by the competent national tribunals for acts violating the fundamental rights granted him by the constitution or by law."

1127. The <u>Article 8</u> violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

1128. <u>The Kaul Cases</u> Defendants and Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to <u>Article 9</u> of the United Nations Universal Declaration of Human Rights: "No one shall be subjected to arbitrary arrest, detention or exile."

1129. The <u>Article 9</u> violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

1130. <u>The Kaul Cases</u> Defendants and Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to <u>Article 10</u> of the United Nations Universal Declaration of Human Rights: "Everyone is entitled in full equality to a fair and public hearing by an independent and impartial tribunal, in the determination of his rights and obligations and of any criminal charge against him."

1131. The <u>Article 10</u> violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

1132. <u>The Kaul Cases</u> Defendants and Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to <u>Article 12</u> of the United Nations Universal Declaration of

Human Rights: **"No one shall be subjected to arbitrary interference with his privacy, family, home or correspondence, nor to attacks upon his honour and reputation. Everyone has the right to the protection of the law against such interference or attacks."**

1133. The Article 12 violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

1134. The Kaul Cases Defendants and Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to Article 17 of the United Nations Universal Declaration of Human Rights: **"1. Everyone has the right to own property alone as well as in association with others. 2. No one shall be arbitrarily deprived of his property."**

1135. The Article 17 violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

1136. The Kaul Cases Defendants and Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to Article 19 of the United Nations Universal Declaration of Human Rights: **"Everyone has the right to freedom of opinion and expression; this right includes freedom to hold opinions without interference and to seek, receive and impart information and ideas through any media and regardless of frontiers."**

1137. The Article 19 violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

1138. The Kaul Cases Defendants and Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to Article 23 of the United Nations Universal Declaration of Human Rights: **"Everyone has the right to work, to free choice of employment, to just and favourable conditions of work and to protection against unemployment."**

1139. The Article 23 violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

1140. The Kaul Cases Defendants and Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to Article 23 of the United Nations Universal Declaration of Human Rights: **"Everyone has the right to a standard of living adequate for the health and well-being of himself and of his family, including food, clothing, housing and medical care and necessary social services, and the right to security in the event of unemployment, sickness, disability, widowhood, old age or other lack of livelihood in circumstances beyond his control."**

1141. The Article 23 violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

**1142.** **The Kaul Cases** Defendants and Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to Article 28 of the United Nations Universal Declaration of Human Rights: **"Everyone is entitled to a social and international order in which the rights and freedoms set forth in this Declaration can be fully realized."**

**1143.** The Article 28 violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

**1144.** **The Kaul Cases** Defendants and Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to Article 30 of the United Nations Universal Declaration of Human Rights: **"Nothing in this Declaration may be interpreted as implying for any State, group or person any right to engage in any activity or to perform any act aimed at the destruction of any of the rights and freedoms set forth herein."**

**1145.** The Article 30 violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

## RELIEF

**1. COMPENSATORY + CONSEQUENTIAL + PUNITIVE DAMAGES:** On September 28, 2023, in K11-15, Plaintiff Kaul submitted a MOTION FOR DEFAULT JUDGMENT that contains a substantiated damages report based on Plaintiff Kaul's tax filings from 2001 to 2011.

**2. A PUBLIC APOLOGY FROM DEFENDANTS** to be published on the platforms identified in the K1 February 22, 2016 'Settlement Terms' (K1: D.E. 1)..

**3. IMMEDIATE REINSTATEMENT OF PLAINTIFF KAUL'S UNRESTRICTED NEW JERSEY LICENSE**

**4. ANY OTHER RELIEF THE COURT DEEMS APPROPRIATE AND NECESSARY FOP THE PURPOSE OF DETERRENCE.**

## CERTIFICATION

I, RICHARD ARJUN KAUL, MD the Plaintiff, do certify that the above statements are true and accurate to the best of my knowledge, and that if it is proved that I knowingly and willfully misrepresented the facts, then I will be subject to punishment.


_____
RICHARD ARJUN KAUL, MD


DATED: FEBRUARY 27, 2025

**www.drrichardkaul.com**

**MARCH 3, 2025**

CLERK OF THE COURT
UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
333 CONSTITUTION AVENUE, N.W.
WASHINGTON, D.C. 20001

**RE: KAUL v. FEDERATION STATE MEDICAL BOARDS ET AL**
    **K11-25**
    **COMPLAINT**

Dear Sir/Madam,

Please find submitted the following documents:

**1.** COMPLAINT WITH EXHIBITS.

**2.** CIVIL COVER SHEET.

**3.** SUMMONS (2 COPIES) FOR ALL DEFENDANTS.

**4.** MONEY ORDER FOR FOUR-HUNDRED AND five DOLLARS ($405.00) PAYABLE TO THE 'UNITED STATES DISTRICT COURT'.

Thank you in advance for your assistance.

Yours sincerely

RICHARD ARJUN KAUL, MD

RECEIVED
A-B Room

MAR - 4 2025

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

1